**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHRISTINA RYNASKO, on behalf of herself
and all others similarly situated,

      Plaintiff,

      v.

NEW YORK UNIVERSITY,

      Defendant.

Case No. 1:20-cv-03250-GBD

---

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF CHRISTINA RYNASKO'S COMPLAINT**


**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.........................................3

    B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning...............4

    C.    NYU Provides Certain Refunds to Students...........................................4

    D.    The Plaintiff ...............................................................5

ARGUMENT ....................................................................................... 6

I.    Standard of Review.................................................................... 6

II.    Ms. Rynasko's Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions. ....................................................... 7

III.    Ms. Rynasko Does Not Have Article III Standing To Assert Certain Claims. ...................................................................................... 9

    A.    Ms. Rynasko Lacks Standing as a Parent. ...........................................9

    B.    Ms. Rynasko Lacks Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which Emily Rynasko Was Not Enrolled..............................................................................11

    C.    Ms. Rynasko Lacks Standing to Seek Injunctive Relief...........................13

IV.    Ms. Rynasko's Breach of Contract Claim Must Be Dismissed. ...................................... 13

    A.    Ms. Rynasko Has Not Identified a Specific Promise That Was Broken. .............13

    B.    NYU Did Not Breach Any Contract...................................................16

    C.    Covid-19 Rendered Performance of the Alleged Contract Impossible. ...............19

    D.    Ms. Rynasko Failed Adequately to Allege Damages. ...............................20

V.    Ms. Rynasko's Unjust Enrichment Claim Must Be Dismissed. ...................................... 21

    A.    The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim .........................................................................21

    B.    NYU Was Not Unjustly Enriched.....................................................22

VI.    Ms. Rynasko's Conversion Claim Must Be Dismissed. ............................................ 24

    A.    The Conversion Claim Is Duplicative of The Breach of Contract Claim...............24

    B.    Ms. Rynasko Fails to State a Claim for Conversion................................24

        1.    The Right To In-Person Classes Is Intangible Property.........................25

        2.    Ms. Rynasko Had No Ownership Interest in In-Person Classes.................25

CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anthes v. New York Univ.*,
  2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.*
  *Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) ............................................................14, 15, 16

*Architectural Body Research Found. v. Reversible Destiny Found.*,
  335 F. Supp. 3d 621 (S.D.N.Y. 2018)..........................................................................................3

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
  2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)............................................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................................6

*Babiker v. Ross Univ. School of Med.*,
  2000 WL 666342 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir.
  2004) .........................................................................................................................................18

*Barsoumian v. Williams*,
  29 F. Supp. 3d 303 (W.D.N.Y. 2014) ........................................................................................8

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016).......................................................................................21

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. October 1, 2018).........................................................................3

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008).......................................................................................25

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005).........................................................................................................3

*Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*,
  2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016)..........................................................................17

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000).................................................................................24, 25

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983).....................................................................................................................13

*DiMuro v. Clinique Labs. LLC*,
  572 F. App'x 27 (2d Cir. 2014) .................................................................................................11

*Distributorsoutlet.com, LLC v. Glasstree, Inc.*,
 2016 WL 3248310 (E.D.N.Y. Jun. 10, 2016) ........................................................16

*Doe v. Columbia Univ.*,
 2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) ..................................................14, 17

*Doe v. Univ. of the South*,
 687 F. Supp. 2d 744 (E.D. Tenn. 2009) ..............................................................9, 10

*Doyle v. MasterCard Int'l Inc.*,
 2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) .......................................................20

*Freedberg v. J.P. Morgan Chase & Co.*,
 2016 WL 7495181 (S.D.N.Y. Dec. 22, 2016) ..........................................................5

*Gally v. Columbia Univ.*,
 22 F. Supp. 2d 199 (S.D.N.Y. 1998) ........................................................8, 13, 14

*Gertler v. Goodgold*,
 107 A.D.2d 481 (1st Dep't 1985) *aff'd* 66 N.Y.2d 946 (1985) ...............................8

*Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
 288 F. Supp. 2d 473 (S.D.N.Y. 2003) ....................................................................25

*Goel v. Ramachandran*,
 111 A.D.3d 783 (2d Dep't 2013) ....................................................................22, 23

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
 8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................22

*Kamen v. Am. Tel. & Tel. Co.*,
 791 F.2d 1006 (2d Cir. 1986)..................................................................................3

*Keefe v. New York Law Sch.*,
 71 A.D.3d 569 (1st Dep't 2010) ............................................................................14

*Kirschner v. Bennett*,
 648 F. Supp. 2d 525 (S.D.N.Y. 2009)...............................................................24, 25

*Kolodin v. Valenti*,
 115 A.D.3d 197 (1st Dep't 2014) ..........................................................................19

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
 177 F.2d 694 (2d Cir. 1949)...................................................................................19

*Maas v. Cornell Univ.*,
 94 N.Y.2d 87 (1999) ................................................................................................7

*Mahoney v. Endo Health Solutions, Inc.*,
   2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) .........................................................................21

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ....................................................................................................3, 6

*Matzan v. Eastman Kodak Co.*,
   134 A.D.2d 863 (4th Dep't 1987) ............................................................................................25

*McCormick v. Dresdale*,
   2010 WL 1740853 (D.R.I. Apr. 28, 2010) ................................................................................9

*Metal Cladding, Inc. v. Brassey*,
   159 A.D.2d 958 (4th Dep't 1990) ............................................................................................23

*Mihalakis v. Cabrini Med. Ctr.*
   151 A.D.2d 345 (1st Dep't 1989) ............................................................................................20

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008) ..................................................................................................6, 7

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
   225 F. Supp. 3d 201 (S.D.N.Y. 2016) ......................................................................................23

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ....................................................................................................13

*Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*,
   49 N.Y.2d 408 (Ct. App. 1980) ...............................................................................................18

*Organizacion JD LTDA v. U.S. Dep't of Justice*,
   18 F.3d 91 (2d Cir. 1994) ........................................................................................................19

*OTG Brands, LLC v. Walgreen Co.*,
   2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) ...................................................................24, 25

*Paladino v. Adelphi Univ.*,
   454 N.Y.S.2d 868 (2d Dep't 1982) ............................................................................................7

*Patterson v. Morgan Stanley*,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ............................................................................11

*Police Benev. Ass'n of New York State Police, Inc. v. New York*,
   358 N.Y.S.2d 280 (1974) .........................................................................................................10

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
   2005 WL 1214281 (S.D.N.Y. May 20, 2005) ............................................................................7

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v.*
 *Bank of N.Y. Mellon,*
 775 F.3d 154 (2d Cir. 2014)............................................................................11, 12

*Rodriguez v. New York Univ.,*
 2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) ................................................................18

*Roe v. Loyola Univ. New Orleans,*
 2007 WL 4219174 (E.D. La. Nov. 26, 2007) ...................................................17, 23

*Samad v. Goldberg,*
 2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016)........................................................22

*Schachter v. U.S. Life Ins. Co. in City of New York,*
 77 F. App'x 41 (2d Cir. 2003) ...................................................................................7

*Spokeo, Inc. v. Robins,*
 136 S. Ct. 1540 (2016)..........................................................................................13

*Suffolk Cty. v. Long Island Lighting Co.,*
 728 F.2d 52 (2d Cir. 1984)......................................................................................9

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,*
 196 F. Supp. 2d 378 (S.D.N.Y. 2002).....................................................................23

*Ward v. New York Univ.,*
 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)............................................... *passim*

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,*
 127 F. Supp. 3d 156 (S.D.N.Y. 2015)......................................................................3

*WestLB AG v. BAC Fla. Bank,*
 912 F. Supp. 2d 86 (S.D.N.Y. 2012).....................................................................21

*Yalincak v. New York Univ.,*
 2009 WL 10714654 (D. Conn. Sept. 3, 2009).......................................................21

*Zirvi v. Flatley,*
 433 F. Supp. 3d 448 (S.D.N.Y. 2020).....................................................................25

**Other Authorities**

Fed. R. Evid. 201 ...............................................................................................3, 16

Fed. R. Civ. P. 12(b)(1)...........................................................................................6

Fed. R. Civ. P. 12(b)(6)...........................................................................................6

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety. Public health officials and New York State issued directives designed to protect the public – including the students, faculty, and staff at universities including defendant New York University ("NYU") – from the growing danger from Covid-19. These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition completely from in-person to remote teaching for the remainder of the Spring 2020 semester following NYU's spring break. Notwithstanding the significant logistical effort and expense involved, NYU and its faculty remained committed to delivering a world-class educational experience for its students by implementing creative ways to continue to conduct classes remotely.

NYU followed through on its commitment. Professors continued to teach; students continued to learn. *See, e.g.*, Ex. 1.[1] Professors rapidly adapted; NYU held remote classes all across its 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study. *See* Exs. 2–5. Every day, teachers worked to deliver NYU's intellectually stimulating and creative learning environment in new and different ways, and students continued to benefit from those efforts. Ex. 1. And, at the end of the semester, thousands of NYU students, including the plaintiff's daughter, received education credits and earned their degrees. *See* Ex. 6.

Nevertheless, plaintiff Christina Rynasko – the mother of former NYU student Emily Rynasko – brought a putative class action against NYU that: asks this Court to second guess the judgment of NYU's educators and administrators who made and implemented the decision to transition to remote learning; argues that, in Ms. Rynasko's opinion, the remote learning

---

[1]     "Ex." are exhibits attached to the Declaration of Keara M. Gordon, dated August 3, 2020.

environment to which NYU's faculty was forced to transition, and the manner in which each teacher then delivered that instruction over a myriad of courses, was ineffective (apparently in total); and demands the return of her daughter's tuition in full.[2]  Despite the fact that Covid-19 – not NYU – caused the need to transition to remote learning, and that Emily Rynasko continued to earn academic credits, and in fact obtained an NYU degree at the conclusion of the semester, Ms. Rynasko asserts three claims: (1) breach of contract; (2) unjust enrichment; and (3) conversion.

Each fails, and the Complaint should be dismissed for numerous reasons, including:

- At their core, each of Ms. Rynasko's claims impermissibly asks this Court to second guess NYU's educational decisions including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes.  Indeed, to adjudicate these claims, the Court would have to review and assess Emily Rynasko's (and potentially the entire putative classes') course materials, syllabi, assignments, the method of teaching provided by each of her professors, both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- Ms. Rynasko, the parent of an adult student, lacks Article III standing; she:  (1) cannot state a breach of contract claim; (2) cannot assert claims on behalf of absent putative class members who attended colleges, schools, or programs within NYU that her daughter did not attend and who were exposed to different admissions material and educational content – the experience will differ for example, between graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors, for example; and (3) cannot seek injunctive relief, as she does not allege that she (or her daughter) will be taking NYU classes in the future (*see* Section III);

- The breach of contract claim must be dismissed because (1) Ms. Rynasko does not allege a specific promise made to her that NYU allegedly broke; (2) NYU did not breach any contract or act in bad faith; (3) even if NYU had breached a contract (which it did not), Covid-19 rendered its performance impossible; and (4) Ms. Rynasko failed adequately to allege damages (*see* Section IV);

---

[2]     Three other sets of plaintiffs filed similar actions against NYU.  *See Zagoria v. NYU*, No. 1:20-cv-3610-GBD (S.D.N.Y., filed May 8, 2020); *Morales v. NYU*, No. 1:20-cv-4418-GBD (S.D.N.Y., filed Jun. 9, 2020); *Romankow v. NYU*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020).

- The unjust enrichment claim must be dismissed because: (1) it is duplicative of the other causes of action; and (2) Ms. Rynasko has not pled that NYU was unjustly enriched (*see* Section V); and

- The conversion claim must be dismissed because: (1) it is duplicative of the breach of contract claim; (2) the right to in-person classes is intangible property; and (3) Ms. Rynasko did not have an ownership interest in in-person instruction (*see* Section VI).

Respectfully, the Court should dismiss the Complaint in its entirety with prejudice.

### STATEMENT OF FACTS[3]

**A.     NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.**

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students. *See* Compl. ¶ 2. NYU's academic offerings include certificate programs, accelerated programs, distance learning, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, or doctoral programs. *See* Exs. 2–5.

These wide-ranging academic offerings are delivered across and through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of

---

[3]     For purposes of this motion, NYU accepts the plaintiff's allegations as true except to the extent that they are contradicted by documentary evidence. NYU reserves the right to dispute the accuracy of any factual allegation if the case proceeds past this motion (which it should not). But, the Court is not required to accept as true allegations that are contradicted by documents. When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). The Court may consider official government documents, publicly available documents, and published websites. *See, e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) (judicial notice of "official government websites [and] governmental records") (applying Fed. R. Evid. 201); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. October 1, 2018) (judicial notice of "documents on published websites"). The Court can consider materials beyond the pleadings to resolve jurisdictional questions (*Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)), and on a factual challenge to jurisdiction, "evidentiary matter may be presented by affidavit or otherwise." *Architectural Body Research Found. v. Reversible Destiny Found.*, 335 F. Supp. 3d 621, 633 (S.D.N.Y. 2018) (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

study.  Exs. 2–5.  Many of NYU's 18 different schools and colleges have its own admissions process (*see*, *e.g.*, Exs. 7–11) and used different admissions-related materials for prospective students, which highlight the different options available depending on the particular school or college and changed over time (*see*, *e.g.*, Exs. 12–14).  For instance, the various colleges, schools, and programs within NYU maintain individual websites and admissions materials highlighting the distinct aspects unique to them.  *See*, *e.g.*, Exs. 13, 14.

NYU assesses each student's tuition and fees based on the student's particular circumstances, including the school within NYU, the program within that school, and the particular courses.  *See* Compl. ¶ 19 ("Fees paid by or on behalf of NYU students vary based on program of study").

### B.      The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York state due to a rapid increase in confirmed cases of Covid-19.  Ex. 15.  Five days later, Governor Cuomo issued an Executive Order expanding upon his prior order; he closed all schools in the state, prohibited all large gatherings, and shuttered bars and restaurants.  Exs. 16, 17.  That same day, on March 16, 2020, consistent with the government orders and to protect the health and safety of its students and employees, NYU announced the difficult, but essential, decision to move all classes to remote learning for the duration of the semester, following its previous announcements of a temporary transition to remote learning.  Exs. 18–20.  On March 20, 2020, Governor Cuomo announced the "New York State on PAUSE" Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason."  Ex. 21.

### C.      NYU Provides Certain Refunds to Students.

After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a *pro rata* amount for the costs of housing and dining services after the campus' closure.

Ex. 20.  NYU's various schools also refunded certain activity fees, following evaluation of "dozens of individual school and course-based fees for the purpose of determining potential refunds, which are based on whether or not students received all or part of the services, supplies, or equipment associated with the fee."  Ex. 22; *see* Ex. 23.  Consistent with its policy that undergraduate and graduate students who remained enrolled in courses after February 24, 2020 are not eligible for a tuition refund (*see* Exs. 24–26), and consistent with the fact that students continued to receive the benefit of their courses through remote instruction, NYU has not refunded tuition (*see* Ex. 27).

### D.  The Plaintiff

Christina Rynasko does not attend NYU.  She is the mother of Emily Rynasko, a musical theater major in NYU's Tisch School of the Arts ("Tisch").  Compl. ¶ 10.  Christina Rynasko demands a refund of tuition and fees she purportedly paid on behalf of her daughter (*see id.*).  When Emily Rynasko authorized her mother to access NYU's online portal to submit tuition payments on her behalf, Emily explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full."  *See* Ex. 28.  Emily Rynasko was accepted to NYU on April 1, 2016 (Ex. 29), which she attended, culminating in NYU awarding her a degree at the end of the Spring 2020 semester.  *See* Joint Response by Plaintiffs Rynasko, Morales, and Guidry to Plaintiff Zagoria's Motion for Consolidation and Appointment of His Counsel as Interim Class Counsel, *Zagoria v. New York University*, 1:20-cv-03610-GBD, ECF No. 13, at 6 (admitting Emily Rynasko is a "former NYU student[]" and "an NYU graduate").[4]

In her complaint, Ms. Rynasko focuses on the unique "musical theater" aspect of her daughter's NYU experience, alleging that NYU should refund her daughter's tuition because her

---

[4]      "On a motion to dismiss, the Court may take judicial notice of . . . admissions in pleadings and other documents in the public record filed by a party in . . . judicial proceedings."  *Freedberg v. J.P. Morgan Chase & Co.*, 2016 WL 7495181, at *1 n. 1 (S.D.N.Y. Dec. 22, 2016) (quotation omitted).

daughter allegedly was unable to "participate in required performances" when Covid-19 required a transition to remote instruction.  Compl. ¶ 10.  Ms. Rynasko alleges that NYU breached an alleged contract with her, but she does not articulate or attach the purported "contract," instead referencing undated website pages that discuss the benefits of New York City, such as "some pretty good food."  *Id.* ¶ 27.  Ms. Rynasko also alleges that her daughter's remote classes were "ineffective" (*see id.* ¶¶ 7, 10, 29), "subpar in every aspect" (*id.* ¶¶ 7, 28), and "in no way the equivalent of the in-person education" (*id.* ¶ 29), which she alleges requires a refund of tuition and fees.  *Id.* ¶ 31.

Ms. Rynasko seeks to represent a putative class of "all people [apparently students, parents, grandparents, employers, and possibly others] who paid NYU Spring Semester 2020 tuition and/or fees for in-person educational services that NYU failed to provide, and whose tuition and fees have not been refunded."  *Id.* ¶¶ 31, 44; *see also* Ex. 30.  Ms. Rynasko also seeks to represent a subclass "of Class members who reside in Florida."  Compl. ¶ 32.

## ARGUMENT

### I.   <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss.  *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction under 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova,* 201 F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same).

Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing. *Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003).  The plaintiff bears the burden of establishing standing. *Morrison,* 547 F.3d at 170.

## II.       Ms. Rynasko's Claims Should Be Dismissed Because The Court Should Not Intervene in Educational Decisions.

As a threshold matter, Ms. Rynasko's claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning, and then, once made, to examine whether individual faculty members failed to provide an effective education in particular courses during the period of remote instruction.  "[C]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005) (finding that student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim and noting that administrators are "better suited" to make decisions)).

It is well-settled that New York does not recognize claims that require the Court to second guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," particularly where such claims would require a court to "evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution."  *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 897 (2d Dep't 1996) (quotations omitted) (reversing trial court judgment for student).  "Such injury would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community." *Id.* (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)).  "This public policy is grounded in the view that in matters wholly internal these institutions are peculiarly capable of making the decisions which are appropriate and necessary to

their continued existence." *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing breach of contract claim premised on an allegation that school "failed to provide [plaintiff] 'with an education environment conducive to learning'"; it was not "a sustainable breach of contract claim [but instead] an impermissible one for educational malpractice.").

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim . . . Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–207 (S.D.N.Y. 1998) (dismissing breach of contract claim). "[E]ven while applying contract principles, the courts have been careful to disallow claims that would involve the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here. In *Paynter v. New York University*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7, 1970 as a result of anti-war demonstrations reacting to the deployment of American troops to Cambodia and the events at Kent State. 319 N.Y.S.2d 893, 893 (1st Dep't 1971). The First Department reversed the trial court's decision that a refund was warranted and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was unjustified in suspending classes for the time remaining in the school year prior to the examination period." *Id.* at 894. In so doing, the Court recognized the general principle that "[p]rivate colleges and universities are governed on the principle of self-regulation, free to a large degree, from judicial restraints, and they have inherent authority to maintain order on their campuses." *Id.* The Court expressly observed that, "while in a strict sense, a student contracts

with a college or university for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*

Precisely the same result follows here, for the same reasons.  Ms. Rynasko challenges NYU's decision to move all courses to remote instruction and alleges that, in her opinion, the resulting education that each faculty member provided in each class was not as effective as it would have otherwise been.  Compl. ¶ 3.  Specifically, Ms. Rynasko complains that she thinks her daughter's classes were "ineffective" (*see id.* ¶¶ 7, 10, 29), "subpar in every aspect" (*id.* ¶¶ 7, 28), and  "in no way the equivalent of the in-person education" (*id.* ¶ 29).  As a result, to examine and evaluate the actual quality of the education provided, the Court would be required to review and assess Emily Rynasko's (and potentially every NYU student's) course materials, syllabi, objectives, assignments, the method of teaching provided, both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard.  Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus medicine, versus finance, versus education, versus engineering, versus chemistry.  And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently.  Well-established precedent mandates finding that the Court should not wade into such day-to-day judgments of educators.  Accordingly, Ms. Rynasko's claims must be dismissed.

## III.    Ms. Rynasko Does Not Have Article III Standing To Assert Certain Claims.

### A.    Ms. Rynasko Lacks Standing as a Parent.

Ms. Rynasko's claims must be dismissed because she lacks standing as the parent of an adult student.  Courts have held that parents lack standing to assert claims against universities

where their child, the student, is over the age of eighteen.  *See*, *e.g.*, *McCormick v. Dresdale*, 2010 WL 1740853, at *2 (D.R.I. Apr. 28, 2010) (dismissing parents' claims); *Doe v. Univ. of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (same); *see also Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) (affirming dismissal of breach of contract claim for lack of privity; "[A]bsent a contractual relationship there can be no contractual remedy.").[5]

In *University of the South*, for instance, the parents of a college student sought to assert claims against the student's school for, among other things, breach of contract and unjust enrichment.  687 F. Supp. 2d at 749.  The Court found that for the parents "to establish standing to sue the University under their breach of contract claims, they must first be able to prove the existence of a contract or for the Court to find that the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied." *Id.* at 761.  The Court rejected the parents' contention that "the payment of tuition created a contractual or quasi-contractual relationship with the University," finding that "the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority.'" *Id.*  "When a child reaches the age of majority, such 'standing simply transfers from the parent to the child." *Id.* (quotation omitted).

Here, similarly, Christina Rynasko lacks standing to sue NYU.  Even if she paid her daughter's tuition, such payments do not confer standing.  *Id.*  When Emily Rynasko authorized her mother's access to NYU's online portal to submit tuition payments on her behalf, Emily Rynasko explicitly acknowledged that she was "still responsible for ensuring that all my accounts

---

[5]      Even if Ms. Rynasko had a contract with NYU (which she does not), she is merely a promisee, and Emily Rynasko, as the third party beneficiary, holds the right to bring an action against NYU for money damages.  *See Police Benev. Ass'n of New York State Police, Inc. v. New York*, 358 N.Y.S.2d 280, 284 (1974).

are paid on time and in full." Ex. 28; *see* Ex. 30. This acknowledgment makes clear that any contract pertaining to the payment of tuition is between NYU and the student. Christina Rynasko, therefore, is not a party to any agreement with NYU, and has no recourse or standing to sue.

### B. Ms. Rynasko Lacks Standing to Assert Claims Relating to Colleges, Schools, and Programs In Which Emily Rynasko Was Not Enrolled.

Christina Rynasko does not have standing to assert claims related to the various schools, colleges, and programs Emily Rynasko did not attend. Courts hold that a named plaintiff lacks standing to assert claims on behalf of putative class members where the putative class members' claims would not raise "a set of concerns nearly identical" to those raised by the named plaintiff. *DiMuro v. Clinique Labs. LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quotation omitted) (dismissing claims for lack of standing where named plaintiffs bought only four of seven products at issue because "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each product" thus "[e]ntirely unique evidence" would be required to assess claims pertaining to each product); *see also, e.g.*, *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (affirming dismissal for lack of standing); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at * 14 (S.D.N.Y. Oct. 7, 2019) (dismissing claims for lack of standing).

In *Retirement Board*, for example, the Second Circuit found that a plaintiff lacked standing where its claims, including for breach of contract, "turn[ed] on very different proof" in relation to different loans being held by different trusts at the same bank. 775 F.3d at 162 (quotations omitted). The Court held that "whether [the defendant] breached its obligations under the governing agreements . . . require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest." *Id.*; *see*

*also Patterson*, 2019 WL 4934834, at *4-7 (named plaintiffs in ERISA case lacked standing to assert claims on behalf of absent class members who invested in funds in which the named plaintiffs did not invest).

So too here.  Ms. Rynasko purports to represent a class that consists not only of parents, students and a myriad of associated third party payors in a particular school or program, but everyone who paid NYU tuition, whether as an undergraduate, graduate, or doctorate candidate, in any discipline, running the gamut from English, to musical theater, to real estate investment and finance, to the drama program, to medicine, to law, to statistics, to engineering, to education, and more.  The admissions-related materials describing these varied programs were different across NYU's various colleges, schools, and programs, and have changed over time.  *See* Ex. 31; Compl. ¶ 27.  And, the manner and method of the delivery of classes within each – much less across all – colleges, schools, and programs varied, as did the student's subjective views of each course.

Ms. Rynasko bases her contract claim on the representations that she alleges NYU made to her.  Obviously, she was not exposed to representations made across each of NYU's various disciplines, nor did any alleged contract encompass all of them.  Indeed, Ms. Rynasko herself highlights the differences between her daughter—"a musical theater major at NYU's Tisch School of the Arts"—and NYU students generally by arguing that "[o]nline classes are particularly ineffective and inadequate for musical theater majors, who cannot participate in required performances, receive in-person feed-back/critique, or partake in the facilities necessary to perform."  *Id.* ¶ 10.  Moreover, NYU provided different refunds to students with various school or course-based fees or equipment that differed across the different schools, colleges, and programs. *See* Ex. 23.  Thus, "whether [NYU] breached its obligations under the governing agreements . . . require[s] examining its conduct with respect to" the different admissions materials for each

school, college, and program, *see Ret. Bd.*, 775 F.3d at 162, and Ms. Rynasko does not have standing to assert claims on behalf of any students, much less those enrolled in any schools, colleges, or programs in which her daughter was not enrolled.

      **C.**    **Ms. Rynasko Lacks Standing to Seek Injunctive Relief.**

The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury . . . fairly traceable to the challenged conduct of the defendant.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (quotation omitted). A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "[P]ast injuries . . . [therefore] do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that [he or she] is likely to be harmed again in the future in a similar way." *Id.*

Here, Emily Rynasko graduated and received her degree at the conclusion of the spring 2020 semester, so her mother cannot possibly suffer any harm from NYU's future conduct. Accordingly, Ms, Rynasko does not have standing to seek injunctive relief.

**IV.**    **<u>Ms. Rynasko's Breach of Contract Claim Must Be Dismissed.</u>**

Ms. Rynasko's breach of contract claim must be dismissed for several reasons. She fails to allege: (1) a specific promise by NYU sufficient to establish a contract; (2) any breach of an alleged contract; or (3) any resulting damages or harm to her. Further, even if there was a contract to provide in-person instruction (which there was not), Covid-19 and the related government edicts shuttering schools and businesses rendered NYU's performance impossible.

      **A.**    **Ms. Rynasko Has Not Identified a Specific Promise That Was Broken.**

Ms. Rynasko's breach of contract claim must be dismissed because she fails to allege a specific promise by NYU that was broken. As an initial matter, the implied contract between NYU

and Ms. Rynasko's daughter was, at most, that NYU would provide her daughter the ability to earn academic credits, and ultimately a degree, in exchange for tuition payments. *See Gally*, 22 F. Supp. 2d at 206 ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks."). NYU performed: during the Spring 2020 semester, NYU faculty taught Ms. Rynasko's daughter, who earned academic credits and a NYU degree. Thus, NYU did not breach this contract.

To the extent Ms. Rynasko attempts to state a claim based on an implied contract arising out of the admissions materials, the claim fails. To state a claim for breach of an implied contract against a university under New York law, "a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises." *Doe v. Columbia Univ.*, 2020 WL 1528545, at *5 (S.D.N.Y. Mar. 31, 2020) (dismissing claim where plaintiff failed to "make specific, non-conclusory allegations" regarding how the defendant university breached alleged contract). "The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Gally*, 22 F. Supp. 2d at 207. "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (affirming dismissal of breach of contract claim; no specific language where defendant "promised that it would utilize a pass/fail grading system"). General statements of policy are insufficient. *See Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (dismissing claim); *Ward v.*

*New York Univ.*, 2000 WL 1448641, at *3-4 (S.D.N.Y. Sept. 28, 2000) (same).

In *Ward*, for instance, the plaintiff sought to premise her breach of contract claims against NYU on "a number of the University's general policy statements and broad and unspecified procedures and guidelines" including "that defendants promised: i) to provide a great learning environment for adult students; ii) to respect adult students and treat them with respect; iii) to not discriminate against adult students; iv) to provide supervision and teaching by honest and unbiased instructors; and v) to provide and to follow guidelines for student treatment." 2000 WL 1448641, at *4. Initially, the Court noted that "courts should not substitute their judgments for those of the educators" and that it was "reluctant to venture into the domain of the University." *Id.* at *3. The Court further held that the statements were insufficient in any event to serve as the basis for a breach of contract claim because they were "more akin to general statements of policy" and not "designated and discrete promises, relating to the incidents of the forthcoming education, such as the provision of a designated number of hours of instruction[.]" *Id at *4.* (citation omitted).

Similarly, in *Cheves v. Trustees of Columbia University,* the plaintiff alleged that Columbia breached a contract with him by not permitting him on campus. 89 A.D.3d 463, 464 (1st Dep't 2011). The First Department affirmed dismissal of the contract claim, finding that "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus or its facilities" and therefore "the complaint fails to rely on a specific promise material to plaintiff's relationship with Columbia that has been breached." *Id.*; *see also Anthes*, 2018 WL 1737540, at *13 (dismissing claim alleging a failure to assist in plaintiff's employment search where the plaintiff "fail[ed] to articulate the nature of the agreement that was breached," and "even if Plaintiff expected such assistance, Plaintiff does not allege that there was ever an agreement, express or implied, to do so.").

15

Here, similarly, Ms. Rynasko premises her breach of contract claim on puffery and generic descriptions of the NYU campus environment rather than on specific, discrete promises to provide certain defined services that were not provided.  Compl. ¶ 27.  She does not point to any language promising that classes would be held in person.  *See id.*  Instead, the statements on which she bases her claims include that "[u]niversity life at NYU is supplemented with a variety of resources and services provided by the University" (*id.*), "[t]he sidewalks are full of students on their way to class, and members of the NYU community fill the restaurants, shops, and other businesses" (*id.*), and "if [students] can't find something to eat on campus, we hear New York City has some pretty good food" (*id.*).  Like the statements in *Ward* and *Anthes*, these statements do not constitute a specific promise by NYU to provide a particular service (much less in-person classes), and therefore cannot serve as the basis for a breach of contract claim.  *See* 2000 WL1448641, at *4.

Moreover, the statements on the webpages Ms. Rynasko relies upon have changed over time.  For example, historical versions of the webpage containing the "NYU in New York City" statements on which she relies (*see* Compl. ¶ 27) indicate that the statements she quotes did not appear on NYU's website until at least April 11, 2016, after Emily Rynasko applied to and was accepted by NYU.  *See* Ex. 31.[6]  Thus, those statements cannot form the basis of any contract between Ms. Rynasko and NYU.   Ms. Rynasko's breach of contract claim must be dismissed.

### B.     NYU Did Not Breach Any Contract.

Even if Ms. Rynasko's breach of contract claim was premised on a sufficiently specific promise by NYU (which  it is not), she has not sufficiently alleged that NYU breached any such

---

[6]      "[C]ourts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned under Federal Rule of Evidence 201.*" *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, 2016 WL 3248310, at *2 (E.D.N.Y. Jun. 10, 2016) (collecting cases).

contract and therefore the breach of contract claim must be dismissed.  *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5.  "[S]tating in a conclusory manner that an agreement was breached," as the plaintiff has done here, "does not sustain a claim of breach of contract."  *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016).

In *Ward*, the Court dismissed a breach of contract claim against NYU because "bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed, do not state a valid claim" and the plaintiff "failed to allege any facts demonstrating that defendants failed to abide by the University's regulations or procedures."  2000 WL 1448641, at *5.  Similarly, in *Doe v. Columbia Univ.*, the Court dismissed a breach of contract claim that was "not viable because [the plaintiff] fails to make specific, non-conclusory allegations regarding how Columbia failed to comply with its disciplinary procedures."  2020 WL 1528545, at *6.

Here, as in *Ward* and *Doe v. Columbia*, Ms. Rynasko fails adequately to plead a breach by NYU.  She admits NYU upheld its end of the bargain: it continued to provide her daughter educational services; it awarded her daughter academic credits; and it conferred on her an NYU degree.  Compl. ¶ 21; *see Zagoria*, 1:20-cv-03610-GBD, ECF No. 13, at 6.  As a result, there is no breach of contract.  *See Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting breach of contract claim brought by student who attended classes at another school following Hurricane Katrina: "plaintiff was able to attend classes . . . receive those credits towards his Loyola degree, and graduate without any delay" and "Plaintiff has pointed to no [contractual] provision . . . that would entitle him to a free semester of law school.").

Additionally, under NYU's refund policy, to receive a full tuition refund, students were required to withdraw from their classes by February 24, 2020.  Exs. 24–26.  NYU did not breach the terms of this policy by not providing tuition refunds *after* February 24, 2020, much less by not

17

providing tuition refunds to the parents of students who *never* withdrew from their classes and, in fact, graduated.  NYU did issue refunds to students for certain services that could not be provided in light of Covid-19, including for room and board and meal plans.  *See* Exs. 22, 23.

Moreover, Ms. Rynasko's breach of contract claim must be dismissed because she does not allege (nor could she plausibly allege) that NYU acted in bad faith.  To the extent an implied contract exists between students and a university, "[t]he essence of the implied contract is that an academic institution must act in good faith in its dealings with its students."  *Matter of Olsson v. Bd. of Higher Educ. of City of N.Y.*, 49 N.Y.2d 408, 414 (Ct. App. 1980).  Thus, "[b]reach of contract claims brought by students against universities are 'subject to judicial review only to determine whether the defendants abided by their own rules and whether they have acted in good faith or their action was arbitrary or irrational.'"  *Rodriguez v. New York Univ.*, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) (dismissing claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd* 86 F. App'x 457 (2d Cir. 2004)).  Accordingly, courts dismiss breach of contract claims where there is no allegation that the university acted in bad faith.  *See*, *e.g.*, *Ward*, 2000 WL 1448641, at *5 (dismissing claim where "there is nothing in the record . . . to suggest that defendants have either acted in bad faith, arbitrarily or irrationally."); *Olsson*, 49 N.Y.2d at 414 (dismissing claim where college "amply fulfilled its obligation to act in good faith").

Ms. Rynasko does not plead that NYU acted in bad faith to breach any applicable contract. If "sidewalks" were not "full of students on their way to class" or "restaurants, shops, and other businesses" were not filled with "members of the NYU community" (Compl. ¶ 27), that was not the result of any breach or bad faith conduct by NYU.  As discussed below, NYU did not prevent students from walking on sidewalks or filling restaurants, shops, and other businesses; the

18

government order closing all non-essential businesses on March 16, 2020 did.  Exs. 15–17, 21.

Indeed, Ms. Rynasko acknowledges that NYU was forced to transition to remote learning "because

of [Covid-19]."  Compl. ¶ 1. Accordingly, the breach of contract claim must be dismissed.

### C.    Covid-19 Rendered Performance of the Alleged Contract Impossible.

Even if Ms. Rynasko could make out a claim for breach of contract (which she cannot),

Covid-19  and  resulting  government  orders  rendered  NYU's  performance  impossible.

Impossibility excuses performance where the "destruction of the subject matter of the contract or

the  means  of  performance  makes  performance  objectively  impossible"  as  a  result  of  "an

unanticipated event that could not have been foreseen or guarded against in the contract."  *Kolodin*

*v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014); *see also Organizacion JD LTDA v. U.S. Dep't*

*of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal*

*Norwegian Gov't*, 177 F.2d 694, 697 (2d Cir. 1949) (reversing judgment for plaintiff on breach of

contract claim where "performance [was] subsequently prohibited by an administrative order . . .

by an officer of the United States").

In *Organizacion JD LTDA*, for instance, the plaintiffs sued two banks after the government

seized money transfers intended for the plaintiffs on the basis that the transfers involved proceeds

related to drug trafficking.  18 F.3d at 93.  The plaintiffs asserted several causes of action, including

breach of contract.  *Id.* at 95.  The Second Circuit affirmed the District Court's dismissal of the

breach of contract claims on impossibility grounds, holding that "the private intermediary banks

cannot be subject to a damage action because the intervening government actions in ordering the

seizures of the [transfers] rendered any enforceable contract impossible to perform."  *Id.*; *see also*

*Kolodin*, 113 A.D.2d at 199-200 (finding impossibility where court order prevented performance).

Here, similarly, Covid-19 and the resulting government orders destroyed the means of

NYU's  performance  with  respect  to  certain  allegations  in  the  complaint.   For  example,  Ms.

Rynasko alleges that NYU's website promised that "the sidewalks are full of students on their way to class, and members of the NYU community fill the restaurants[.]"  Compl. ¶ 27.  Even if these statements constituted actionable contracts (which they do not), and leaving aside that NYU does not control who fills nearby restaurants, NYU could not perform on these promises because the pandemic resulted in government orders, which limited public gatherings and closed restaurants and non-essential businesses.  Exs. 15–17, 21.  Any alleged non-performance by NYU is excused by impossibility, and Ms. Rynasko's breach of contract claim should be dismissed.

> ### D.      Ms. Rynasko Failed Adequately to Allege Damages.

Ms. Rynasko's breach of contract claim also must be dismissed because she fails sufficiently to allege damages.  To state a claim for breach of contract, a plaintiff must plead that the defendant breached its contract and the plaintiff suffered damages as a result of the alleged breach.  *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2–3 (S.D.N.Y. Dec. 15, 2016).  A claim must be dismissed where the plaintiff does not allege that he "suffered cognizable damages as required by New York law."  *See id.* at *2-3 (dismissing breach of contract claim).  Since Emily Rynasko in fact received educational credits in exchange for tuition paid (*see* Compl. ¶ 21), Ms. Rynasko has not and cannot plead that she suffered any damages.

Ms. Rynasko also cannot claim her daughter received no benefit from the period of remote instruction – as she did earn credits and a diploma – yet Christina Rynasko demands 100 percent of her daughter's tuition back.  In reality, a claim that the fact that Covid-10 required some period of the semester's instruction to be remote somehow devalued Emily Rynasko's education or the NYU degree she earned is too speculative to be actionable under New York law.  To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then, after, assess the value of in-person instruction as compared to remote instruction as perceived by the named plaintiff, on a

course-by-course basis, and calculate the percentage of tuition (if any) that should be refunded on a course-by-course basis. *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (the "difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that the defendant represented to plaintiff" was too speculative to support a claim for fraud); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) (allegations that plaintiff was damaged by "a general decline in the value" was "insufficient to adequately plead damages for a breach of contract"). Because Ms. Rynasko fails to allege any non-speculative way to do this analysis, she fails to allege any damages to support the claim for breach of contract and the claim must be dismissed.

**V.     Ms. Rynasko's Unjust Enrichment Claim Must Be Dismissed.**

**A.     The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim.**

Under New York law, a claim for unjust enrichment must be dismissed where it is "merely duplicative of [the] other causes of action." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016); *see also Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. Jul. 20, 2016) (dismissing claim; unjust enrichment "is not a catchall cause of action" and "is not available where it simply duplicates, or replaces, a conventional tort of contract claim.") (quotations omitted). In *Bytemark, Inc. v. Xerox Corp.*, for instance, the Court dismissed as duplicative the plaintiff's unjust enrichment claim "based on the same factual allegations underlying its contract and tort claims." 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Moreover, courts have held that students may not assert unjust enrichment claims against universities where the relationship is governed by a contract. *See, e.g.*, *Yalincak v. New York Univ.*, 2009 WL 10714654, at *14 (D. Conn. Sept. 3, 2009) (applying New York law). In *Yalincak*, the plaintiff, a former NYU student, asserted multiple claims against NYU, including for breach of contract and unjust enrichment. *See id.* at *9-10, *14. The Court dismissed the unjust enrichment

claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract . . . governed by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."  *Id.* (citation omitted).

The same result is compelled here.  Ms. Rynasko's unjust enrichment claim is premised on the same facts and seeks the same remedy as her breach of contract claim.  Ms. Rynasko's unjust enrichment claims are almost verbatim restatements of her breach of contract allegations:

| Unjust Enrichment Allegations | Breach of Contract Allegations |
|---|---|
| "In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Semester."  (Compl. ¶ 50) | "In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester" (Compl. ¶ 43) |
| The plaintiff "conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain services and promises"  (Compl. ¶ 50) | "Defendant has retained monies paid by Plaintiff and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain." (Compl. ¶ 44) |
| "Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since NYU shut down on March 11, 2020." (Compl. ¶ 52) | "Defendant should have refunded the pro-rated portion of any education services not provided." (Compl. ¶ 47) |

Ms. Rynasko's unjust enrichment claim must be dismissed.

### B.    NYU Was Not Unjustly Enriched.

To state a claim for unjust enrichment, "a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution."  *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014).  A mere allegation that a defendant "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment."  *Samad v. Goldberg*, 2016 WL 6678923, at *9 (S.D.N.Y. Nov. 14. 2016) (quoting *Goel v. Ramachandran*, 111 A.D.3d 783, 791 (2d Dep't 2013)).  Instead, a

plaintiff must establish that under the circumstances "it is against equity and good conscience to permit the defendant to retain what is sought to be recovered," *Goel*, 111 A.D.3d at 791 (quotation omitted), such as by allegations that there was "some mistake or deception practiced upon" the plaintiff by the defendant. *Id.* at 792 (dismissing claim); *see also*, *e.g.*, *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing claim where "plaintiff [did] not adequately allege[] that any enrichment was 'unjust'" because "[n]othing in the Amended Complaint suggests that [defendant] was not entitled to any fee it earned.").

Here, there are no allegations of mistake or deception. NYU did not deceive Ms. Rynasko into paying tuition or fees knowing that months or years later an unprecedented global pandemic followed by state-wide shelter-in-place orders would force NYU to take the unprecedented action to close all in-person learning and transition to remote instruction, and she did not mistakenly provide tuition payments to NYU under some false impression of what would happen in this scenario. Instead, Ms. Rynasko voluntarily paid her daughter's tuition and fees to NYU in exchange for educational services and credits for her daughter, and NYU provided them and conferred a degree on Emily Rynasko. As such, if NYU "were required to reimburse plaintiff for [her daughter's] tuition payments [s]he made, plaintiff would be unjustly enriched as a result." *See Roe*, 2007 WL 4219174, at *3 (rejecting unjust enrichment claim).

Where, as here, Emily Rynasko "receive[d] the benefits of the services defendants provided," Ms. Rynasko "does not have an equitable claim to return of the sums paid for such services." *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting unjust enrichment claim). And, NYU refunded fees associated with certain services that would not be provided in light of Covid-10. *See* Ex. 23. Accordingly, the

23

unjust enrichment claim must be dismissed.

**VI.**     <u>**Ms. Rynasko's Conversion Claim Must Be Dismissed.**</u>

    **A.**     **The Conversion Claim Is Duplicative of The Breach of Contract Claim.**

"[A]n action for conversion cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (dismissing conversion claim); *see also Armored Grp., LLC v. Homeland Sec. Strategies, Inc.,* , 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (dismissing conversion claim) (quotation omitted). Instead, "[w]here a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (quotation omitted) (dismissing conversion claim).

Here, Ms. Rynasko's conversion claim is premised on the same allegations as her breach of contract claim, not any unlawful or wrongful conduct by NYU. Ms. Rynasko submitted tuition payments to NYU, and in return, NYU provided her daughter educational services, credits, and an NYU degree. *See Armored Group*, 2009 WL 1110783, at *3 (dismissing conversion claim). NYU could not have continued to require in-person classes given Governor Cuomo's orders. Because the conversion claim is premised entirely on an alleged breach of contract, it must be dismissed.

    **B.**     **Ms. Rynasko Fails to State a Claim for Conversion.**

To state a conversion claim, "a plaintiff must allege: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quotation omitted). Here, Ms. Rynasko does not, and cannot, allege that the right to in-person classes is property subject to a conversion claim, nor that she had ownership or possession over them.

### 1.     The Right To In-Person Classes Is Intangible Property.

The conversion claim must be dismissed because "in-person educational services" (Compl. ¶ 56) are not tangible property.  The "conversion of intangible property is not actionable under New York law."  *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) (dismissing conversion claim).  Tangible items that are the proper subject of conversion claim are some form of actual property, not "indefinite, intangible, and incorporeal species of property."  *Matzan v. Eastman Kodak Co*., 134 A.D.2d 863, 864 (4th Dep't 1987) (dismissing conversion claim); *see also Zirvi v. Flatley*, 433 F. Supp. 3d 448, 466 (S.D.N.Y. 2020) (same).  Because in-person classes are not "tangible" property, Ms. Rynasko's conversion claim must be dismissed.

### 2.     Ms. Rynasko Had No Ownership Interest in In-Person Classes.

"Conversion is the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession."  *Citadel Mgmt.*, 123 F. Supp. 2d at 147.  Thus, "a plaintiff must allege" that the "plaintiff had ownership, possession or control over the property before its conversion."  *Kirschner*, 648 F. Supp. 2d at 540; *see also Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C*., 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (A "plaintiff must demonstrate that he has legal title or an immediate superior right of possession to the identifiable fund"); *OTG Brands*, 2015 WL 1499559, at *9-10 (dismissing conversion claim where plaintiff "does not identify any property in which they have title or right").  Here, Ms. Rynasko fails to allege facts demonstrating ownership or title over in-person classes.  Indeed, she points to no evidence indicating an entitlement to classes conducted solely through in-person instruction.  Accordingly, the conversion claim must be dismissed.

### CONCLUSION

For the foregoing reasons, NYU's Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice.

Dated: August 3, 2020                    Respectfully submitted,

**DLA PIPER LLP (US)**


  /s/  Keara M. Gordon
Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am one of the attorneys for the defendant in this action and that on

August 3, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which

will cause notice of its filing to be served electronically upon all counsel who have appeared in

this action.

/s/ *Keara M. Gordon*
Keara M. Gordon