**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINA RYNASKO on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>NEW YORK UNIVERSITY,<br><br>       Defendant. | Case No. 1:20-cv-03250-GBD |

**DEFENDANT NEW YORK UNIVERSITY'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF CHRISTINA RYNASKO'S FIRST AMENDED COMPLAINT**

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    A.    NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees. ................................................................ 4

    B.    The Covid-19 Pandemic Forces NYU's Transition to Remote Learning. ............... 5

    C.    NYU Provides Certain Refunds to Students. .......................................................... 5

    D.    The Plaintiff ............................................................................................................ 6

ARGUMENT ............................................................................................................8

    I.    Standard of Review ................................................................................................. 8

    II.    Ms. Rynasko's Claims Should Be Dismissed Because the Court Should Not Intervene in Educational Decisions. ........................................................................ 8

    III.    Ms. Rynasko Does Not Have Article III Standing. .............................................. 11

        A.    As a Parent, Ms. Rynasko Lacks Standing. ......................................................... 11

        B.    Ms. Rynasko Lacks Standing to Assert Claims Relating to Colleges, Schools, and Programs in Which Her Daughter Was Not Enrolled. ..................... 13

        C.    Ms. Rynasko Lacks Standing to Seek Injunctive Relief. ..................................... 14

    IV.    Ms. Rynasko's Breach of Contract and Breach of Implied Contract Claims Fail. .......................................................................................................... 15

        A.    Notations in the Course Registration System Regarding Class Locations and Mode of Instruction Do Not Create an Enforceable Contract. ........................ 15

        B.    Ms. Rynasko Has Not Identified a Specific Promise That Was Broken. .............. 18

        C.    There Are No Allegations NYU Acted in Bad Faith. ............................................ 21

        D.    Covid-19 Rendered Performance Impossible. ....................................................... 22

        E.    Ms. Rynasko Failed Adequately to Allege Damages. ........................................... 23

    V.    Ms. Rynasko's Unjust Enrichment Claim Must Be Dismissed. ............................. 24

        A.    The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim. ..................................................................................................................... 24

        B.    NYU Was Not Unjustly Enriched. ........................................................................ 25

    VI.    Ms. Rynasko's Conversion Claim Must Be Dismissed. ........................................ 27

        A.    The Conversion Claim Is Duplicative of The Breach of Contract Claim. ............. 27

        B.    Ms. Rynasko Fails to State a Claim for Conversion. ............................................ 27

    VII.    Ms. Rynasko's Money Had and Received Claim Must Be Dismissed. ................... 29

CONCLUSION ........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
  731 F.2d 112 (2d Cir. 1984)..........................................................................28

*Andre v. Pace Univ.*,
  655 N.Y.S.2d 777 (2d Dep't 1996).................................................................9

*Anthes v. New York Univ.*,
  2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v.
  Nelson*, 763 F. App'x 57 (2d Cir. 2019) .......................................................19

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
  2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)..........................................26, 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................8

*Barsoumian v. Williams*,
  29 F. Supp. 3d 303 (W.D.N.Y. 2014) .............................................................9

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016)...........................................................23

*Belda v. Doerfler*,
  2015 WL 5737320 (S.D.N.Y. Sept. 30, 2015)...............................................28

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018).....................................................4

*Brinkman v. Miami Univ.*,
  2007 WL 2410390 (Ohio Ct. App. Aug. 27, 2007) ..................................12, 13

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005)............................................................................4

*Cheves v. Tr. of Columbia Univ.*,
  89 A.D.3d 463 (1st Dep't 2011) ....................................................................19

*Chong v. Northeastern University*,
  2020 WL 5847626 (D. Mass. Oct. 1, 2020)........................................16, 19, 24

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000)......................................................26, 28

*Cooper v. Peterson*,
  626 N.Y.S.2d 432 (N.Y. Sup. Ct. 1995) ..................................................15, 16

*Cuesnongle v. Ramos*,
  713 F.2d 881 (1st Cir. 1983) .........................................................................16

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2002)..........................................................................17

*Deen v. New School Univ.*,
   2007 WL 1032295 (S.D.N.Y. Mar. 27, 2007) ...............................................17

*DiMuro v. Clinique Labs., LLC*,
   572 F. App'x 27 (2d Cir. 2014) .....................................................................13

*Doe v. Columbia Univ.*,
   2020 WL 1528545 (S.D.N.Y. Mar. 31, 2020) ................................................18

*Doe v. Univ. of the South*,
   687 F. Supp. 2d 744 (E.D. Tenn. 2009) ..................................................11, 12

*Doherty v. S. Coll. of Optometry*,
   862 F.2d 570 (6th Cir. 1988) .........................................................................17

*Doyle v. MasterCard Int'l Inc.*,
   2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ................................................23

*Freedberg v. J.P. Morgan Chase & Co.*,
   2016 WL 7495181 (S.D.N.Y. Dec. 22, 2016) ..................................................4

*Gally v. Columbia Univ.*,
   22 F. Supp. 2d 199 (S.D.N.Y. 1998).........................................10, 17, 18, 19

*Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*,
   288 F. Supp. 2d 473 (S.D.N.Y. 2003) ...........................................................28

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014).................................................................25

*United States ex rel. Hanks v. U.S.*,
   961 F.3d 131 (2d Cir. 2020)............................................................................8

*Hauptman v. Interactive Brokers, LLC*,
   349 F.Supp.3d 292 (S.D.N.Y. 2018)...............................................................30

*High View Fund, L.P. v. Hall*,
   27 F. Supp. 2d 420 (S.D.N.Y. 1998)...............................................................27

*Int'l Bus. Machs. Corp. v. Dale*,
   2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011)...................................................23

*Jeffers v. Am. Univ. of Antigua*,
   125 A.D.3d 440 (1st Dep't 2015) ..............................................................24, 26

*Kamdem-Ouaffo v. Pepsico, Inc.*,
   2015 WL 1011816 (S.D.N.Y. Mar. 9, 2015) ..................................................25

*Keefe v. New York Law Sch.*,
   71 A.D.3d 569 (1st Dep't 2010) .....................................................................19

*Keles v. New York Univ.*,
   1994 WL 119525 (S.D.N.Y. Apr. 6, 1994).....................................................17

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*,
   2009 WL 5033960 (S.D.N.Y. Dec. 23, 2009) ..................................................................25

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009)........................................................................27, 28

*Kolodin v. Valenti*,
   115 A.D.3d 197 (1st Dep't 2014) ...................................................................................22

*L. N. Jackson & Co. v. Royal Norwegian Gov't*,
   177 F.2d 694 (2d Cir. 1949)............................................................................................22

*Leslie v. New York Univ.*,
   2020 WL 5819730 (Sup. Ct. N.Y. Cty. Sept. 29, 2020) ...................................................9

*Mahavongsanan v. Hall*,
   529 F.2d 448 (5th Cir. 1976) ..........................................................................................16

*Mahoney v. Endo Health Solutions, Inc.*,
   2016 WL 3951185 (S.D.N.Y. Jul. 20, 2016) ..................................................................23

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000)..........................................................................................4, 8

*Mangla v. Brown Univ.*,
   135 F.3d 80 (1st Cir. 1998).............................................................................................17

*Metal Cladding, Inc. v. Brassey*,
   159 A.D.2d 958 (4th Dep't 1990) ...................................................................................26

*Mihalakis v. Cabrini Med. Ctr.*
   151 A.D.2d 345 (1st Dep't 1989) ....................................................................................23

*Morgan v. City of New York*,
   166 F. Supp. 2d 817 (S.D.N.Y. 2001).............................................................................12

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008).............................................................................................8

*Mueller v. Michael Janssen Gallery Pte. Ltd.*,
   225 F. Supp. 3d 201 (S.D.N.Y. 2016).............................................................................25

*In re Musicland Holding Corp.*,
   386 B.R. 428 (S.D.N.Y. 2008).........................................................................................27

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)......................................................................................14, 15

*Olsson v. Bd. of Higher Educ. of City of N.Y.*,
   49 N.Y.2d 408 (1980) ......................................................................................................21

*Organizacion JD LTDA v. U.S. Dep't of Justice*,
   18 F.3d 91 (2d Cir. 1994) ................................................................................................22

*OTG Brands, LLC v. Walgreen Co.*,
   2015 WL 1499559 (S.D.N.Y. Mar. 31, 2015) ...........................................................27, 28

iv

*Panix Promos., Ltd. v. Lewis*,
  2002 WL 122302 (S.D.N.Y. Jan. 22, 2002) .........................................29

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........................................13

*Police Benev. Ass'n of New York State Police, Inc. v. New York*,
  358 N.Y.S.2d 280 (1974) ...................................................................12

*Prusack v. New York*,
  117 A.D.2d 729 (2d Dep't 1986) ........................................................17

*Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*,
  2005 WL 1214281 (S.D.N.Y. May 20, 2005) .......................................9

*Regents of Univ. of Michigan v. Ewing*,
  474 U.S. 214 (1985)............................................................................21

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014)..........................................................13, 14

*Rodriguez v. New York Univ.*,
  2007 WL 117775 (S.D.N.Y. Jan. 16, 2007) ........................................21

*Roe v. Loyola Univ. New Orleans*,
  2007 WL 4219174 (E.D. La. Nov. 26, 2007) ................................18, 26

*Samad v. Goldberg*,
  2016 WL 6678923 (S.D.N.Y. Nov. 14. 2016)......................................25

*Schachter v. U.S. Life Ins. Co. in City of New York*,
  77 F. App'x 41 (2d Cir. 2003) ..............................................................8

*Soueidan v. St. Louis Univ.*,
  926 F.3d 1029 (8th Cir. 2019) ..............................................................9

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)........................................................................14

*Suffolk Cty. v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984)............................................................12, 15

*Tasini v. New York Times Co., Inc.*,
  184 F. Supp. 2d 350 (S.D.N.Y. 2002)...................................................8

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*,
  196 F. Supp. 2d 378 (S.D.N.Y. 2002)..................................................26

*Villareal v. Chamberlain Coll. of Nursing and Health Scis. Inc.*,
  2019 WL 4736488 (S.D. Tex. Sept. 27, 2019) ...............................17, 29

*Ward v. New York Univ.*,
  2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)..........................19, 20, 21

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015)...................................................25

*Weiss v. Rutgers Univ.*,
    2014 WL 2608201 (D.N.J. June 10, 2014).....................................................................28

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015)..........................................................................4

*WestLB AG v. BAC Fla. Bank*,
    912 F. Supp. 2d 86 (S.D.N.Y. 2012).........................................................................23

*Yalincak v. New York Univ.*,
    2009 WL 10714654 (D. Conn. Sept. 3, 2009)..............................................24, 26

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...............................................................................................8

Fed. R. Civ. P. 12(b)(6)...............................................................................................8

Fed. R. Evid. 201(b)(2)..............................................................................................20

## PRELIMINARY STATEMENT

The novel coronavirus disease 2019 ("Covid-19") unleashed unprecedented and unanticipated threats to global public health and safety. Public health officials and New York State issued directives designed to protect the public – including the students, faculty, and staff at universities including defendant New York University ("NYU") – from the growing danger of Covid-19. These directives and the threats attendant to large groups congregating on a college campus forced NYU to make the difficult but well-considered decision to transition to remote teaching for the remainder of the Spring 2020 semester. Notwithstanding the significant logistical effort and expense involved, NYU and its faculty remained committed to delivering world-class education by implementing creative ways to conduct nearly all classes by remote instruction.

NYU followed through on its commitment. Professors continued to teach; students continued to learn. *See*, *e.g.*, Ex. 1.[1] Professors rapidly adapted; NYU held remote classes across its 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study. *See* Exs. 2–5. Every day, faculty worked to deliver NYU's intellectually stimulating educational content in new and different ways, and students continued to benefit from those efforts. Ex. 1. And, at the end of the semester, thousands of NYU students, including the plaintiff's daughter, received education credits and earned their degrees. *See* Ex. 6; *Zagoria v. New York Univ.*, 1:20-cv-03610-GBD, ECF No. 13, at 6 (Emily Rynasko is "an NYU graduate").

Nevertheless, and despite the fact that Covid-19, not NYU, required the transition to remote learning, plaintiff Christina Rynasko – the mother of former NYU student Emily Rynasko – brought a putative class action against NYU that: asks this Court effectively to second guess NYU's judgment in transitioning to remote learning; argues that, in Ms. Rynasko's opinion, the

---

[1] "Ex." refer to the exhibits attached to the Declaration of Keara M. Gordon, dated October 6, 2020.

remote learning environment to which NYU's faculty was forced to transition, and the manner in which each of her daughter's teachers then delivered that instruction, was ineffective (apparently in total); and demands the return of her daughter's tuition and fees.[2]

In response to Ms. Rynasko's first complaint, NYU moved to dismiss. In its motion, NYU demonstrated that each of her claims failed for numerous reasons. Her Amended Complaint ("AC") fails to remedy any of those deficiencies.

Ms. Rynasko's allegation that her daughter would not have gone to NYU if she had known that NYU would be forced, years later, to stop in-person classes because of an unprecedented pandemic and that the pivot to remote instruction somehow harmed her daughter is implausible – particularly given that virtually all U.S. universities did the same. Equally unavailing is the claim that she understood that NYU was promising "in person" instruction to her daughter (apparently even when illegal) simply because its online course selection system included a physical class location. Such a notation is insufficient to create a binding contract for "in person classes." And, any such understanding (if one ever existed) would have been unreasonable as a matter of law, particularly given NYU's express disclaimer that NYU had the "right" to "change without notice at any time at the sole discretion of the administration," its "course offerings, schedules … and calendar," including (but not limited to) "the *elimination of … classes*, or activities; the *relocation* of or *modification* of the content of any of the foregoing; and the *cancellation* of scheduled classes or other academic activities." Ex. 7; *see also* Ex. 8 (emphasis added).

Ms. Rynasko asserts five claims: (1) breach of contract; (2) breach of implied contract;

---

[2]     There are three other actions against NYU. *See Zagoria v. New York Univ.*, No. 1:20-cv-3610-GBD (S.D.N.Y., filed May 8, 2020); *Morales v. New York Univ.*, No. 1:20-cv-4418-GBD (S.D.N.Y., filed Jun. 9, 2020); *Romankow v. New York Univ.*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020).

(3) unjust enrichment; (4) conversion; and (5) money had and received.  All fail:

- At their core, each of Ms. Rynasko's claims impermissibly asks this Court to second guess NYU's educational decisions, including the manner and effectiveness of the provision of educational services, which longstanding New York precedent precludes; indeed, what she seeks would require the Court to review and assess Emily Rynasko's (and potentially the entire putative classes') course materials, syllabi, assignments, the method of teaching provided both before and after the transition to remote learning, any subsequent lessening of effectiveness (however measured), the student's input and work product, the student's subjective learning preferences, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or promised standard (whatever that may be) (*see* Section II);

- Ms. Rynasko, the parent of an adult student: (1) lacks Article III standing; (2) cannot assert claims on behalf of absent putative class members who attended colleges, schools or programs within NYU that her daughter did not attend and who were exposed to different admissions material and educational content – the experience will differ for example, between graduate students versus undergraduates, law students versus medical students, versus engineering students, versus MBAs, versus actors, versus dancers, versus education majors, versus biology majors; and (3) cannot seek injunctive relief, as she does not allege that she (or her daughter) will be taking NYU classes in the future; even though NYU demonstrated in its initial motion to dismiss that Ms. Ryansko lacks standing, she has not remedied that failing and her daughter has not sought to join as a plaintiff (*see* Section III);

- The breach of express and implied contract claims must be dismissed: (1) Ms. Rynasko lacks privity of contract with NYU; (2) she could not have reasonably relied on course notations as an alleged promise of in-person courses, particularly in light of NYU's express disclaimer language; (3) she otherwise fails to allege a specific promise by NYU that it broke; (4) there are no allegations that NYU acted in bad faith; (5) Covid-19 and the related government edicts closing schools rendered NYU's performance impossible; and (6) damages are too speculative (*see* Section IV);

- The unjust enrichment claim must be dismissed: (1) it is duplicative; and (2) Ms. Rynasko has not pled that NYU was unjustly enriched (*see* Section V);

- The conversion claim fails because: (1) it is duplicative; (2) her daughter's tuition payments are not specific tangible funds; and (3) Ms. Rynasko did not have an ownership interest in the payments and NYU did not exercise unauthorized control (*see* Section VI); and

- The money had and received claim fails because: (1) Ms. Rynasko intentionally paid money to NYU in exchange for its performance and she has not sufficiently alleged that equity and good conscience requires the return of the money, and (2) she does not allege any specific benefit to NYU resulting from the tuition payments (*see* Section VII).

Respectfully, the Court should dismiss the AC with prejudice and without leave to amend.

## STATEMENT OF FACTS

A.     **NYU's Various Schools, Colleges, and Programs Have Varying Approaches to Admissions, Tuition, and Fees.**

NYU is an educational institution that, during the 2019-2020 school year alone, delivered higher education to over 50,000 enrolled undergraduate and graduate students.  *See* AC ¶ 2. NYU's academic offerings include certificate programs, accelerated programs, study abroad, exchange programs, part-time studies, full-time studies, and associate, bachelor's, post-bachelor's, master's, post-master's, and doctoral programs.  *See, e.g.*, Exs. 2–5.[3]  These wide-ranging academic offerings are delivered through NYU's 18 different schools and colleges, 147 centers and institutes, 400 programs, and over 230 areas of study.  *Id.*  Many of NYU's different schools and colleges have their own admissions process (*see, e.g.*, Exs. 9–13) and use different admissions-related materials for prospective students, on different websites, which highlight the distinct aspects unique to them, and which have changed over time (*see, e.g.*, Exs. 14–16).

NYU assesses each student's tuition and fees based on the student's circumstances, including the school within NYU, the program within that school, and the particular courses taken. *See* AC ¶ 54 ("Fees paid … vary based on program of study").  NYU specifically informs all students that they "are assessed tuition and fees based on the factors below: School or College

---

[3]     NYU accepts the plaintiff's allegations as true except to the extent that they are contradicted by documentary evidence.  NYU reserves the right to dispute their accuracy if the case proceeds (which it should not).  But the Court is not required to accept as true allegations that are contradicted by documents.  When a "complaint relies on the terms of [an] agreement," the Court "may look to the agreement itself."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).  The Court may consider government documents, publicly available documents, and published websites.  *See, e.g.*, *Freedberg v. J.P. Morgan Chase & Co.*, 2016 WL 7495181, at *1 n. 1 (S.D.N.Y. Dec. 22, 2016) (admissions in pleadings); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) ("official government websites [and] governmental records"); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) ("documents on published websites").  The Court can consider materials beyond the pleadings to resolve a factual challenge to the Court's jurisdiction. *See, e.g.*, *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).

within [NYU] ... Program ... [and] Credit Hours Enrolled," not by any other factors (such as mode or location of instruction or course content). Ex. 17. NYU further reserves all rights to change its tuition and fees through disclaimers on its webpage and in course bulletins. For example, it warns, "Disclaimer: The Board of Trustees of New York University reserves the right to alter the schedule of fees without notice" and "tuition, fees ... *are subject to change without notice at any time at the sole discretion of the administration*." Exs. 17, 7, 8 (emphasis added).

**B.**     **The Covid-19 Pandemic Forces NYU's Transition to Remote Learning.**

On March 7, 2020, Governor Andrew Cuomo declared a State of Emergency across New York due to a rapid increase in confirmed cases of Covid-19. Ex. 18. Nine days later, Governor Cuomo issued an expanded Executive Order; he closed all schools, prohibited all large gatherings, and shuttered bars and restaurants. Exs. 19, 20. That same day, consistent with the government orders and to protect the health and safety of its community, NYU announced the difficult, but essential, decision to move to remote learning for the duration of the semester, following its previous announcements of a temporary transition. Exs. 21–23. On March 20, 2020, Governor Cuomo announced the "New York State on PAUSE" Executive Order, which "ban[ned] all non-essential gatherings of individuals of any size for any reason." Ex. 24.

**C.**     **NYU Provides Certain Refunds to Students.**

After suspending in-person instruction and closing virtually all of its residence halls, NYU refunded a *pro rata* amount of housing and meal costs. Ex. 23. NYU also refunded certain activity fees, following evaluation of "dozens of individual school- and course-based fees for the purpose of determining potential refunds." Ex. 25; *see* Ex. 26. NYU continued to provide numerous services, such as career services, student health services, academic support, advising, and information technology support; it did not refund fees for those services that it continued to supply.

Ex 27.

Consistent with its policy that students who remain enrolled in at least one course are not eligible for a refund after February 10, 2020 and students who withdraw from all classes are not eligible for a refund after February 24, 2020 (*see* Exs. 28–30), and because students continued to receive instruction remotely, earn credits and graduate, NYU has not refunded tuition. *See* Ex. 27.

### D. The Plaintiff

Christina Rynasko does not attend NYU. She is the mother of Emily Rynasko, who was a musical theater major in NYU's Tisch School of the Arts ("Tisch"). AC ¶ 21. Emily Rynasko was accepted to NYU on April 1, 2016. Ex. 31. Before Emily Rynasko registered for her Spring 2020 courses (Ex. 32), Tisch released its "University Bulletin," which included a disclaimer that "[p]ayment of tuition or attendance at any classes ... constitute[d] [the] *student's* acceptance of the administration's rights" as follows:

> The policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar of the school and its departments and programs ... *are subject to change without notice at any time at the sole discretion of the administration*. Such changes may be *of any nature*, including, but not limited to, the elimination of the school, programs, *classes,* or activities; the *relocation* of or *modification* of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities.

Ex. 7 (emphasis added); *see also* Ex. 8. Emily Rynasko graduated at the end of the Spring 2020 semester. *See Zagoria*, 1:20-cv-03610-GBD, ECF No. 13, at 6.

Ms. Rynasko demands a refund of tuition and fees she purportedly paid on behalf of her daughter. *See* AC ¶ 16. Emily Rynasko's accounts with NYU are, however, in her own name. *See* Ex. 33. When Emily Rynasko authorized her mother to access NYU's online portal to submit tuition payments on her behalf, Emily explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full." *See* Ex. 34.

Ms. Rynasko alleges that NYU should refund her daughter's tuition because her daughter

allegedly was unable to have "constant interaction with and feedback from peers, mentors, professors, and guest lecturers," AC ¶ 22, or access to facilities, "technology, libraries, and laboratories," "spectator sports and athletic programs," "student government and health services," or the ability to "participat[e] in extracurricular groups and learning" due to Covid-19, *Id.* ¶¶ 22, 41. Ms. Rynasko references undated website pages that discuss generally New York City's benefits, such as "some pretty good food," and promoting NYU's "community of communities," and fellow students who will be "colleagues for life." *Id.* ¶¶ 34, 37, 38.

The AC claims that notations in NYU's online platform for registration (mistakenly identified as a "Course Catalog" (*Id.* ¶ 13) as to the location of particular courses indicates that classes must be "in-person." *Id.* ¶¶ 13, 18, 91-96. But, the precise location or mode of instruction was not a material term of any contract, and any such expectation would have been unreasonable as a matter of law, particularly because Tisch had released a bulletin that included a disclaimer that course offerings and the details thereof were "*subject to change without notice at any time at [NYU's] sole discretion*." Ex. 7 (emphasis added); *see also* Ex. 8. Ms. Rynasko admits that "the reasons for" NYU's transition to remote learning "are justified," but alleges that remote instruction was "not the same," "limited," "void of ... interaction," and not "comprehensive" (*see* AC ¶¶ 8, 9, 69), and her prior complaint labeled it "subpar" (Compl. ¶7), which she claims entitles her to a refund. AC ¶ 14. But Ms. Rynasko admits that NYU has already "refunded a ... portion of the mandatory fees" for Emily (*Id.* ¶ 89), which Ms. Rynasko admittedly "has not cashed … because" she believes "she is entitled to a *full refund*." *Id.* ¶ 16 (emphasis added).

Ms. Rynasko seeks to represent a putative class that includes students, parents, grandparents, employers, and others who paid tuition or fees for the NYU Spring Semester 2020, which have not been refunded. *Id.* ¶ 98; *see* Ex. 35.

**ARGUMENT**

I.    **Standard of Review**

In deciding Rule 12(b)(6) motions to dismiss, courts apply a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, although the Court must accept all of a complaint's well-pled allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss.  *Id.* at 679.

"A case is properly dismissed for lack of subject-matter jurisdiction … when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova,* 201 F.3d at 113; *see also Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (same).  Courts lack subject matter jurisdiction when the plaintiff does not have Article III standing.  *Schachter v. U.S. Life Ins. Co. in City of New York,* 77 F. App'x 41, 42 (2d Cir. 2003).  In a factual standing challenge, as NYU makes here, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (citation and internal quotation marks omitted) (collecting cases); *see also United States ex rel. Hanks v. United States*, 961 F.3d 131, 136-137 (2d Cir. 2020) (a factual challenge "imposed on [plaintiff] the burden to show by a preponderance of the evidence" jurisdiction).

II.   **Ms. Rynasko's Claims Should Be Dismissed Because the Court Should Not Intervene in Educational Decisions.**

As a threshold matter, Ms. Rynasko's claims should be dismissed because they are premised on allegations that improperly ask the Court to evaluate whether NYU made the right decision to transition to remote learning, and then, once made, to examine whether individual

faculty members failed to provide an effective education in particular courses during remote instruction. "[C]ourts retain a 'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, 2005 WL 1214281, at *10-11 (S.D.N.Y. May 20, 2005) (student failed to state a breach of contract claim) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999) (affirming dismissal of breach of contract claim; administrators are "better suited" to make decisions)). "It is the longstanding policy of the New York courts that 'the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are … better suited to make relatively final decisions concerning wholly internal matters.'" *Leslie v. New York Univ.*, 2020 WL 5819730, at *4 (Sup. Ct. N.Y. Cty. Sept. 29, 2020) (citation omitted).

It is well-settled that New York does not recognize claims that require the Court to second-guess the decisions of educators or are akin to claims "that the school breached its agreement by failing to provide an effective education," such as where a court would have to "evaluate the course of instruction" or "review the soundness of the method of teaching ..." *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (2d Dep't 1996) (citation and internal quotation marks omitted) (reversing trial court judgment for student). "Such inquiry would constitute a clear 'judicial displacement of complex educational determinations' that is best left to the educational community." *Id*. (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868 (2d Dep't 1982)); *see also*, *e.g.*, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 322 (W.D.N.Y. 2014) (dismissing breach of contract claim alleging that school "failed to provide [plaintiff] 'with an education environment conducive to learning'"); *see also Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019) (citation and internal quotation marks omitted) ("A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice.").

Indeed, "[n]ot every dispute between a student and a university is amenable to a breach of contract claim … Where the essence of the complaint is that the school … fail[ed] to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–207 (S.D.N.Y. 1998) (dismissing breach of contract claim). "[E]ven while applying contract principles, the courts have been careful to disallow claims that would involve the judiciary in reviewing the day-to-day judgments of educators." *Id.* at 209.

This longstanding line of authority is directly applicable here. In *Paynter v. New York University*, for example, the plaintiff sued for a tuition refund after NYU suspended classes on May 7, 1970 as a result of anti-war demonstrations. 319 N.Y.S.2d 893, 893 (1st Dep't 1971). The First Department reversed the trial court's decision that a refund was warranted and held that the trial court "erred in substituting its judgment for that of the University administrators and in concluding that the University was *unjustified* in suspending classes for the time remaining in the school year prior to the examination period." *Id.* at 894 (emphasis added). In so doing, the Court recognized the general principle that "[p]rivate colleges and universities are governed on the principle of self-regulation … and they have inherent authority to maintain order on their campuses." *Id.* The Court expressly observed that, "while in a strict sense, a student contracts … for a number of courses to be given during the academic year, the services rendered by the university cannot be measured by the time spent in a classroom." *Id*.

The same result follows here. Ms. Rynasko challenges NYU's decision to move all courses to remote instruction and alleges that, in her opinion, the resulting education that each faculty member provided in each class was not as effective. *See* AC ¶ 8. Specifically, Ms. Rynasko:

- contends that the remote classes offered were "not the same," "limited," "void of … interaction," and not "comprehensive" (*see Id.* ¶¶ 8, 9);

- cites to a number of statistics purportedly establishing the difference in the *effectiveness* of online education and in-person education (*see Id.* ¶¶ 76-81); and

- repeatedly quotes various individuals' hearsay statements regarding the purported lesser *quality and effectiveness* of online education, such as that it was "substandard." *See*, *e.g.*, *Id.* ¶¶ 11, 72.

As a result, to adjudicate this dispute, the Court would need to examine and evaluate the actual quality of the education provided, which would require the Court to review and assess Emily Rynasko's (and potentially every NYU student's) course materials, syllabi, objectives, assignments, the method of teaching provided, both before and after the transition to remote learning, its effectiveness (however measured), the student's input and work product, and a plethora of other factors, and then ascribe some monetary value to any supposed deviation from the prior or purportedly promised standard.  Such an analysis would be further complicated by the fact that this calculus may be different depending upon whether the course at issue is statistics versus Shakespeare, versus law, versus medicine, versus finance, versus education, versus engineering, and versus chemistry.  And, the Court would need to factor in the subjective desires and preferences of students, which are not uniform and many of whom learn differently.  Well-established precedent mandates that the Court should not wade into such day-to-day judgments of educators.  Accordingly, the AC must be dismissed.

III.   **Ms. Rynasko Does Not Have Article III Standing.**

   A.   **As a Parent, Ms. Rynasko Lacks Standing.**

Ms. Rynasko's claims must be dismissed because, as a parent of an adult student, she lacks standing.  "[T]he 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority."  *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) (citation omitted).  Thus, courts hold that parents lack standing to assert claims against a university based on the payment of tuition when the student is

over the age of eighteen.  *See, e.g.*, *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819–20 (S.D.N.Y. 2001) (parent lacked standing to bring claims under Title IX, § 1983 and N.Y. Educ. Law § 313 on behalf of daughter);  *Doe*, 687 F. Supp. 2d at 761-64; *Brinkman v. Miami Univ.*, 2007 WL 2410390, at *10 (Ohio Ct. App. Aug. 27, 2007); *Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) (affirming dismissal; "[A]bsent a contractual relationship there can be no contractual remedy.").[4]

In *Doe*, for example, the parents of a college student sought to assert claims against the student's school for, among other things, breach of express and implied contract and unjust enrichment.  687 F. Supp. 2d at 749.  The Court found that for the parents "to establish standing to sue the University … they must first be able to prove the existence of a contract or for the Court to find that the parties must have entered into an agreement which is sufficiently definite and certain so that the terms are either determined or may be implied."  *Id.* at 761.  The Court rejected the parents' contention that "the payment of tuition created a contractual or quasi-contractual relationship with the University."  *Id.*  "When a child reaches the age of majority, such standing simply transfers from the parent to the child."  *Id.* (citation and internal quotation marks omitted).

Similarly, in *Brinkman*, a father argued that he had "standing to challenge [a] university's domestic-partner benefits program" because he paid tuition for his adult children.  2007 WL 2410390, at *10.  The Court disagreed: "[W]e find no authority to support the proposition that [the parent's] payment of tuition … gives him standing in this case …"  *Id.*  The Court found instead that "[the parent] is not obligated by law to pay … In fact, the tuition bill is not even Brinkman's. The bill is the financial responsibility of his adult children, who are not parties to this action."  *Id.*

---

[4]      Even if Ms. Rynasko had a contract with NYU (which she does not), she is merely a promisee, and her daughter is the third-party beneficiary who can bring the action.  *Police Benev. Ass'n of New York State Police, Inc. v. New York*, 358 N.Y.S.2d 280, 284 (1974).

Here, similarly, Ms. Rynasko's purported payment of her daughter's tuition does not confer standing. *Id*. Emily Rynasko's accounts with NYU were held in her own name. *See*, *e.g.*, Ex. 33. When Emily Rynasko authorized her mother's access to NYU's online portal to submit tuition payments on her behalf, Emily Rynasko explicitly acknowledged that she was "still responsible for ensuring that all my accounts are paid on time and in full." Ex. 34; *see* Ex. 35. Any tuition contract – express or implied – is between NYU and the student. Ms. Rynasko's daughter is over 18 and may assert claims against NYU on her own behalf for any harm she claims she suffered. NYU explained previously that Christina Rynasko has no standing to sue and her daughter chose not to join this suit. As such, the AC should be dismissed with prejudice.

### B. Ms. Rynasko Lacks Standing to Assert Claims Relating to Colleges, Schools, and Programs in Which Her Daughter Was Not Enrolled.

Ms. Rynasko does not have standing to assert claims related to the various schools, colleges, and programs Emily Rynasko did not attend. Courts hold that a named plaintiff lacks standing to assert claims on behalf of putative class members where the putative class members' claims would not raise "a set of concerns nearly identical" to hers. *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (quotation omitted) (dismissing claims for lack of standing because "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each product" thus "[e]ntirely unique evidence" would be required to assess claims pertaining to each product); *see Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon,* 775 F.3d 154, 162 (2d Cir. 2014); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *4-7 (S.D.N.Y. Oct. 7, 2019) (no standing for claims where plaintiffs did not invest in certain funds).

In *Retirement Board*, for example, the Second Circuit held that a plaintiff lacked standing where its claims "turn[ed] on very different proof" for different loans being held by different trusts.

775 F.3d at 162 (citation and internal quotation mark omitted).   "[W]hether [the defendant] breached its obligations … require[d] examining its conduct with respect to each trust" because there is "no way in which answering these questions for the trusts in which Plaintiffs invested [would] answer the same questions for the numerous trusts in which they did not invest."  *Id.*

So too here.  Ms. Rynasko purports to represent a class that consists not only of students and a myriad of associated third-party payors in a particular school or program, but everyone who paid NYU tuition, whether as an undergraduate, graduate, or doctorate candidate, in any discipline. The admissions-related materials describing these varied programs, the course offerings, and course catalogs were different across NYU's various colleges, schools, and programs, and have changed over time.  *See* Exs. 36–39.  And, the manner and method of the delivery of classes within each – much less across all – varied, as did the student's subjective views of each course.

Ms. Rynasko bases her contract claim on the representations that she alleges NYU made individually to her.  Obviously, she was not exposed to representations made across each of NYU's disciplines and thousands of course offerings, nor did any alleged contract encompass all of them. And, NYU provided different refunds for school or course-based fees or equipment.  *See* Exs. 23, 25, 26.  Thus, "whether [NYU] breached its obligations … requires examining its conduct with respect to" the different admissions materials for each school, college, and program, and therefore, Ms. Rynasko lacks standing to assert claims on those students' behalf.  *Ret. Bd.*, 775 F.3d at 162.

### C.    Ms. Rynasko Lacks Standing to Seek Injunctive Relief.

Ms. Rynasko does not have standing to seek injunctive relief.   The "'irreducible constitutional minimum' of standing" requires a plaintiff to plead a "'concrete and particularized injury.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016) (citation omitted).  A plaintiff "lack[s] standing to pursue injunctive relief [if he or she is] unable to establish a 'real or immediate threat' of injury."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of*

14

*Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "[P]ast injuries … do not confer standing … unless the plaintiff … is likely to be harmed again … in a similar way." *Id.*

Here, Ms. Rynasko's purported injuries result from the now-concluded Spring 2020 semester.  Emily Rynasko graduated at the conclusion of the spring 2020 semester, so her mother cannot possibly suffer any future harm.  *See Zagoria,* 1:20-cv-03610-GBD, ECF No. 13, at 6. Accordingly, Ms, Rynasko does not have standing to seek injunctive relief.

**IV.**    **Ms. Rynasko's Breach of Contract and Breach of Implied Contract Claims Fail.**

The Court should refrain from second-guessing NYU's educational decisions, but, independently, Ms. Rynasko's breach of express and implied contract claims must be dismissed because: (1) as established above, she lacks privity of contract with NYU, *see, e.g.*, *Suffolk Cty.*, 728 F.2d at 63; (2) notations in the course registration system regarding class locations or mode of instruction do not create an enforceable contract, particularly given NYU's express disclaimer; (3) she otherwise fails to allege a specific promise by NYU that it broke; (4) there are no allegations that NYU acted in bad faith; (5) Covid-19 and the related government edicts closing schools rendered NYU's performance impossible; and (6) damages are too speculative.

**A.**    **Notations in the Course Registration System Regarding Class Locations and Mode of Instruction Do Not Create an Enforceable Contract.**

Ms. Rynasko cannot premise her claims on the course locations and mode of instruction in NYU's course registration system.  *See* AC ¶ 94.  As one Court explained,

> 'even if [a university does] not specifically reserve[] the right to make changes, courts have recognized that universities must have the flexibility to make changes in furtherance of their educational responsibilities. Certainly, … between a student's matriculation and graduation, an educational institution, which is a living, changing thing, may not reasonably be expected to remain static; and, conversely, change may reasonably be expected. Hence, each statement in a publication of what now is true does not necessarily become a term in the contract …'

*Cooper v. Peterson*, 626 N.Y.S.2d 432, 434 (N.Y. Sup. Ct. 1995) (quoting *Soderbloom v. Yale*

*Univ.*, 1992 WL 24448, at \*4 (Conn. Super. Ct. 1992)); *accord Cuesnongle v. Ramos*, 713 F.2d 881, 885 (1st Cir. 1983) (rejecting claim; university must have "discretion in dealing with uncertain contingencies"); *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976) (rejecting claim and recognizing "wide latitude and discretion" afforded educational institutions).

A court recently rejected the plaintiffs' argument in *Chong v. Northeastern University*, 2020 WL 5847626, at \*3 (D. Mass. Oct. 1, 2020). There, the Court dismissed a breach of contract claim, holding that the plaintiffs "have not plausibly established that the parties' agreement included a right to in-person instruction." *Id.* In so doing, the Court rejected the argument (also made here) that "in-person instruction" "became part of the parties' contract when they registered for courses scheduled to 'be taught within an assigned room in specific buildings.'" *Id.*

Here, NYU reacted to the changed circumstances presented by a global health crisis and Governor Cuomo's executive orders by making modifications to the delivery of course instruction "in furtherance of [its] educational responsibilities." *See Cooper*, 626 N.Y.S. at 434. It is not reasonable to expect that every notation made about NYU's intended course offerings pre-pandemic necessarily became a contract term, much less a material term, on which students can now sue. Indeed, the course registration system includes a wide variety of information, including course descriptions, instructors, dates, and classrooms. *See* AC ¶ 93. Under Ms. Rynasko's theory, each such item would constitute an enforceable contract term, and a student could demand her money back if, for example, a class was held in a different classroom than originally intended, or an instructor changed, or went on parental leave, or a day of class was canceled due to a snowstorm. The law dictates otherwise. *See*, *e.g.*, *Cooper*, 626 N.Y.S. at 434. Accordingly, Ms. Rynasko cannot state a breach of contract claim premised on notations in the course registration system.

This conclusion is reinforced by the fact that NYU expressly reserved the right to change,

relocate, and/or modify any course offerings.  Universities can effectively disclaim any specific promises made in bulletins, course catalogs, or other materials or publications.  *See*, *e.g.*, *Gally*, 22 F. Supp. 2d at 206, fn. 7 ("[university] could disclaim the existence of a specific promise through the use of … a [bulletin] disclaimer").  Such disclaimers bar breach of contract claims pertaining to those alleged promises.  *See Keles v. New York Univ.*, 1994 WL 119525, at *6 (S.D.N.Y. Apr. 6, 1994) (disclaimer precluded claim); *Deen v. New School Univ.*, 2007 WL 1032295, at *4-6 (S.D.N.Y. Mar. 27, 2007) (dismissing claim; bulletin "unambiguously state[d] that 'faculty' are 'subject to change without notice'"); *Prusack v. New York*, 117 A.D.2d 729, 730 (2d Dep't 1986).[5]  "[A] party cannot justifiably rely on a representation that is specifically disclaimed … "  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2002).

*Prusack* is instructive.  There, the plaintiffs were students who enrolled in the State University of New York ("SUNY") on the understanding that tuition would be $6,000.  117 A.D.2d at 729.  SUNY later increased tuition, and the plaintiffs sued for breach of contract.  *Id.*  The Court found that "no breach of contract occurred" because "[t]he rights and obligations of the parties, as contained in the university's bulletins, became a part of the parties' contract" and those documents included "specific disclaimers … that the tuition charges were subject to change."  *Id.* at 730.

So too here.  Ms. Rynasko bases her claims on locations and modes of instruction in the course registration system; she alleges that, as a result, she understood NYU to promise to provide "in-person" instruction.  AC ¶¶ 13, 18, 91-96.  Any such expectation, however, was unreasonable as a matter of law because Tisch's "Bulletin" acknowledged that NYU has the right to "change

---

[5]        *See also Mangla v. Brown Univ.*, 135 F.3d 80 (1st Cir. 1998) (affirming dismissal); *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 579 (6th Cir. 1988) (reversing denial of motion for directed verdict); *Villareal v. Chamberlain Coll. of Nursing and Health Scis. Inc.*, 2019 WL 4736488, at *2–4 (S.D. Tex. Sept. 27, 2019) (dismissing claim).

without notice *at any time at [its] sole discretion*," among other things, the "*course offerings*,

schedules, activities … of the school and its departments and programs." *See e.g.*, Exs. 7, 8

(emphasis added).   NYU expressly informed students, and students agreed, that changes could

include "the elimination of … *classes*, or activities; *the relocation of or modification of the content*

*of any of the foregoing*; and the cancellation of scheduled classes." *Id.*  (emphasis added).   Thus,

NYU did not promise in person instruction.

**B.     Ms. Rynasko Has Not Identified a Specific Promise That Was Broken.**

The implied contract between NYU and Ms. Rynasko's daughter was, at most, that NYU

would provide her the ability to earn academic credits, and ultimately a degree, in exchange for

tuition.  See Gally, 22 F. Supp. 2d at 206 ("When a student enrolls … an implied contract arises:

if the student complies with the terms … she will obtain the degree she seeks.").  Ms. Rynasko

admits NYU upheld its end of the bargain: it continued to provide her daughter educational

services; it awarded her daughter academic credits; and it conferred on her an NYU degree.  AC ¶

71 ("students are still getting full credit for … [their] course[s]"); see Zagoria, 1:20-cv-03610-

GBD, ECF No. 13, at 6.  As a result, NYU did not breach this contract.  See Roe v. Loyola Univ.

New Orleans, 2007 WL 4219174, at *2-3 (E.D. La. Nov. 26, 2007) (rejecting claim by student

who, after Hurricane Katrina, attended classes at another school, earned credits and graduated;

there was no contract "that would entitle him to a free semester of law school").

To the extent Ms. Rynasko attempts to state a claim based on an implied contract arising

out of the various statements in admissions materials, that claim fails too.  Under New York law,

a "plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made,

and (3) the university's failure to provide those services or keep those promises." *Doe v. Columbia*

*Univ.*, 2020 WL 1528545, at *5-6 (S.D.N.Y. Mar. 31, 2020) (dismissing breach of contract claim).

"The application of contract principles to the student-university relationship does not provide

judicial recourse for every disgruntled student" and "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim." *Gally*, 22 F. Supp. 2d at 207.  "[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract … " *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dep't 2010) (affirming dismissal).  General statements of policy are insufficient.  *See Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57, 60 (2d Cir. 2019) (affirming dismissal); *Cheves v. Tr. of Columbia Univ.,* 89 A.D.3d 463, 464 (1st Dep't 2011) (same); *Ward v. New York Univ.*, 2000 WL 1448641, at *3-5 (S.D.N.Y. Sept. 28, 2000) (dismissing claim); *Chong*, 2020 WL 5847626, at *2-3 (dismissing claim; plaintiffs "d[id] not plausibly establish … any right to in-person instruction").

In *Cheves,* for example, the plaintiff alleged that Columbia breached its contract by not permitting him on campus.  89 A.D.3d at 464.  The First Department affirmed dismissal because "nothing in [the Alumni Relations brochure serving as the basis of the plaintiff's claims] guarantee[d] unfettered, irrevocable access for alumni to the campus … " *Id.*  So too here.

Other statements on which Ms. Rynasko premises her claim are inactionable puffery and generic descriptions rather than specific, discrete promises to provide defined services.  *See*, *e.g.*, AC ¶ 36 ("Learning opportunities present themselves both in and out of the classroom, befitting an institution that is and always has been 'in and of the city.'"); ¶ 37 ("these clubs will enrich your experience"); ¶ 38 ("… you will be surrounded by scholars and peers who will enlighten and challenge you … your fellow students could be your colleagues for life"); ¶ 39 ("[u]niversity life at NYU is supplemented with a variety of resources and services … ").  As in *Ward*, these

statements do not constitute a specific promise by NYU to provide a particular service, and cannot serve as the basis for a breach of contract claim.  *See Ward*, 2000 WL 1448641, at *4.

Moreover, the website statements Ms. Rynasko relies upon have changed over time.  For example, the webpage containing the "NYU in New York City" statements (*see* AC ¶ 34) and "Campus Resources" statements (*Id.* ¶ 39) did not appear until after Emily Rynasko applied to, and was accepted by, NYU.  *See* Exs. 36, 37.  Similarly, the "[w]hat makes NYU a unique place to learn" statement appeared on NYU's "Graduate Admissions" webpage (AC ¶ 38) after Emily's acceptance and is irrelevant because she was an undergraduate student.  *See* Exs. 38, 39.

As to fees, the AC is vague as to which fees Ms. Rynasko paid, which were refunded, and which allegedly should have been refunded but were not.  *See*, *e.g.*, AC ¶ 16.  The only specific fee she mentions is the Registration and Services Fees that "furnish resources to fund a portion of the budgets for a variety of services, operations, and activities that serve students and enhance university life in support of our academic program.  These services may include, but are not limited to, the Registrar, Student Health Center, the Wellness Exchange / Counseling Service, the Wasserman Center, Information Technology, and Student Life."  *Id.* ¶ 54.  NYU continued to provide these and other services remotely, including: career services through the Wasserman Center, student health services, academic support, advising, IT, and more.  *See* Ex. 28.

Finally, Ms. Rynasko mentions a string of online posts from purported NYU students, pulled from a Change.org online petition, to support her claims.  AC ¶¶ 71, 72, 86.  This effort fails. First, the Court need not presume the facts alleged in the Change.org petitions to be true, as none of these facts "can be accurately and readily determined" and do not derive "from sources

whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).[6] Second, the petitions

are irrelevant because none of these purported "students" are named plaintiffs, and may not in fact

even be NYU students at all, as anyone has the ability to access and sign a Change.org petition.

### C.    There Are No Allegations NYU Acted in Bad Faith.

Judicial intervention in cases against universities is limited to circumstances where the

school is alleged to have acted in bad faith, arbitrarily, or irrationally. *See, e.g.*, *Rodriguez v. New

York Univ.*, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007); *Olsson v. Bd. of Higher Educ. of

City of N.Y.*, 49 N.Y.2d 408 (1980).  As the U.S. Supreme Court has stated, "When judges are

asked to review the substance of a genuinely academic decision … they should show great respect

for the faculty's professional judgment" and "may not override [an academic decision] unless it is

such a substantial departure from accepted academic norms as to demonstrate that the person or

committee responsible did not actually exercise professional judgment."  *Regents of Univ. of

Michigan v. Ewing*, 474 U.S. 214, 225 (1985).  To the extent an implied contract exists between

students and a university, "[t]he essence of the implied contract is that an academic institution

must act in good faith in its dealings with its students." *Olsson*, 49 N.Y.2d at 414.  Thus, "[b]reach

of contract claims brought by students against universities are 'subject to judicial review only to

determine whether the defendants abided by their own rules, and whether they have acted in good

faith or their action was arbitrary or irrational.'"  *Rodriguez*, 2007 WL 117775, at *4 (dismissing

claims) (quoting *Babiker v. Ross Univ. School of Med.*, 2000 WL 666342, at *6 (S.D.N.Y. May

19, 2000), *aff'd* 86 F. App'x 457 (2d Cir. 2004)).  Accordingly, courts dismiss breach of contract

claims where the plaintiff has not alleged that the university acted in bad faith. *See, e.g.*, *Ward*,

---

[6]     If the Court takes judicial notice of the Change.org petitions the AC references (which it
should not), there were at least three other Change.org petitions urging NYU to close its campus
to ensure the safety of students and staff because of Covid-19. *See* Exs. 40–42.

2000 WL 1448641, at *5 (dismissing claim; "there is nothing in the record … to suggest that defendants have either acted in bad faith, arbitrarily or irrationally"); *Olsson*, 49 N.Y.2d at 414 (dismissing claim where college "amply fulfilled its obligation to act in good faith").

Here, Ms. Rynasko does not plead that NYU acted in bad faith. To the contrary, Ms. Rynasko acknowledges that NYU was forced to transition to remote learning "because of the global COVID-19 pandemic" and doing so was "justified." *Id.* ¶¶ 64, 69. Accordingly, there is no colorable allegation that NYU acted in bad faith and breached any purported promise.

### D.    Covid-19 Rendered Performance Impossible.

Even if Ms. Rynasko could make out a claim that there was an enforceable promise to provide in-person classes (which she cannot), Covid-19 and resulting government orders rendered NYU's performance impossible. Impossibility excuses performance where "destruction of … the means of performance makes performance objectively impossible" as a result of "an unanticipated event that could not have been foreseen or guarded against in the contract." *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (1st Dep't 2014) (finding impossibility); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 95 (2d Cir. 1994) (affirming dismissal); *L. N. Jackson & Co. v. Royal Norwegian Gov't*, 177 F.2d 694, 697 (2d Cir. 1949) (performance "prohibited by … order").

In *Organizacion JD LTDA*, for instance, the plaintiffs sued two banks after the government seized money transfers related to drug trafficking. 18 F.3d at 93. The plaintiffs asserted several causes of action, including breach of contract. *Id.* at 95. The Second Circuit affirmed dismissal of the breach of contract claims on impossibility grounds, holding that "the private intermediary banks cannot be subject to a damage action because the intervening government actions in ordering the seizures of the [transfers] rendered any enforceable contract impossible to perform." *Id.*

Here, similarly, Covid-19 and the resulting government orders precluded NYU's ability to provide in-person classes or to provide gathering places for students. *See* AC ¶¶ 40–43. Even if

22

there was an enforceable contract to so do (which there was not), NYU's ability to provide students with access to these locations and facilities was rendered impossible by Covid-19 and associated government orders, which limited public gatherings and closed non-essential businesses. Accordingly, any alleged non-performance by NYU is excused by impossibility.

E.     **Ms. Rynasko Failed Adequately to Allege Damages.**

To state a claim, a plaintiff must plead "cognizable damages" as a result of the defendant's alleged breach. *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at **2-3 (S.D.N.Y. Dec. 15, 2016) (dismissing claim); *see also House of Europe Funding I, Ltd. v. Wells Fargo Bank*, N.A., 2014 WL 1383703, at *10-11 (S.D.N.Y. Mar. 31, 2014) (same); *Int'l Bus. Machs. Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) (same).  Since Emily Rynasko received educational credits, her mother has suffered no damages. *See* AC ¶ 64.

A claim that Covid-19 required some portion of the semester's instruction to be remote and therefore somehow devalued Emily Rynasko's education is too speculative.  To ascertain liability and damages, the Court would have to examine the method and effectiveness of each course of instruction by each professor prior to Covid-19 and then, after, assess the value of in-person instruction as compared to remote instruction as perceived by the particular student, on a course-by-course basis, and calculate the percentage of tuition (if any) that should be refunded on a course-by-course basis. *See Mihalakis v. Cabrini Med. Ctr.* 151 A.D.2d 345, 346 (1st Dep't 1989) (the "difference between the value of the internship program provided by defendants and the value of an internship program having the characteristics that defendants represented to plaintiff" was too speculative to support a claim for fraud); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 93 (S.D.N.Y. 2012) ("a general decline" in value "insufficient" to plead "damages").  Because Ms. Rynasko fails to allege any non-speculative way to assess damages, the claim must be dismissed.

**V.**     **Ms. Rynasko's Unjust Enrichment Claim Must Be Dismissed.**

    **A.**     **The Unjust Enrichment Claim Is Duplicative of the Breach of Contract Claim.**

A claim for unjust enrichment must be dismissed where it is "merely duplicative." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016); *see also Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at \*11 (S.D.N.Y. Jul. 20, 2016) (unjust enrichment "is not a catchall cause of action" and "is not available where it simply duplicates … a conventional contract … claim") (citation and internal quotation marks omitted).  In *Bytemark, Inc. v. Xerox Corp.*, for instance, the Court dismissed as duplicative the plaintiff's unjust enrichment claim "based on the same factual allegations underlying its contract and tort claims."   342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018).

Moreover, courts have held that students may not assert unjust enrichment claims against universities where the relationship is governed by a contract.  *See*, *e.g.*, *Yalincak v. New York Univ.*, 2009 WL 10714654, at \*14 (D. Conn. Sept. 3, 2009) (applying New York law).  In *Yalincak*, the plaintiff, a former NYU student, asserted multiple claims, including for breach of contract and unjust enrichment.  *See Id.* at \*9-10, \*14.  The Court dismissed the unjust enrichment claim, finding that "[a]s plaintiff acknowledges, he and NYU had an implied contract … governed by the university's bulletins and regulations.  Because Plaintiff and NYU had a contract, he cannot bring an action for unjust enrichment."  *Id.* (citation omitted); *see also Jeffers v. Am. Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dep't 2015) (rejecting students' unjust enrichment claim as "indistinguishable from" and "duplicative of the contract claim[s]'"); *Chong*, 2020 WL 5847626, at \*4 (dismissing unjust enrichment claim; "plaintiffs … paid tuition and fees … in accordance with the terms of" their contracts and therefore "may assert a claim for breach of contract").

The same result is compelled here.  Ms. Rynasko's unjust enrichment claim is duplicative:

| Unjust Enrichment Allegations | Breach of Contract Allegations |
|---|---|
| "The payment of this tuition and mandatory fees was to be in exchange for an in-person, on-campus educational experience to be provided to the students throughout the entire semester." (AC ¶ 136). | "In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester." (*Id.* ¶ 117). |
| "NYU has retained the full benefit of the tuition and a majority of the mandatory fee payments by Plaintiff and members of the Class and Subclass for the semester, yet has failed to provide the in-person and on-campus live education and access to NYU's services and facilities for which tuition and the mandatory fees were paid." (*Id.* ¶ 138). | "Defendant has retained monies paid by Plaintiff and the Class and subclass for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain." (*Id.* ¶ 119). |
| "Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since NYU shut down on March 11, 2020." (*Id.* ¶ 140). | "Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since NYU shut down on March 11, 2020." (*Id.* ¶ 121). |

Accordingly, the unjust enrichment claim must be dismissed.[7]

## B.   NYU Was Not Unjustly Enriched.

To state a claim for unjust enrichment, "a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014). A mere allegation that a defendant "received benefits … is insufficient … " *Samad v. Goldberg*, 2016 WL 6678923, at *9 (S.D.N.Y. Nov. 14. 2016) (citation and internal quotation marks omitted). A plaintiff must

---

[7]     The fact that the unjust enrichment claim is plead in the alternative does not save it. "Unjust enrichment may be plead in the alternative where the plaintiff challenges the validity of the contract; it may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract." *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) (dismissing claim); *see also Kamdem-Ouaffo v. Pepsico, Inc.*, 2015 WL 1011816, at *13 (S.D.N.Y. Mar. 9, 2015) (same); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (same). Here, Ms. Rynasko does not challenge the validity of the contract.

establish that "it is against equity and good conscience" for the defendant to retain the money, such as that there was "some mistake or deception practiced upon" the plaintiff by the defendant. *Goel*, 111 A.D.3d at 791, 792 (citation and internal quotation marks omitted) (dismissing claim); *see also Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 209 (S.D.N.Y. 2016) (dismissing claim).

Here, Ms. Rynasko voluntarily paid her daughter's tuition and fees to NYU in exchange for educational services and credits, and NYU provided them, and it conferred a degree on her daughter. And, the AC admits that "NYU has to continue paying rent for their buildings and teachers who are still diligently teaching their students. " AC ¶ 71. Ms. Rynasko has not alleged any facts demonstrating that "equity and good conscience" mandate the return of the tuition paid given an unprecedented pandemic followed by state-wide shelter-in-place orders, which forced NYU to transition to remote instruction. To the contrary, if NYU "were required to reimburse plaintiff for ... tuition payments [s]he made, *plaintiff* would be unjustly enriched." *See Roe*, 2007 WL 4219174, at *3 (rejecting claim) (emphasis added); *Yalincak,* 2009 WL 10714654, at *14 (student "received the educational benefit of his tuition payments when he took classes").

Where, as here, Emily Rynasko "receive[d] the benefits of the services defendants provided," Ms. Rynasko "does not have an equitable claim to return of the sums paid." *Metal Cladding, Inc. v. Brassey*, 159 A.D.2d 958 (4th Dep't 1990); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 388 (S.D.N.Y. 2002) (rejecting claim). And, NYU already refunded fees associated with certain services that would not be provided in light of Covid-19. *See* Exs. 23, 25, 26. Accordingly, the unjust enrichment claim fails.

**VI.**   **Ms. Rynasko's Conversion Claim Must Be Dismissed.**

    **A.**   **The Conversion Claim Is Duplicative of The Breach of Contract Claim.**

"[A]n action for conversion cannot lie where damages are merely sought for breach of contract." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) (dismissing claim); *see also Jeffers*, 125 A.D.3d at 443 (same); *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (dismissing claim; "the … allegation is … asserted in substantially identical fashion" to the breach of contract claim). "Where a conversion claim is grounded in a contractual dispute, the plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *OTG Brands, LLC v. Walgreen Co.*, 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (citation and internal quotation marks omitted).

Here, Ms. Rynasko's conversion claim is premised on the same allegations as her breach of contract claim, not any unlawful or wrongful conduct by NYU.  Ms. Rynasko submitted tuition payments to NYU, and in return, NYU provided her daughter educational services, credits, and an NYU degree.  *See Armored Group*, 2009 WL 1110783, at *3 (dismissing conversion claim).  In any event, NYU's conduct was not wrongful or unlawful as NYU could not have continued in-person classes given Governor Cuomo's orders to the contrary.

    **B.**   **Ms. Rynasko Fails to State a Claim for Conversion.**

"To withstand a motion to dismiss … a plaintiff must allege: (1) the property … is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question …" *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).  Ms. Rynasko's claim fails all three requirements.

First, "[i]t is well-settled New York law that an action for the conversion of monies is

insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession." *In re Musicland Holding Corp.*, 386 B.R. 428, 440 (S.D.N.Y. 2008) (affirming dismissal; complaint did not allege that the money was "part of a separate, identifiable, segregated fund") (citation and internal quotation marks omitted). "[I]f the allegedly converted money is incapable of being described or identified … it is not the proper subject of a conversion action." *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) (dismissing claim; "plaintiffs do not claim ownership of a specifically identifiable, segregated $1 million") (citation and internal quotation marks omitted).

Here, Ms. Rynasko makes the entirely conclusory allegation that NYU converted "specific and readily identifiable funds" (AC ¶ 151) but does not (and cannot) allege any facts demonstrating that the tuition payments were somehow segregated or otherwise specifically identifiable after payment, such as alleging that tuition payments are held separately in individual, segregated funds for each student. Without such facts, tuition payments cannot be subject to a conversion claim.

Second, "[c]onversion is the exercise of unauthorized dominion over the property … in interference with a plaintiff's legal title or superior right of possession." *Citadel Mgmt.*, 123 F. Supp. 2d at 147. Thus, a plaintiff must allege "ownership, possession or control over the property before its conversion." *Kirschner*, 648 F. Supp. 2d at 540 (citation and internal quotation marks omitted); *see also Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (dismissing claim); *OTG Brands*, 2015 WL 1499559, at *9-10 (same); *Weiss v. Rutgers Univ.*, 2014 WL 2608201, at *7 (D.N.J. June 10, 2014) (same).

Here, Ms. Rynasko fails to allege facts demonstrating ownership or title over the tuition payments when NYU transitioned to remote instruction. Under NYU's refund policy, students had a right to a refund only if they withdrew from their courses by February 24, 2020. *Id.* Because

Emily Rynasko did not do so, she no longer had any right to or ownership over her Spring 2020 semester tuition, and NYU did not exercise unauthorized control over her tuition payment.

## VII.   Ms. Rynasko's Money Had and Received Claim Must Be Dismissed.

A claim for money had and received is "essentially identical to … unjust enrichment." *Belda v. Doerfler*, 2015 WL 5737320, at *4 n.4 (S.D.N.Y. Sept. 30, 2015) (collecting cases).  A plaintiff must allege that that: (1) the defendant received money belonging to the plaintiff; (2) the defendant benefitted; and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money.  *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984).  "Traditionally, the remedy for money had and received is available if one man has obtained money from another, through the medium of *oppression, imposition, extortion, or deceit, or … trespass*." *Panix Promos., Ltd. v. Lewis*, 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (emphasis added) (citation and internal quotation marks omitted); *see also Global Entm't*, 2000 WL 1672327, at *5 (claim available where "one party possesses money that in equity and good conscience he ought not to retain") (citation and internal quotation marks omitted); *Villareal*, 2019 WL 4736488, at *4 (dismissing claim asserted against university regarding change in graduation requirements).  In *Panix Promotions*, for example, the Court dismissed the plaintiff's claim for money had and received where the plaintiff claimed it was "owed money – that it *intentionally* paid [the defendant] – because [the defendant] failed to perform." *Id.* at *2 (emphasis in original).  The Court disagreed because "the money … was freely given to him with the expectation of performance, not repayment." *Id.*

Here, Ms. Rynasko intentionally paid money to NYU in exchange for NYU's performance.  She does not allege that her tuition payments were *not* voluntary.  Rather, she concedes that she knowingly and voluntarily paid NYU tuition and fees (AC ¶ 52) in exchange for educational credits from a "top-ranked academic program[]" (*Id.* ¶ 50), which her daughter received.  Moreover, as

29

set forth above, Ms. Rynasko has not alleged that "equity and good conscience" require a refund of her daughter's tuition.  *See Global Entm't*, 2000 WL 1672327, at *5.

Further, Ms. Rynasko only summarily alleges that NYU "has been unjustly enriched."  AC ¶ 157.  She admits that NYU is a "non-profit" organization (*Id.* ¶ 25), which continued to provide remote instruction and academic credits.  *Id.* ¶ 64.  She also admits that NYU continued paying rent and instructors salaries.  *Id.* ¶ 71.  Thus, Ms. Rynasko's money had and received claim fails.

<h1 style="text-align:center">CONCLUSION</h1>

The AC should be dismissed with prejudice.  Ms. Rynasko should not be permitted leave to amend further because she already amended, failed to correct the numerous deficiencies identified and amendment is futile.  *See Hauptman v. Interactive Brokers, LLC*, 349 F.Supp.3d 292 (S.D.N.Y. 2018) (Daniels, J.) (denying leave).

Dated: October 6, 2020                    Respectfully submitted,
                                          **DLA PIPER LLP (US)**


                                           */s/ Keara M. Gordon*
                                          Brian S. Kaplan
                                          Keara M. Gordon
                                          Colleen Carey Gulliver
                                          Rachael C. Kessler
                                          1251 Avenue of the Americas
                                          New York, New York 10020-1104
                                          Phone: (212) 335-4500
                                          Facsimile: (212) 335-4501
                                          brian.kaplan@us.dlapiper.com
                                          keara.gordon@us.dlapiper.com
                                          colleen.gulliver@us.dlapiper.com
                                          rachael.kessler@us.dlapiper.com

                                          *Attorneys for Defendant New York University*

## **CERTIFICATE OF SERVICE**

I hereby certify that I am one of the attorneys for the defendant in this action and that on October 6, 2020, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

_/s/ Keara M. Gordon_
Keara M. Gordon
