21-1333-cv
*Christina Rynasko v. New York University*

# In the
# United States Court of Appeals
## For the Second Circuit

———————————————

August Term 2021

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar 23 2023

No. 21-1333-cv

CHRISTINA RYNASKO,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED
*Plaintiff-Appellant,*

v.

NEW YORK UNIVERSITY,
*Defendant-Appellee.*

———————————————

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-3250 (GBD)
George B. Daniels, District Judge, Presiding.
(Argued March 28, 2022; Decided  March 23, 2023)

Before:      PARKER, PARK, and ROBINSON, *Circuit Judges.*

Plaintiff-Appellant Rynasko appeals a decision of the United States District Court for the Southern District of New York (Daniels, *J.*) dismissing her claims against New York University (NYU) and declining to allow her to amend her complaint to add another plaintiff.  Rynasko is a parent of an adult student who attended New York University (NYU) (Defendant-Appellee) during the Spring 2020 semester—a semester during which NYU suspended its in-person operations and transitioned to remote instruction and services due to the COVID-19 pandemic.  Alleging breach of contract, unjust enrichment, and other claims, Rynasko brought a putative class action suit against NYU to partially

recover the tuition and fees she paid for her daughter's Spring 2020 semester. The district court granted NYU's motion to dismiss on the basis that Rynasko lacked standing and denied Rynasko's motion to amend her complaint to add a current NYU student as an additional plaintiff because it concluded that amendment would be futile.

We conclude that the district court correctly determined that Rynasko lacks standing to bring her breach of contract, unjust enrichment, and money had and received claims because she has not alleged an injury-in-fact to herself, rather than to her daughter. And we hold that Rynasko fails to plausibly allege a claim for conversion. For these reasons, the district court properly dismissed her claims. However, we conclude that amending the complaint to add a current student as plaintiff would not be futile. The student plaintiff plausibly alleges claims for breach of contract, unjust enrichment, and money had and received that would survive a motion to dismiss. Accordingly, we AFFIRM the judgment of the district court in part, VACATE in part, and REMAND for further proceedings.

Judge Park concurs in part and dissents in part in a separate opinion.

Judge Parker concurs in part and dissents in part in a separate opinion.

> JOSEPH I. MARCHESE, Bursor & Fisher, P.A., New York, NY, *for Plaintiff-Appellant*.
>
> SETH P. WAXMAN (Alan Schoenfeld, Swapna Maruri, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., *for Defendant-Appellee*.
>
> BRIAN S. KAPLAN (Keara Gordon, Colleen Carey Gulliver, Rachael C. Kessler, *on the brief*), DLA Piper LLP (US), New York, NY, *for Defendant-Appellee*.

BETH ROBINSON, Circuit Judge:

At the onset of the COVID-19 pandemic, in the face of unprecedented public health challenges and executive orders prohibiting large gatherings, New York University (NYU), like colleges and universities around the country, rapidly and dramatically changed the way it delivered services.  These changes included transitioning to remote online courses in place of in-person classes, closing residence halls, and eliminating a host of in-person facilities and services for the latter portion of the Spring 2020 semester.

In response to these changes, Christina Rynasko brought a putative class action against NYU seeking a partial refund of the tuition she paid for the Spring 2020 semester on behalf of her adult daughter, Emily, then an undergraduate at NYU's Tisch School of the Arts.[1]  She did not suggest that NYU should not have taken the steps it took in response to the pandemic, but argued that NYU had not delivered the educational services, facilities, access, and opportunities for which Rynasko paid, and she was thus entitled to a pro-rated refund of tuition and fees.

The United States District Court for the Southern District of New York (Daniels, *J.*) granted NYU's motion to dismiss Rynasko's claims on the basis that she lacked standing, and declined to allow Rynasko to amend the complaint to

---

[1] Emily, who is not a party to this lawsuit, has since graduated from NYU.

add Casey Hall-Landers, a current NYU adult student, as an additional plaintiff because it concluded the Proposed Complaint would be subject to dismissal.

This appeal calls upon us to determine whether Rynasko, as the tuition-paying parent of an adult student, has standing to pursue her claims, and whether Hall-Landers's allegations plausibly allege a claim for breach of implied contract or unjust enrichment such that dismissal at this stage of the litigation is unwarranted. It does *not* require us to determine whether the unprecedented public health emergency and associated executive orders limiting gatherings give NYU a contractual defense, nor whether plaintiffs can prove that NYU breached the parties' implied agreement, nor whether plaintiffs can prove that the educational opportunities they received were less valuable than the ones they expected, nor whether the class action allegations in the Proposed Complaint are plausible.

While we largely agree with the district court's conclusions as to Rynasko's claims, we don't agree that amendment would be futile; instead, we conclude that the Proposed Complaint, to the extent it seeks to bring claims for breach of contract, unjust enrichment, and money had and received on behalf of Hall-Landers, states plausible claims. We accordingly AFFIRM in part, VACATE in part, and REMAND this case for further proceedings.

# BACKGROUND

1. Facts[2]

Rynasko enrolled her daughter Emily at NYU "to obtain the full experience of live, in-person courses and direct interactions with instructors and students." App'x 32. Before paying tuition and fees for the Spring 2020 semester, Rynasko and her daughter reviewed the NYU course catalog and understood that every course in which Emily enrolled was to be taught in person. "[T]he in-person nature of the courses was part of the benefit of the bargain, and [Rynasko] would not have paid as much, if any, tuition and fees" had she known the courses would not be taught in person. App'x 32. NYU's in-person courses differ from its online program ("NYU Online"), which offers limited undergraduate and graduate-level degrees and "pale[s] in comparison to its in-person offerings." App'x 39. Emily purposefully did not apply to NYU's online programs.

---

[2] Except where noted, our description of the facts is drawn from the amended complaint (the "Complaint") and the proposed second amended complaint (the "Proposed Complaint"). Because we are at the motion to dismiss stage, we treat all factual allegations as true and draw all reasonable inferences from those allegations in Plaintiffs' favor. *See, e.g.*, *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As such, we express no opinion at this stage as to whether the allegations are correct.

Rynasko alleged that the NYU tuition was "predicated on access to and constant interaction with and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things."  App'x 33.

These expectations were based in substantial part on NYU's own marketing efforts highlighting the campus experience and personal interaction with renowned faculty and staff as reasons to attend NYU.  On its admissions website, NYU also promoted its extracurricular activities, explaining that "[f]rom residence halls to clubs and organizations, these clubs will enrich your experience" and "help you form lifelong connections with diverse classmates from across the United States and the world."  App'x 37 (alteration in original). NYU also promoted students' access to facilities such as a library open round-the-clock, a student center with "nine floors of socialization," and "the largest theater space south of Times Square" that offers "amazing productions."  App'x 38.

Notably, the Tisch Bulletin did include a disclaimer under its table of contents reserving NYU's right to "change without notice at any time at the sole

discretion of the administration" its "policies, requirements, course offerings, schedules, activities, tuition, fees, and calendar . . . including, but not limited to, the elimination of the school, programs, classes, or activities; the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities."[3]  App'x 125.

In January 2020, Spring semester had barely gotten underway when officials in the United States confirmed the first known domestic infections of COVID-19.  By early March, the World Health Organization had declared COVID-19 a pandemic.  On March 7, Governor Cuomo declared a state of emergency and, shortly thereafter, closed public schools, prohibited large gatherings, and shuttered bars and restaurants.[4]  Executive Order No. 202.3

---

[3] Rynasko did not cite this language in her Complaint, but does not dispute that it is included in the Tisch Bulletin.  Because this document forms part of any implied contract with NYU, we may consider it in reviewing the court's dismissal of Rynasko's claims.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) ("[W]e may consider any written instrument attached to the Complaint as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (alteration and quotation marks omitted).

Although most of Emily's courses were in the Tisch School, she also alleges she took one class in the College of Arts and Sciences.  The NYU College of Arts and Sciences bulletin contained a nearly identical disclaimer.

[4] "When considering a motion made pursuant to Rule 12(b)(6)" we may take judicial notice of documents from official government websites, including "Executive Orders . . . as they are accessible on the State of New York's Website." *Off. Sol. Grp., LLC*

(Mar. 16, 2020).  On March 9, NYU announced that all in-person classes would be suspended beginning March 11.  On March 16, NYU announced it was closing residence halls and would be conducting classes remotely through the end of the semester.

At that time, Emily was majoring in musical theater at the Tisch School. For that semester, Rynasko paid all required tuition and fees for Emily— approximately $36,000.

Despite the changes in NYU's offerings and operations, NYU continued to charge full tuition and fees.  Rynasko alleges that in doing so, it "continu[ed] to reap the financial benefit of millions of dollars from students," despite offering "something far less" than a "comprehensive academic experience": "a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study."  App'x 29.

The Proposed Complaint included the above allegations from Rynasko's Complaint, and added additional allegations specific to Hall-Landers's experience.  Like Emily, Hall-Landers chose NYU "for the variety of educational

_____

*v. Nat'l Fire Ins. Co. of Hartford,* 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)).

and extracurricular opportunities and benefits that only an in-person program can provide." App'x 564. Hall-Landers was enrolled as a dance major in the Tisch School during that semester. Prior to the onset of COVID-19, Hall-Landers's dance major cohort met each weekday for three hours in NYU's dance studio.

As a result of NYU's closure, Hall-Landers, who relocated to their parents' home on the West Coast, had to take classes at off hours or record the class, interfering with in-person feedback from professors. They also had to purchase a ballet bar out-of-pocket to participate in remote dance classes from home, were deprived of access to the NYU dance studio, and no longer had access to physical therapy services related to the dance instruction. Like Emily, Hall-Landers paid all required tuition and fees for the Spring 2020 semester.

2.{.underline}District Court Proceedings

Rynasko sued NYU in April 2020 on behalf of herself and a putative class. Her Complaint includes state law claims for breach of contract, breach of implied contract, unjust enrichment, money had and received, and conversion. It acknowledges that the closure of campus due to COVID-19 was "justified," but alleges that the campus closures and cancellations caused her "significant loss" for which she seeks recompense. App'x 44.

9

NYU moved to dismiss, challenging the sufficiency of Rynasko's allegations and arguing that Rynasko lacked standing to bring her claims because she had not suffered a cognizable injury based on denial of in-person courses, activities and services to *Emily*.

While that motion was pending, Rynasko filed a motion for leave to file the Proposed Complaint to add Hall-Landers as an additional named plaintiff and class representative.

The district court granted NYU's motion to dismiss and denied Rynasko's motion for leave to amend.  *See Rynasko v. New York Univ.*, No. 20-CV-3250, 2021 WL 1565614 (S.D.N.Y. Apr. 21, 2021).[5]  The court reasoned that Rynasko lacked standing to press her claims because "any tuition contract is between NYU and the adult student, not the student's parent," Rynasko did not plausibly allege that Emily was a minor or that Rynasko was an intended third-party beneficiary of the contract between Emily and NYU, and any economic loss Rynasko

---

[5] In its decision, the district court cross-referenced its decisions in several other cases in which it contemporaneously addressed substantially the same claims.  *See id.* at *1, citing *Zagoria v. New York Univ.*, No. 20-CV-3610, 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021); *Morales v. New York Univ.*, No. 20-CV-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021); *Romankow v. New York Univ.*, No. 20-CV-4616, 2021 WL 1565616 (S.D.N.Y. Apr. 21, 2021).

suffered as a result of NYU's transition to remote operations was traceable to Rynasko's arrangement with Emily, not with NYU. *Id.* at *2–*3.

The court denied Rynasko's request for leave to amend on the ground that the Proposed Complaint—which, except for the addition of Hall-Landers as a plaintiff, asserted essentially the same claims as the Complaint—did not allege any claims that would survive a motion to dismiss. The court concluded that the Proposed Complaint did not allege a plausible breach of contract claim because it failed to plead the existence of any specific promise by NYU to provide exclusively in-person instruction. *Id.* at *3. It also relied upon the disclaimer language in the Tisch Bulletin reflecting NYU's reservation of the right to change, relocate, and/or modify its offerings. *Id.* at *3 n.3. With respect to the breach of contract claim for return of fees, the court concluded that the allegations were too conclusory and non-specific to state plausible claims. *Id.* at *4.

The court also reasoned that the Proposed Complaint failed to state claims for unjust enrichment, money had and received, or conversion because none of these claims could be predicated on a mere breach of contract**.** *Id.* Accordingly, the court concluded that because Hall-Landers's proposed claims could not survive a motion to dismiss, amendment would be futile. *Id.* The court

11

dismissed the case and entered a final judgment from which Rynasko now appeals.

## DISCUSSION

We review without deference a district court's dismissal for lack of standing under Federal Rule of Civil Procedure 12(b)(1), dismissal for failure to state a claim under Rule 12(b)(6), and denial of leave to amend based on a legal determination that amendment would be futile. *See Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (standing); *Harris*, 572 F.3d at 71 (failure to state a claim); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (leave to amend based on futility).

1. <u>Rynasko's Complaint</u>

Because we agree with the district court that Rynasko lacks standing to bring breach of contract, unjust enrichment, or money had and received claims against NYU, and conclude that she fails to plausibly allege a claim for conversion, we affirm the district court's dismissal of Rynasko's Complaint.

   a. *Breach of Contract*

We conclude that Rynasko, as the parent of (and tuition payer for) an adult NYU student, lacks standing to sue NYU for alleged injuries arising from NYU's provision of virtual rather than in-person teaching and services *to Emily* for a

12

portion of the Spring 2020 semester.  To pursue her claims, Rynasko must allege

an injury to her own legally protected interests.  Because she is neither a party to

the contract between Emily and NYU, nor an intended third-party beneficiary of

that agreement, nor an assignee of Emily's claims, we agree with the district

court that she lacks standing to sue for breach of contract.

The "irreducible constitutional minimum" of standing contains three

elements:

> (1) "[T]he plaintiff must have suffered an injury in fact," i.e., "an
> invasion of a legally protected interest which is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical;"
> (2) "[T]here must be a causal connection between the injury and the
> conduct complained of . . .;" and
> (3) "[I]t must be likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and

quotation marks omitted).  At issue here is whether Rynasko suffered a

cognizable injury in fact.  Injury in fact is the "first and foremost" element of

standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration omitted).  To

be particularized, the injury must "affect the plaintiff in a personal and

individual way."  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022)

(quoting *Spokeo*, 578 U.S. 330 at 339).  And while a party may seek redress for

injuries done to that party, it may not for "injuries done to others."  *Moose Lodge*

*No. 107 v. Irvis*, 407 U.S. 163, 166 (1972); *see also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1991) (a litigant must ordinarily assert the litigant's own legal rights and interests and "cannot rest [a] claim to relief on the legal rights or interests of third parties") (internal citation and quotation marks omitted).

In the context of claims for breach of contract, a third-party beneficiary to a contract has standing to sue for breach. *See Hillside Metro Associates, LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 50 (2d Cir. 2014); *see also Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 786-87 (2006) (recognizing that under New York law, third-party beneficiaries of a contract have standing to sue for breach of that contract). However, this court has held that a non-party to the contract lacks standing to sue for breach absent a valid assignment of the claim. *See, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 790 F.3d 411, 418 (2d Cir. 2015) (plaintiff lacked standing to bring contract action in its own name on promissory notes with respect to which plaintiff was authorized to collect payment because plaintiff did not establish valid assignment of ownership of notes).

Rynasko's contract claim rests on the allegation that she paid approximately $36,000 in tuition to NYU in exchange for her daughter's access to in-person classes, programs, and services during the Spring 2020 semester.

Because the in-person nature of the courses was part of the benefit of the bargain, Rynasko alleges, she would not have paid as much if she had known that her daughter's courses would be virtual, and NYU therefore caused Rynasko financial loss sufficient to support standing by refusing to refund the difference.

But Rynasko does not, and cannot, plausibly allege that *she* had a contract with NYU, nor that Emily assigned those rights to Rynasko, and accordingly any failure by NYU to meet its obligations under its contract with Emily does not impinge on a legally cognizable interest of Rynasko's. Her legally protected interest in the contract between Emily and NYU is not different from that of a hypothetical bank who loaned Emily the money to fund her education or a generous unrelated benefactor who gifted Emily the funds—if the lender or donor would not have standing to sue for breach of the University's implied contract with Emily, then neither does Rynasko.[6]

Moreover, Rynasko was not an intended third-party beneficiary of the contract between Emily and NYU. "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that

---

[6] Rynasko's Complaint contains no allegations concerning the understanding between her and Emily with respect to Rynasko's payment of Emily's fees and tuition for Spring 2020, so it is unclear whether Rynasko and Emily viewed Rynasko's payments as a gift, loan, or something else altogether.

'clearly evidence an intent to permit enforcement by the third party' in question."

*Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985))

(alteration omitted).  Rynasko has not plausibly alleged the existence of any such

intention.  The fact that Emily used Rynasko's money to pay her tuition and fees

does not change this result.[7]

In short, as a non-party to the contract between Emily and NYU, Rynasko

lacks legally enforceable expectations about Emily's NYU educational

experience.  Consequently, she suffered no cognizable injury in fact when NYU

---

[7] Federal courts have concluded nearly unanimously that parents of adult students lack standing to bring similar COVID-19-related lawsuits against universities, even when they paid tuition and fees.  *See Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 24-25 (D. Conn. 2021) (holding that parent plaintiffs lacked standing to sue Quinnipiac University where they failed to allege facts that would establish that they entered into a contract with Quinnipiac); *see also Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 236-37 (N.D.N.Y. 2021) (finding no standing where plaintiffs failed to allege that they directly contracted with Cornell or that they were intended third-party beneficiaries); *Gociman v. Loyola Univ. of Chicago*, 515 F. Supp. 3d 861, 866 (N.D. Ill. 2021) (finding parents' allegations insufficient to establish injury-in-fact where parents did not enter into contract with Loyola University), *rev'd in part on other grounds*, 41 F.4th 873 (7th Cir. 2022); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *3 (W.D.N.Y. Dec. 18, 2020); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *5 (C.D. Cal. Dec. 11, 2020); *Meissner v. Syracuse Univ.*, No. 5:20-CV-839 (TJM/ATB), 2021 WL 1536676, at *3 (N.D.N.Y. Apr. 13, 2021); *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 524 F. Supp. 3d 1346, 1354–55 (S.D. Fla. 2021); *Salerno v. Florida S. Coll.*, 488 F. Supp. 3d 1211, 1216 (M.D. Fla. 2020).  *But see Burt v. Bd. of Trs. of Univ. of R.I.*, 523 F. Supp. 3d 214, 226-27 (D.R.I. 2021) (finding parent-plaintiff sufficiently alleged injury in fact to satisfy Article III standing to challenge university's failure to refund tuition).

suspended in-person classes, activities, and services in response to the COVID-19 pandemic.

### b. *Unjust Enrichment and Money Had and Received*

We likewise affirm the district court's dismissal of Rynasko's claims for unjust enrichment or money had and received because Rynasko has no legally protected interest arising from Emily's relationship with NYU.

Rynasko's theory of unjust enrichment is essentially the same as her breach of contract argument: Rynasko paid Emily's tuition and fees, NYU accepted those payments, and NYU failed to deliver the expected services.[8]  Rynasko's claimed injury is that she expended *her* funds for Emily's tuition.

Payment of money can give rise to an injury, but an injury to *Rynasko's* expectation as to the services *Emily* would receive in exchange for the tuition payments paid to NYU on Emily's behalf pursuant to its contract with Emily is not an injury *to her legally protected interest*.  Whether Rynasko and Emily understood Rynasko's payment for Emily's tuition and fees to constitute a loan or a gift to Emily is unclear from the Complaint.  But in the absence of a

---

[8] "A cause of action for money had and received is similar to a cause of action to recover damages for unjust enrichment, the essence of which is that one party has received money or a benefit at the expense of another," so we analyze the viability of Rynasko's unjust enrichment and money had and received claims together.  *Gargano v. Morey*, 86 N.Y.S.3d 595, 599 (2d Dep't 2018).

relationship between Rynasko and NYU, the only plausible inference is that the money was paid *for* Emily.  As the district court noted, any economic loss Rynasko has suffered as a result of NYU's transition to virtual courses and services "is traceable to the arrangement between mother and daughter," not a relationship between Rynasko and NYU.  *Rynasko*, 2021 WL 1565614, at *3.  *See Mandarin Trading, Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) ("Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated."); *see also Stephani v. Lent*, 63 N.Y.S. 471 (Sup. Ct. 1900) (rejecting mother's claim for money had and received against attorney who failed to deliver promised legal services for her son where mother paid for legal services, but attorney's promises ran to son).  Thus, we conclude that Rynasko has no standing to pursue her unjust enrichment claim.[9]

---

[9] Judge Park's concurrence and dissent argues that under our precedents, including *John v. Whole Foods Market Group, Inc.*, Rynasko has alleged a monetary harm sufficient to confer standing: "if overpaying for a cupcake is a 'nontrivial economic injury' that creates standing, so is overpaying for a college education."  *See* Park Op. at 3 (citing 858 F.3d 732, 734-35 (2d Cir. 2017)).  But the issue is not whether overpaying is an economic injury supporting standing, rather, the issue is whether a parent who provides funds to an adult child for a particular purpose suffers a cognizable injury when that purpose is frustrated. In *John*, the plaintiff himself had purchased the cupcakes.  *See John*, 858 F.3d at 734.  That case would only be comparable to this one had John gratuitously given the cupcake money to his adult daughter, who then purchased the cupcakes for herself.  The dissent's citations to Eleventh Circuit cases are similarly unpersuasive because in those cases, the

c. *Conversion*

Rynasko's conversion claim fails on the merits.[10]  A claim of conversion

under New York law "cannot be predicated on a mere breach of contract."  *Jeffers*

*v. Am. Univ. of Antigua*, 3 N.Y.S.3d 335, 339 (1st Dep't 2015) (awarding summary

judgment to defendants where plaintiffs' conversion claims alleged no facts

independent of the facts supporting their breach of contract claims) (citation

omitted).

Rynasko's plausible allegations do not establish the elements of conversion

under New York law.  "To state a claim of conversion, the plaintiff must allege

that (1) the party charged has acted without authorization, and (2) exercised

dominion or a right of ownership over property belonging to another, (3) the

rightful owner makes a demand for the property, and (4) the demand for the

---

parties bringing suit had alleged economic injuries arising from their own roles in
particular transactions, and whether they had suffered injury in fact was not at issue.  *See
In re Zantac (Ranitidine) Prods. Liability Litig.*, No. 21-10335, 2022 WL 16729170, at *3 (11th
Cir. Nov. 7, 2022) (noting that injury in fact was not disputed where plaintiff union
alleging that prescription drugs were worthless had paid for the medications pursuant to
its legal duty to its members); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1123, 1125 (11th
Cir. 2019) (holding named plaintiffs representing donor classes sufficiently alleged injury
in fact because they alleged a financial loss stemming from their own political donations).

[10] In reaching the merits of the conversion claim and finding it was properly dismissed
under Rule 12(b)(6), we part ways slightly with the district court, which dismissed this
claim under Rule 12(b)(1) for lack of standing.

return is refused." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (citing *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006)); *see also Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927).

An action for conversion under New York law is insufficient as a matter of law unless it is alleged that the money converted was in specific funds of which claimant was the owner and entitled to immediate possession. *See, e.g., Family Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 46 (1st Dep't 2022); *Stack Elec. Inc. v. DiNardi Constr. Corp.*, 555 N.Y.S.2d 346, 347 (1st Dep't 1990).

Rynasko does not plausibly allege that her payments to NYU were segregated or otherwise specifically identifiable as her money, or that NYU exercised an unauthorized "dominion" over any segregated tuition payments. *See Employers' Fire Ins. Co.*, 245 N.Y. at 104; *cf. Meese v. Miller*, 436 N.Y.S.2d 496, 501 (4th Dep't 1981) (reversing dismissal of conversion claim where the plaintiffs adequately alleged that defendants "asserted an unauthorized control over plaintiff's property subsequent to and independent of the contract"). For these reasons, Rynasko fails plausibly to allege a claim for conversion.

For the above reasons, we conclude that the district court did not err in dismissing Rynasko's Complaint.

2.  <u>Hall-Landers and the Motion to Amend</u>

We disagree with the district court that amendment to add Hall-Landers, a current student, as a plaintiff would be futile, because we conclude the Proposed Complaint states plausible claims for breach of contract, unjust enrichment, and money had and received.  In doing so, we join three of our sister circuits that have recognized the plausibility of implied breach of contract claims brought by students seeking partial tuition reimbursements in the COVID-19 context.[11]

a.  *Breach of Implied Contract*[12]

At issue here is whether a reasonable factfinder could conclude, based on the plausible allegations in the Proposed Complaint, that NYU had an implied contract with Hall-Landers that included a general obligation to provide in-person courses, activities, services, and facilities.  Viewed from the perspective of a pre-COVID world, given NYU's extensive representations about the nature of student life at NYU, as well as historical experience, we conclude that a

---

[11] *See Shaffer v. George Washington Univ.*, 27 F.4th 754, 765 (D.C. Cir. 2022); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022); *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101, 116 (5th Cir. 2022).

[12] While the Complaint and Proposed Complaint include separate causes of action for express breach of contract and implied breach of contract, on appeal, Rynasko argues only that the district court erred in concluding that Hall-Landers's claim for implied breach of contract would face dismissal.  Accordingly, we only consider whether Hall-Landers adequately states a claim for breach of implied contract.

reasonable factfinder could find that NYU impliedly agreed to provide students

in-person services.  Several other circuits have reached similar conclusions in

analogous cases.  We acknowledge the disclaimer language in the Tisch Bulletin

that reserves to NYU broad discretion with respect to its course and activity

offerings, but cannot conclude as a matter of law that this language overrides all

of NYU's other representations and encompasses the discretion to cancel all in-

person courses, services, activities, and facilities.  Whatever contractual defenses

may be available to NYU based on the unprecedented public health emergency

created by the COVID-19 pandemic are beyond the scope of the issues in this

appeal.

New York courts have long recognized that the relationship between a

university and its students is "contractual in nature," *Prusack v. State*, 498

N.Y.S.2d 455, 456 (2d Dep't 1986), and that "specific promises set forth in a

school's bulletins, circulars and handbooks, which are material to the student's

relationship with the school, can establish the existence of an implied contract,"

*Keefe v. N.Y. L. Sch.*, 897 N.Y.S.2d 94, 95 (1st Dep't 2010).[13]

---

[13] As NYU argues, this line of cases also supports the proposition that courts owe deference to universities when it comes to "academic and educational decision making." *Susan M. v. N.Y. L. Sch.*, 557 N.Y.S.2d 297, 300 (1990).  But Plaintiffs in this case do not challenge NYU's exercise of its academic and educational discretion in structuring NYU's courses; their claim for breach of implied contract arises from the

Under New York law, the existence of an implied contract is a question of fact. *See New Windsor Volunteer Ambulance Corps v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006) (citing *Shapira v. United Med. Serv., Inc.*, 15 N.Y.2d 200, 210 (1965)). Thus, the question before us is not whether Hall-Landers's plausible allegations necessarily establish an implied contract to provide generally in-person services; the question is whether a reasonable factfinder *could* conclude that Hall-Landers's plausible allegations demonstrate an implied contract to provide in-person services. *See generally Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) ("In determining if a claim is sufficiently plausible to withstand dismissal, we accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiffs, and we will not dismiss as long as the pleadings support more than a sheer possibility that a defendant has acted unlawfully.") (internal quotation marks and citations omitted).

In considering the allegations in the Proposed Complaint, our role is to ascertain the intention of the parties *at the time they entered into the contract*. *See*

---

wholesale, campus-wide suspension of in-person courses, services, facilities, and activities. When considering similar claims brought under Louisiana law, the Fifth Circuit recently observed: "Deciding whether Tulane breached its agreement to provide in-person instruction and on-campus access to facilities in exchange for pre-paid tuition and fees does not implicate educational questions best left to professional academic judgment. Courts act well within their expertise when answering the elementary question whether a contract was made and breached." *Jones*, 51 F.4th at 110. We agree.

*Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004).  In other words, could a reasonable factfinder conclude that before Hall-Landers enrolled in the Spring 2020 semester, the parties mutually intended and implicitly agreed that NYU would provide generally in-person courses, activities, facilities, and services?[14]

From that perspective, we conclude that the Proposed Complaint plausibly alleges an implied contract between NYU and its students to deliver an in-person student experience.  As set forth more expansively above, the Proposed Complaint identifies NYU's course catalog, which designated Hall-Landers's selected courses as "in-person;" NYU's marketing materials, which described the numerous benefits of attending college in New York City; NYU's descriptions of its on-campus services and facilities and the benefits of personal contacts with faculty and fellow students; as well as NYU's past course of conduct as forming the basis of the implied contract promising in-person services.  *See Gociman*, 41 F.4th at 885 ("Loyola's pre-pandemic practice supports a reasonable inference

---

[14] As we have now spent years living in the shadow of the pandemic, it can be hard to imagine our lives before everything changed in March 2020.  But New York contract law requires we undergo the thought experiment and ascertain the mutual expectations of the parties before the COVID-19 pandemic transformed so much.  In that regard, we part ways with the dissent, and its contention that we should interpret the scope of NYU's implied promises from the perspective of the middle of the COVID-19 pandemic.  As noted below, *see post* at 31-32, the pandemic may be highly relevant to the enforceability of NYU's promises, but the parties entered into the alleged implied contract well before COVID-19 disrupted in-person gatherings.

that in-person instruction, along with access to on-campus facilities, is a norm for

students enrolled in the traditional on-campus program."); *see also Jemzura v.*

*Jemzura*, 36 N.Y.2d 496, 503-04 (1975) ("A contract implied in fact may result in an

inference from the facts and circumstances of the case . . . and is derived from the

presumed intention of the parties as indicated by their conduct.") (internal

citations and quotation marks omitted).

In addition, the Proposed Complaint describes some of the particular ways

in which suspension of in-person services dramatically altered the experience for

which Hall-Landers, as a student majoring in dance, had contracted: they no

longer had access to the dance studio, had to buy their own ballet bar for classes,

and were left to join classes virtually at odd hours from the West Coast or rely on

recorded versions, thereby missing out on direct interaction with faculty. A

factfinder could reasonably determine that NYU, in light of its representations

and longstanding history, impliedly agreed that in-person courses, services,

activities, and facilities would comprise a substantial part of the NYU

educational experience for which students contracted.

In so concluding, we join several of our sister circuits that have reached

similar conclusions in analogous cases. *See Shaffer*, 27 F.4th at 763-65 (relying on

language in university bulletin, pricing difference between online and in-person

classes, and historic practice of on-campus instruction); *Gociman*, 41 F.4th at 884-85 (relying on course catalog, online registration portal, pre-pandemic practice, and higher tuition for in-person classes); *Jones*, 51 F.4th at 114-16 (relying on course catalog, credit hour policy which promised "contact time" between students and professors, higher tuition for in-person classes, historic practice of in-person instruction, and marketing materials).

This case is not entirely on all fours with *Shaffer, Gociman,* and *Jones* in that the plaintiffs in those cases pointed to a pricing differential between the university's online courses and in-person classes to support their claims. But that pricing differential was not dispositive in any of the above cases; it was "additional support." *Shaffer*, 27 F.4th at 764. While the presence of a price differential between courses offered online versus in-person classes may be highly relevant for showing damages, we cannot conclude that a differential between in-person and online classes is a necessary condition for plausibly alleging an implied contract for in-person courses and services.[15]

In reaching our conclusion, we reject NYU's argument that the "express disclaimer" in the Tisch course catalog defeats plaintiffs' implied contract claim

---

[15] Moreover, Plaintiffs here did allege that NYU's online program is distinct from the in-person classes, offers a limited range of courses, and was not considered comparable in quality to NYU's much more extensive in-person offerings.

by reserving to NYU the right to move all courses online. Appellee's Br. 32. True, New York courts have dismissed implied breach of contract claims brought by students at the pleading stage when "*specific* disclaimers" in school bulletins or handbooks apply to the conduct at issue. *Prusack*, 498 N.Y.S.2d at 456 (emphasis added). Accordingly, in *Keefe v. New York Law School*, when a law student sued his law school for not providing a pass/fail grade in a legal writing course, even though the student handbook specifically provided that the school gave only letter grades, the court concluded that the complaint was properly dismissed because "[the school] communicated through its student handbook that it utilizes a letter grading system." 897 N.Y.S.2d at 95. In other words, the clear statement in the handbook specifically applied to the conduct at issue.

But here, we are not convinced that the language of the admittedly broad disclaimer, which provides that NYU may "change without notice at any time" its "course offerings," "including, but not limited to . . . the relocation of or modification of the content of any of the foregoing; and the cancellation of scheduled classes or other academic activities," precludes Hall-Landers's claim as a matter of law for several reasons. App'x 125.

First, the disclaimer must be understood as a single data point in the context of all the other factors shaping the contours of the implied contract

between NYU and its students—including NYU's representations highlighting the in-person nature of its offerings, and its historical practice of providing services in person and on campus. *See Shaffer*, 27 F.4th at 765 ("[T]he Universities cite nothing in their historical courses of dealings with their students to suggest that they have retained unfettered rights to shut down on-campus educational activities and use online learning in its place after students have paid tuition for traditional on-campus courses."). Moreover, even in the context of express contracts, New York law disfavors constructions that give one party "an unfair and unreasonable advantage over the other." *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc.* 84 N.Y.2d 430, 438 (1994) ("Language in contracts placing one party at the mercy of the other is not favored by the courts.") (citations omitted); *see also Albunio v. City of New York*, 23 N.Y.3d 65, 71 (2014) (noting the "general rule" that "equivocal contracts will be construed against the drafter[]") (citation omitted).

On NYU's view of its implied contract with Hall-Landers, even prior to the onset of the COVID-19 pandemic, NYU could have decided to completely shut down its on-campus, in-person operations and instead conduct courses, as well as other student activities amenable to remote participation, virtually. This thought experiment exposes the weakness of NYU's position that it never

impliedly promised an in-person experience to Hall-Landers.  Although the

covenant of good faith and fair dealing may provide some protection to students

in this scenario, that would be considerable weight for the covenant to bear.  *See*

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (explaining that where

contract contemplates the exercise of discretion, the covenant of good faith and

fair dealing includes a promise not to act arbitrarily or irrationally in exercising

its discretion, but that covenant does not imply obligations inconsistent with

other terms of the contractual relationship).

Significantly, the disclaimer does not purport to serve as a *force majeure*

clause,[16] excusing NYU's nonperformance upon the occurrence of "an event

beyond the control of the parties that prevents performance under a contract."

*Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 154 (2015); *see also Shaffer*, 27

F.4th at 765 (noting that reservation language "does not specifically address

emergencies or other *force majeure* events," and "says nothing about allocating

the financial risk of those events to the students"); *Jones*, 51 F.4th at 115 ("[T]he

asserted language does not clearly contemplate a fundamental change to the

---

[16] In general terms, a "*force majeure*" clause is a "contractual provision allocating the risk
of loss if performance becomes impossible or impracticable, esp[ecially] as a result of an
event or effect that the parties could not have anticipated or controlled."  *Black's Law
Dictionary* (11th ed. 2019).

structure of an in-person course to an online course and does not clearly contemplate force majeure events outside of the University's control."). Any suggestion that the reservation allocates the risk of non-performance in the event of an emergency beyond the parties' control is not supported by its language.

Finally, at issue in this case is not just NYU's modification or cancellation of a substantial number of classes and activities, or even a whole school. Plaintiffs have alleged that NYU, justifiably under the circumstances, completely transformed the student experience it provided from one revolving around on-campus, in-person classes, contact with faculty, in-person extracurricular activities and services, and access to university facilities to a completely virtual experience that, in Hall-Landers's view, was significantly less valuable. A reasonable person could conclude that in the context of all the various representations that collectively comprise the implied contract between Hall-Landers and NYU, the reservation language does not extend so far as to reserve to NYU the discretion to undertake such a wholesale transformation of the NYU student experience.

NYU emphasizes that it "never did and never would promise to host its students on campus in the middle of a global pandemic, in one of the most densely populated cities in the world, for in-person classes, in defiance of

governmental prohibitions."  Appellee's Br. 27.  To the extent NYU argues that

its decision to suspend in-person operations during the Spring 2020 semester was

reasonable, even necessary, under the unprecedented circumstances of the

COVID-19 pandemic, New York law offers NYU a potentially appropriate shield:

the defense of impossibility or impracticability.  *See Kel Kim Corp. v. Cent. Mkts.,*

*Inc.*, 70 N.Y.2d 900, 902 (1987) (describing defense of impossibility of

performance); *see also Jones*, 51 F.4th at 117 ("Whether it was impossible for

Tulane to perform its end of the bargain does not go toward the existence of a

contract."); *Shaffer*, 27 F.4th at 760 ("We note that the Universities will likely have

compelling arguments to offer that the pandemic and resulting government

shutdown orders discharged their duties to perform these alleged promises.

However, because the Universities have not raised any such defense before this

court, we leave the issue to the District Courts to resolve in the first instance.").

Because any potential contract defenses are not before us in this appeal, we

vacate and remand to the district court for consideration of those possible

arguments in the first instance.

    For the above reasons, viewing the allegations in the light most favorable

to Plaintiffs, we conclude that Hall-Landers has stated a viable claim for breach

of implied contract against NYU.

     b. *Unjust Enrichment and Money Had and Received*

To recover under a theory of unjust enrichment under New York law, a

litigant must show "that (1) the other party was enriched, (2) at that party's

expense, and (3) that it is against equity and good conscience to permit the other

party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 38

N.Y.3d 253, 275 (2022) (citation, internal quotation marks, and alterations

omitted). A money had and received claim is essentially identical to an unjust

enrichment claim and requires allegations that "(1) defendant received money

belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3)

under principles of equity and good conscience, defendant should not be

permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,*

*N.A.*, 731 F.2d 112, 125 (2d Cir. 1984) (citing *Miller v. Schloss*, 218 N.Y. 400, 407

(1916)); *see also Gargano*, 86 N.Y.S.3d at 599.

     "Where the parties executed a valid and enforceable written contract

governing a particular subject matter, *recovery* on a theory of unjust enrichment

for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v.*

*Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (emphasis added)

(citing *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987)). Thus,

to the extent that any implied contract between NYU and Hall-Landers is

enforceable, Hall-Landers could not also recover damages in unjust enrichment or money had and received.

However, this case is still at the pleading stage. The Federal Rules specifically allow pleading in the alternative. *See* Fed. R. Civ. P. 8(d)(2). If Hall-Landers is not ultimately able to establish an *enforceable* implied contract with NYU, the limitation described in *IDT Corp.* may not apply. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-59 (S.D.N.Y. 2016) (collecting cases in which unjust enrichment claims were not barred where the validity or enforceability of a contract was challenged). In that circumstance, provided she otherwise established the elements of unjust enrichment, Hall-Landers may be able to pursue her claims for unjust enrichment and money had and received. Accordingly, we conclude that Hall-Landers has plausibly alleged unjust enrichment and money had and received, those claims in the Proposed Complaint would not be subject to dismissal, and therefore, amendment is not futile. *Accord Shaffer*, 27 F.4th at 768-69 (concluding that claim for unjust enrichment in the alternative to breach of contract was sufficiently pled); *Gociman*, 41 F.4th at 887 (same).[17]

---

[17] Hall-Landers's proposed claim for conversion fails for the same reasons as Rynasko's. *See* Section 1C, above.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of the Amended Complaint.  We VACATE the district court's denial of Plaintiffs' Motion for Leave to Amend and REMAND for further proceedings consistent with this opinion.