21-1333
*Rynasko v. New York University*

PARK, *Circuit Judge*, concurring in part and dissenting in part:

I join nearly all of Judge Robinson's excellent opinion. I write separately to note my view that Rynasko has standing to bring unjust-enrichment and money-had-and-received claims.

Article III standing requires "a plaintiff [to] show . . . that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This requires us to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

The majority correctly explains that Rynasko does not have standing to bring claims on behalf of her adult daughter. That is why Rynasko may not bring a breach-of-contract claim based on NYU's failure to provide in-person classes. *See* Maj. Op. at 12-17. But Rynasko's other claims are based on a different alleged injury: NYU's wrongful retention of her money. She claims that NYU "retained the full benefit of the tuition and a majority of the mandatory fee payments by [Rynasko] for the semester" despite "fail[ing] to provide the . . . services" for which they were paid. App'x at 602. That is a "simpl[e]," "classic[,] and paradigmatic form of injury that supports standing." *Ninivaggi v. Univ. of Del.*, 555 F. Supp. 3d 44, 48 (D. Del. 2021) (Bibas, *J.*, sitting by designation) (cleaned up).[1]

---

[1] *Accord, e.g., Pinzon v. Pepperdine Univ.*, No. 20-CIV-4928, 2021 WL 3560782, at *5 (C.D. Cal. Aug. 5, 2021); *Dougherty v. Drew Univ.*, 534 F. Supp.

"[M]onetary harms" are among "[t]he most obvious . . . traditional tangible harms" and "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204; *accord Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020) (noting that "we have repeatedly described [injury in fact] as a low threshold" and that "[a]ny monetary loss" suffices (cleaned up)). Although "*Spokeo* does not require an exact duplicate in American history and tradition," just a "close . . . analogue," Rynasko can show the former. *TransUnion*, 141 S. Ct. at 2204. Actions for the return of wrongfully withheld money are not new. "[W]here a person has received a benefit from another, he is liable to pay therefor . . . if the circumstances of its receipt or retention are such that . . . it is unjust for him to retain it." Restatement (First) of Restitution § 1 cmt. c; *see also TransUnion*, 141 S. Ct. at 2224 (Thomas, J., dissenting) (characterizing "unjust enrichment" by "keep[ing] . . . ill-gotten gains" as a traditionally recognized injury); *Spokeo*, 578 U.S. at 344 (Thomas, J., concurring) (listing "unjust enrichment" as a "traditional . . . private-rights cause[] of action").

Our precedent correctly reflects the pedigree of claims for wrongly withheld money. In *John v. Whole Foods Market Group, Inc.*, the plaintiff sued Whole Foods for unjust enrichment under New York law, claiming that he overpaid for pre-packaged cheese and cupcakes. 858 F.3d 732, 734-35 (2d Cir. 2017). He alleged that the weights listed on the foods' packages were incorrect, so he did not get what he paid for. *Id.* The district court dismissed the complaint for

---

3d 363, 372-73 (D.N.J. 2021); *Burt v. Bd. of Trs. of Univ. of R.I.*, 523 F. Supp. 3d 214, 226-27 (D.R.I. 2021); *Doe v. Emory Univ.*, No. 20-CIV-2002, 2021 WL 358391, at *3 (N.D. Ga. Jan. 22, 2021).

lack of Article III standing, and we reversed, explaining that "overpaying for a product" due to a seller's misrepresentation "results in a financial loss constituting a particularized and concrete injury in fact." *Id.* at 736. And if overpaying for a cupcake is a "nontrivial economic injury" that creates standing, so is overpaying for a college education. *Id.* at 737.[2]

The majority disagrees, arguing that Rynasko lacks a "legally protected interest" in "the services Emily would receive in exchange for [Rynasko's] tuition payments." Maj. Op. at 17 (emphasis omitted). But this misconstrues the relief Rynasko seeks—*i.e.*, her money back, not NYU's services. It also reflects two other errors.

First, there is no general rule that a payor lacks a cognizable injury when a payee fails to provide services to a third party. If Rynasko were party to a standard contract, rather than an alleged quasi-contract, then she could seek restitution in the form of the "benefit that [she] conferred" on NYU. Restatement (Second) of Contracts § 344. She would have standing based on that financial interest, and it would not matter that NYU's promised performance was for the benefit of her daughter. *See id.* § 305 cmt. a ("The

---

[2] The majority attempts to distinguish *John* because "the plaintiff himself had purchased the cupcakes," unlike Rynasko, who "provide[d] funds to an adult child" who in turn paid NYU. Maj. Op. at 18 n.9. But this distinction is not supported by the record. Rynasko alleged that *she* "paid approximately $36,000 in tuition and fees to [NYU]," App'x at 31, and the complaint attached exhibits supporting that claim, *see id.* at 229, 232, 234-36.

promisee of a promise for the benefit of a [third-party] beneficiary has the same right to performance as any other promisee.").[3]

Here, Rynasko seeks return of the money she paid based on an alleged misrepresentation. It is the money that matters for standing, not the object of the misrepresentation. For example, courts have held that third-party payors have standing to sue drug manufacturers who allegedly misrepresent the safety of their drugs for patients. *See In re Zantac (Ranitidine) Prods. Liability Litig.*, No. 21-10335, 2022 WL 16729170, at *3-4 (11th Cir. Nov. 7, 2022). And donors have standing to sue a political organization that allegedly misrepresented that it would treat candidates impartially. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125-27 (11th Cir. 2019). Similarly, Rynasko has standing because she alleges that NYU didn't provide the services she paid for.

Second, in reaching the opposite conclusion, the majority relies on the merits of the claim under New York law, not on Rynasko's standing to pursue it under Article III. *See* Maj. Op. at 18 (citing *Mandarin Trading, Ltd. v. Wildenstein*, 944 N.E.2d 1104 (N.Y. 2011), and *Stephani v. Lent*, 63 N.Y.S. 471 (Sup. Ct. 1900)). The Supreme Court has warned that "weakness on the merits" should not be "confuse[d] . . . with [the] absence of Article III standing." *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011). We should instead "ask

---

[3] For example, when a union and an employer contract for the employer to provide employee retirement benefits, the union has standing to sue when the employer does not provide them. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 474-75 (2d Cir. 2013). "That th[e] benefit[s] accrue[] to third parties, namely, the retirees, does not change" the result. *Id.* at 475.

4

whether [Rynasko] ha[s] identified a close historical or common-law analogue for [her] asserted injury." *TransUnion*, 141 S. Ct. at 2204.

Rynasko's claims may fail on the merits, perhaps for the reasons the majority notes.   But I think she has standing to find out. I respectfully dissent from the majority's conclusion that Rynasko lacks Article III standing to bring claims for unjust enrichment and money had and received.