UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/22/2022__

NELCY MABEL GARCIA DE LEÓN,
individually and on behalf of all others
similarly situated,

                                        Plaintiff,

          -against-

NEW YORK UNIVERSITY,

                                        Defendant.

No. 21 Civ 05005 (CM)

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY THE
PROPOSED PUTATIVE CLASS AND TO APPOINT CLASS PLAINTIFF AND CLASS
COUNSEL**

McMahon, J.:

On June 7, 2021, Plaintiff Nelcy Mabel Garcia De León, on behalf of herself and all others

similarly situated, filed a complaint bringing this putative class action against Defendant New

York University ("NYU" or the "University") alleging breach of its contractual obligations to

provide in-person instruction and access to campus facilities and activities in connection with the

University's decision to modify, curtail, and cancel its activities for the spring 2020 semester in

response to the COVID-19 pandemic.  (*See* Docket No. 4) (the "Complaint").  Plaintiff brought

claims for breach of contract, unjust enrichment, and for certain violations of the New York

General Business Laws ("NYGBL") seeking a *pro-rata* refund of tuition and fees.

Presently before the court is Plaintiff's motion to certify the proposed putative class and to

appoint her as Lead Plaintiff and the Anastopoulo Law Firm, LLC as Class Counsel.

Specifically, Plaintiff moves the court to certify the "Fees Class," which she defines as all

persons who paid fees for or on behalf of students enrolled at New York University "who were

charged fees for services, facilities, resources, events and/or activities for the spring 2020 Semester

that were not provided in whole or in part." (Complaint, Docket. No. 4, ¶ 50) (*see also* Plaintiff's Motion for Class Certification, Docket No. 36).

For the reasons set forth below, Plaintiff's motion for class certification is denied, as is her motion to be appointed as class representative and for her attorneys to be appointed as class counsel.

## BACKGROUND

The coronavirus arrived in New York City in early March 2020. In accordance with state and local requirements imposed to "flatten the curve" and stop the spread of the disease, universities throughout the country moved classes online and curtailed and/or canceled in-person activities and on-campus services. These institutions have been met with an onslaught of lawsuits seeking partial refunds of the tuition and fees that students pre-paid, allegedly for in-person learning and other, non-academic services.

Plaintiff's putative class action is one such lawsuit. It is one of six brought against NYU in the Southern District of New York.[1]

Plaintiff Nelcy Mabel Garcia De León was a full-time graduate student enrolled in the Master of Social Work program at New York University's Rockland campus before graduating in the spring of 2020. She brings this action on behalf of herself and others similarly situated seeking relief for harms allegedly arising from the University's decision to suspend all in-person classes and all in-person university sponsored events in March 2020 in response to COVID-19. (Compl. ¶¶ 44-45).

---

[1] The other five cases against NYU previous filed in this district, all assigned to Judge Daniels, are: (1) *Rynasko v. New York Univ.*, No. 1:20-cv-3250-GBD (S.D.N.Y., filed Apr. 24, 2020); (2) *Zagoria v. New York Univ.*, No. 1:20-cv-3610-GBD (S.D.N.Y., filed May 8, 2020); (3) Morales v. New York Univ., 1: 20-cv-4418-GBD (S.D.N.Y., filed June 9, 2020); (4) *Romankow v. New York Univ.*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020); and (5) *Freeman v. New York Univ.*, No. 1:21-cv-1029 (S.D.N.Y., removed to federal court on February 4, 2020).

On March 11, 2020, the University announced that all classes would be held remotely (as opposed to in-person) for the remainder of the spring semester. (Compl. ¶ 45).  Plaintiff filed her Complaint on June 7, 2021.

Defendant NYU moved to dismiss the Complaint in full (*see* Docket No. 19) and this court granted the motion in part. (*See* Decision and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Sept. 20, 2019, Docket No. 81) ("Order on the Motion to Dismiss"). The claims based on the failure to provide in-person learning were dismissed on the ground that Plaintiff failed to allege that NYU ever promised to provide in-person learning in the exchange for the payment of tuition.  The NYGBL claims were dismissed for failure to state a claim.  Finally, Plaintiff's request for injunctive relief was dismissed for lack of standing; Plaintiff did not and cannot allege any continuing harm or threat of future harm because she graduated from NYU at the end of the spring 2020 semester.

However, NYU's motion to dismiss the claims related to the payment of fees in exchange for services and access to campus facilities was denied.

So what remains of Plaintiff's case is a breach of contract claim and an unjust enrichment claim, both predicated on NYU's failure to provide the services and access to facilities for which the University accepted payment of various fees (the "Fees Claims").

It is worth recounting that Defendant also argued, in its motion to dismiss the Complaint, that Plaintiff lacked class standing to assert claims related to NYU campuses that she did not attend and programs in which she was not enrolled. While this court found that allegations in the Complaint were sufficient to give rise to class standing at the pleading stage of this litigation, the court pointed out this did not mean that the court would or could certify Plaintiff as the lead plaintiff representing a class of students that includes students who were enrolled in other programs

or who attended other NYU campuses (specifically the main campus in NYC). The court anticipated that adequacy of representation would be an issue when the motion to certify a class was made, because Plaintiff's experience as a student of the Rockland Campus undoubtedly differed from the experience of students who attended classes in New York City.

Familiarity with the underlying facts of this case is presumed because the court recited the facts in detail in its Order on the Motion to Dismiss. However, the parties have engaged in class-related discovery, which supplements the factual record. The facts that the parties have deemed pertinent to class certification are summarized as follows:

## I.  FACTS

Plaintiff Nancy De León was a full-time graduate student enrolled at NYU for the spring 2020 semester with the University's Silver School of Social work ("NYU Silver"). (Docket No. 37 at 3). She took her classes at NYU's Rockland County campus. (*Id*.).

Plaintiff and other students based at the Rockland campus have access to all of the services and opportunities that the University offers, including services and amenities offered at the New York City campus. (*Id*.).

In response to the COVID-19 pandemic, NYU announced that, beginning on March 11, 2020, all in-person classes were cancelled, and courses would be taught remotely "across the University, including throughout its New York City campus." (Docket No. 37, Exhibit 4). On campus programs and services were also curtailed, although the University staff found new (virtual) ways to support its students with certain programming and services. (*See* Docket No. 86, 1).

### A.   The fees at issue.

In addition to tuition, NYU charges its students various fees for services and programs that are offered by the university, such as student health services, career counseling, student clubs, the Registrar, the Library, intermural sports, and the bookstore.

But every student at NYU does not pay the same amount in fees or pay fees for the same programs and services.  NYU is made up of 18 different schools and colleges (*see e.g.,* Docket No. 75, ¶ 13), and  NYU students pay a wide variety of different fees, depending on what school they attend and the particular program and courses they enroll in.  (*See e.g.*, Docket No. 82, Exhibits 1-5).  During the spring 2020 semester, for example, NYU charged over 60 different school and course-based fees for a wide variety of purposes.  (Docket No. 75, ¶ 6).  To take one example, students enrolled in the class called Creative Therapy in Clinical Social Work at the Rockland County campus (including Plaintiff) paid a $30 fee for art supplies; that fee was not paid by students who were not enrolled in that course or in that college.  Other program-specific fees included a Dance Insurance Fee, a Photography Course Lab Fee, and a Ticket Fee.  (*See* Pianka Decl., ¶ 4).

In addition to individual program-based fees like the art supplies fee described in the preceding paragraph, nearly all NYU students are charged what are called Registration & Services Fees ("R&S Fees"), but the amount owed by each student in R&S Fees depends on the particular program and the number of credits that a student enrolls in for any given semester.  (*Id*. ¶¶ 7-8).  With only one exception, students enrolled in an  NYU online programs also pay R&S Fees.  (*Id*. ¶¶ 8-9).

The R&S Fees applicable to the different schools and programs are described on webpages maintained by NYU's various institutes.  A student enrolled in the Tisch School of the Arts, for example, would find out what R&S fees Tisch students are charged by going onto the Tisch

website – not some web site generally applicable to all NYU students.  R&S fees applicable to students enrolled in the program in which Plaintiff was enrolled are described on the NYU Silver webpage.

NYU uses the money generated by R&S Fees to partially fund dozens of different student services, including IT services; the Student Health Center; the Wasserman Center for Career Development; the Global Center for Academic and Spiritual Life; student clubs and student affairs; the Office of the University Registrar; the Bursar's Office; various fitness facilities; the Bookstore; and more. (Docket No. 79, ¶ 9).  All students have access to these services, whether their college or program charges R&S Fees or not.  (*Id*. ¶10).

Plaintiff paid Social Work Graduate R&S Fees of $1,361 for the spring 2020 semester. Her R&S Fee was based upon the number of credits she took and the amount that her school, NYU Silver School of Social Work, charged per credit.  (*Id*.)

The amount and purpose of the fees paid, and whether any portion was refunded after Covid struck, varies by student and by school. (Docket No. 82, Exhibits 19, 17).  NYU Silver's webpage has described R&S Fees as "nonreturnable" since at least 2017.  (Docket No. 82, Exhibits 6, 16). Some of NYU's other schools also describe their R&S Fees as "nonreturnable."  But other schools do not mention whether R&S fees are refundable; in fact, some NYU school do not even discuss R&S Fees on their websites.  (*Id*., Exhibits 13, 14, 7-12).  Those decisions are made on a school-by-school or program by program basis.

The transition to remote learning in the spring of 2020 did not prevent NYU from providing students with at least some of the services that were funded by R&S Fees. For example, NYU continued to provide its students with IT support, student health services and counseling, career

services counseling, and Bursar's Office services.  (Docket No. 86 at 6-7). Most of those services were, of necessity, provided remotely.

At her deposition, Plaintiff was unable to specify which fees are the subject of her complaint.  (*See* Garcia Tr., 236:18-242:23).  She also testified that she was unaware of the fact that NYU had refunded certain fees for the spring 2020 semester to students (*Id*. 236:6-10), notwithstanding that she alleges in her Complaint that any refunds that were issued were inadequate.

### B.   NYU's billing records.

NYU cannot readily ascertain *who* paid which fees and in what amounts.  That is because students often look to family members, and even in some cases to employers, to pay money due to NYU on their behalf, as well as because charges can be funded, in whole or in part, by scholarships or student loans.  (Docket No. 76, ¶ 10).

The University maintains account statements for each individual student, which reflect the amount billed and funds credited toward their bill, where applicable.  (*Id*. ¶ 11).  But NYU's account statements do not specify whether the student versus a parent or other third party actually paid the applicable fees. (*Id*.). There is no mechanism other than manual, individualized, student-by-student review to determine how particular financial aid awards were applied, any credits to an account, and whether any records exist that would specify the form of payment, including who made each payment. (*Id*. ¶ 11).

### C.   The refunded fees.

After COVID-19 struck, NYU conducted an extensive proactive analysis of all spring 2020 school and course-based fees that had been billed by the Bursar for the spring semester. The university issued full or *pro rata* refunds for fees paid where students did not "receive[] all or part of the services, supplies, or equipment associated with the fee." (Docket No. 82, Exhibit 17; Docket

No. 79, ¶ 7).  Whether funds were refunded varied among the different schools, colleges, programs, and courses. (Docket No. 82, Exhibit 18) NYU did, however, uniformly refunded a *pro rata* portion of any fees paid for housing and dining, which were discontinued when the campuses shut down.  (*Id*.). Plaintiff did not pay any fee for housing and dining, so she received no refund on that account. (*Id*. 234:11-16).

Because NYU Silver's R&S Fees are described on its website as nonrefundable, and because NYU continued to provide certain services associated with those fees, the University did not refund R&S Fees. (*Id*., ¶¶ 10-11).

### D.  Plaintiff, the proposed putative class representative.

Plaintiff is a former NYU graduate student. She graduated with her Master of Social Work ("MSW") degree from NYU Silver at the end of the spring 2020 semester. She was, therefore, a student during the initial COVID lockdown.

Plaintiff, who has lived and worked in Rockland County for the past 17 years, chose to enroll of NYU Silver's Rockland County campus rather than the NYC campus.  (*See* García Transcript, Docket No. 82, Exhibits 65 and 66 ("García Tr.") at 20:15-21:4.  The MSW program is NYU's only program in Rockland County.  Only 88 students were enrolled with NYU Silver at the Rockland Campus for the spring 2020 semester.  (Docket No. 75, ¶ 7).

The only two fees that Plaintiff paid for the spring 2020 semester were the two fees described above: R&S Fees of $1361 and the $30 Art Supply Fee for art supplies that she used in her Creative Arts Therapy in Clinical Social Work class. (Garcia Tr., 222:3-24; Docket No. 82, Exhibits. 41-42).

It is undisputed that NYU did not refund any of these fees.

Plaintiff gave conflicting testimony about her use of the NYC campus and services.

8

In its first set of interrogatories, NYU asked Plaintiff to identify the dates and purposes of any visits she made to the NYC campus while she was enrolled at the University, Plaintiff was not able to answer the question as asked. She averred "that she visited NYU's Manhattan campus during Orientation on August 27, 28, and 29, 2019" (Docket No. 82, Exhibit 43 at 7); she also testified that she attended "more than ten" events held at the NYC campus during the Fall 2019 semester (though she could not identify what those events were) (*see* Garcia Tr., 61:23-62:6),  and said that she would often go to the main New York City campus to complete her schoolwork and to print documents (*Id*., 74:5-75:11; 311:20-315:9), despite that fact it would take her "45 minutes to an hour" to get to Greenwich Village and a similar amount of time to return.  (*Id*., 54:17-23; 85:14-17).  Plaintiff subsequently amended her interrogatory answers to state that "there are other dates that she visited NYU's Manhattan campus that she cannot remember." (Docket No. 82, Exhibit 45 at 8).

Plaintiff's answers and testimony cannot be squared with NYU's security records. In order to access NYU buildings and facilities, students must swipe their NYU ID cards at turnstiles or gates near the building entrances.  (*Id*.).  The University's records show that Plaintiff's swipe card was used to access facilities in New York City on just two occasions, both of which occurred during Plaintiff's orientation in August of 2019.  (*Id*., Exhibit 46; Docket No. 71, ¶ 18).  There is no indication that Plaintiff ever returned to any NUY building on the New York City campus thereafter.

When confronted with this information during her deposition, Plaintiff claimed that she lost her NYU ID card sometime during the fall 2019 semester, but was able to access buildings on the Manhattan campus "many times" without showing any ID.  (Garcia Tr., 62:16-63:23; 99:6-

25).  She testified that friends let her into buildings, or that she accessed NYU buildings by telling the NYU Campus Safety Officers that she "really needed to get in."  (*Id.*).

However, NYU has policies that students are required to follow if they cannot present a student ID at a building entrance – policies that the university's Campus Safety Officers are trained to enforce. Students who show up without NYU IDs are not admitted to buildings, but are told to report to the card office, where they can obtain a day pass after verification of their status. (Docket No. 71, ¶ 14; Docket No. 82, Exhibits 47-49).  Furthermore, students can (and are supposed to) obtain a replacement ID card if they lose their card; Plaintiff never reported her NYU ID as lost, as required by NYU policy. (*Id.*, ¶ 19; Docket No. 82, Exhibit 49).[2]

Plaintiff was asked what services she was unable to access due to the University's COVID-19 related closures.  She mentioned two.

*First*, Plaintiff testified that she tried to call NYU's health and wellness center during the spring 2020 semester, but no one answered. She claims to have left a voicemail but testified that her call was never returned. (Garcia Tr., 164:12-166:17).

However, the University's evidence demonstrated that the main contact number for NYU's health and wellness service – the number Plaintiff would have called -- is a 24/7 hotline that does not have voicemail. (Docket No. 84, ¶ 4.) Moreover, NYU keeps master phone records that show the phone number of any incoming telephone calls; those records do not show any incoming calls from Plaintiff's phone number. (*Id.*, ¶ 10, Ex. 52.).  Confronted with this fact,  Plaintiff testified that she made the call, not from her current cellphone number, but from a previous phone number. However, Plaintiff could not recall what her previous phone number was; all she could say, when asked what cell phone number she was using in the spring of 2020, was: "I don't have that

---

[2] The record contains no evidence about whether Plaintiff was required to use a swipe card to access facilities on the Rockland County campus. If she was, it would certainly undercut her testimony that she lost her swipe card.

information with me at the moment, but I did have two numbers at one point." (Garcia Tr., 118:25-119:17).

*Second*, Plaintiff testified that she called NYU's career counseling center (The Wasserman Center) during the spring 2020 semester for assistance with her resume.  She states that she spoke with "someone," and that "someone" failed to call her back.  (Garcia Tr., 118:3-121:16).  She does not remember with whom she spoke, nor does she remember what she was told over the course of that phone call.  (*Id.*).  She contends that she did not get the assistance she sought because "COVID happened, and the person never followed up, and I never followed up either."  (*Id.*).

 The Wasserman Center keeps records of every student contact or effort to make an appointment. Those records show that Plaintiff did not contact or make an appointment with the Wasserman Center at *any time* during her enrollment at NYU.  (Docket No. 82, Exhibit 54).  Moreover, NYU's master phone records do not reflect that Plaintiff ever called the Wasserman Center. (Docket No. 85, ¶ 11, Exhibit 52).

The University asked Plaintiff to identify and provide proof of the efforts she purportedly made to obtain a fee refund.  In her supplementary interrogatory responses Plaintiff averred that she had oral communications with NYU's President Andrew Hamilton about fees, refunds, and access to services.  (*Id.*, Exhibit 45).  But President Hamilton's office has no record of Plaintiff ever meeting, speaking, or trying to speak  with President Hamilton, whether in person or over the phone.  (Docket No. 78, ¶¶ 6-7).

i.  *Plaintiff failed to disclose all of the law firms engaged to represent her.*

Plaintiff's motion asks the court to appoint the Anastopoulo Law Firm to serve as class counsel in her putative class action.  (Docket No. 37 at 21).  From the Anastopoulo firm, Roy Willey IV and Paul Doolittle have appeared in this lawsuit.  (*See* Docket Nos. 55, 56).  Edward G. Toptani from Toptani Law has also appeared in this lawsuit.

Yet Plaintiff moves only for the appointment of Anastopoulo Law as class counsel. Plaintiff fails to mention in her moving papers what Defendant disclosed in is opposition papers – that Plaintiff is actually is represented by at least two firms. (*See* Docket No. 82, Exhibit 58).

Plaintiff testified at her deposition that the only lawyer that she could remember contacting was Blake Abbott from the Anastopoulo firm.  (*See* García, 66:7-68:22; 283:13-287:20).   But Plaintiff's engagement letter is with a different firm, Toptani Law PLLC (Docket No. 82, Exhibit 58), and her privilege log spanning from April 2020 through February 2022 discloses that every e-mail communication she had prior to the filing of her Complaint was with Toptani.  There was not a single communication with Mr. Abbott or anyone at the Anastopoulo firm.  (*Id*., Exhibit 59). Edward G. Toptani filed the initial Complaint in this case but Plaintiff has not asked the court to appoint anyone from Toptani as class counsel in her proposed putative class action.

To make matters worse, Toptani apparently has "associated law firms," including Morea Schwartz Bradham Friedman & Brown LLP ("MSB") *and* the Anastopoulo firm, which, according to the engagement letter, will act as "co-counsel."  (*See* Exhibit 58 at 2).  MSB has not appeared in this action.  According to Plaintiff that is because MSB terminated its involvement in this matter prior to the commencement of this lawsuit "due to personal relationships within MSB and NYU." (Docket No. 102 at 15).  The court is unaware of the existence of an updated engagement letter reflecting that MSB no longer represents Plaintiff.

Per the engagement letter with the Toptani Firm, Plaintiff agreed to pay "the greater of a fee of up to 40% of the recovery … or a lodestar award" to these three firms (apparently now only two firms).  (*Id*. at 1).  Moreover, the letter states that the engagement is predicated on the certification of a class and consequent appointment; if this court does not appoint Plaintiff as class

plaintiff or the firms as class counsel, "Counsel's representation of Client shall automatically terminate." (*Id.*).

Plaintiff's moving papers do not ask the court to appoint as class counsel Toptani Law or MSB. (Docket Nos. 40, 40-1, 40-2).  Moreover, Plaintiff testified at her deposition that she is "represented by" the Anastopoulo firm.  But when asked whether that statement was complete, she answered, "I'm not sure."  (Garcia Tr., 357:1-16; Dkt. No. 40-1 ¶¶ 6, 19).

> ii.   *Plaintiff failed to comply with this court's order expediting class-related discovery.*

To expedite discovery prior to class certification, the court ordered that Plaintiff provide discovery responses by February 21, 2022, so that Defendant could depose Plaintiff by March 10, 2022. (*See* Order on the Motion to Dismiss at 29).  Plaintiff failed to produce numerous responsive categories of information, such as the recruitment emails she reviewed and purportedly relied on, her internet browsing history, and emails from NYU she received regarding the continuing services available to students during the spring 2020 semester.  (*See* Docket No. 87 at 13).  Counsel for the University raised the significant production deficiencies with Plaintiff's counsel in advance of Plaintiff's deposition, yet Plaintiff testified at her deposition that she had no memory of making any effort to collect any additional information or documents to cure the deficiencies.  (Garcia Tr., 250:24-251:12; Docket No. 82, Exhibit 60).

The court adjourned the class certification opposition deadline and referred the discovery issues to Magistrate Judge Aaron (*see* Docket No. 42), who thereafter ordered that Plaintiff conduct a "diligent search" of everything in her custody and control; he also directed that Plaintiff produce her phone records, browsing history, and supplemental interrogatory answers.  (*See* Order of Magistrate Judge Aaron, March 29, 2022, Docket No. 45).  Judge Aaron also ordered Plaintiff to sit for a second session of her deposition.  (*Id.*).

When Plaintiff's deposition resumed on April 14, 2022, she testified that she did not know what "diligent" means (Garcia Tr., 334:1-24); that she took no steps to preserve her phone records or browsing history and could thus not obtain them; and that she never tried to find her browsing history on her phone. (*Id.*, 336:17-337:19; 338:18-340:5; 340:6-9; 341:23-342:10). Moreover, over the course of her deposition, Plaintiff repeatedly refused to answer questions.  In one such instance, when asked whether she looked on the NYU website to see if any of the fees she paid were nonrefundable, Plaintiff initially answered, "I'm not going to answer that." (*Id.*, 39:25-40:4; *see also* 240:24-241:5; 297:15-24; 353:19-22; 301:16-303:3; 313:17-24; 356:21-25).

## LEGAL STANDARDS

Plaintiff moves the court to certify a "Fees Class," comprised of all persons who paid fees for or on behalf of students enrolled at New York University "who were charged fees for services, facilities, resources, events and/or activities for the Spring 2020 Semester that were not provided in whole or in part." (Complaint, Docket. No. 4, ¶ 50) (*see also* Plaintiff's Motion for Class Certification, Docket No. 37).

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  When confronted with a motion for class certification, the court must first determine whether the requirements of Rule 23(a) are met; that is (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)'s four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 330 (1980).

To obtain class certification under Rule 23, "the class proponent bears the burden of showing that each of the requirements of subsection 23(a)—numerosity, commonality, typicality, and adequacy of representation—is, in fact, satisfied." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 121 (S.D.N.Y. 2012). The test is conjunctive; if one element is not met, then the claim cannot be certified for class treatment. "These four requirements ... effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Bowling v. Johnson & Johnson*, No. 17-cv-3982, 2019 WL 1760162, at *3 (S.D.N.Y. Apr. 22, 2019) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011)).

Beyond the Rule 23(a) requirements, certification of the class must also be deemed appropriate under one of the three Rule 23(b) subcategories. *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir.2010). Plaintiff moves to certify the proposed putative class under 23(b)(3) and 23(b)(2).

**Rule 23(b)(3):** To certify a class for damages under Rule 23(b)(3), a court must find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Among other factors, the court must consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id*.

**Rule 23(b)(2):** To certify a class for injunctive or declaratory relief under Rule 23(b)(2), a court must find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). The relief must be necessary and appropriate on its own; 23(b)(2) does not create another avenue to money damages. *Amara v. CIGNA Corp*., 775 F.3d 510, 519 (2d Cir. 2014).

Alternatively, Plaintiff argues that class certification pursuant to Rule 23(c)(4) is appropriate.

**Rule 23(c)(4):** Under the appropriate circumstances, "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Issue certification is inappropriate "if, despite the presence of a common issue, certification would not make the case more manageable." *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002) (internal quotation omitted).

In addition to the express requirements of Rule 23, the Second Circuit has recognized an implied requirement that the class be "ascertainable." *See, e.g., In re Petrobras Sec*., 862 F.3d 250, 264 (2d Cir. 2017).

Finally, if, after a "rigorous analysis" the court finds that each of the requirements of Rule 23 are met, the court may, *in its discretion*, certify the class. *See In re Initial Pub. Offerings Sec. Litig*., 471 F.3d 24, 41 (2d Cir. 2006); *see also Wal-Mart Stores, Inc*., 564 U.S. at 351.

A motion for class certification should not extend into a protracted mini trial of substantial portions of the underlying litigation, and courts must refrain from examining the underlying merits of the case unless they are relevant to the class certification requirements. *See id.; see also Eisen v. Carlisle & Jacquelin*, 41 U.S. 156, 177–78 (1974). Nonetheless, because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the cause of action, the analysis may require the courts to "probe behind the pleadings" and consider issues that "overlap with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*,

569 U.S. 27, 33–34 (2013) (internal quotation marks and citations omitted). That is because the court is required to resolve any factual disputes that are relevant to a finding on each Rule 23 requirement when deciding the certification motion. *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 41 (2d Cir.2006). It is the plaintiff who bears the burden of showing that Rule 23's requirements are satisfied by at least a preponderance of the evidence. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).

It is clear that Garcia De León is not an adequate representative of the proposed class, and that her attorneys should not be allowed to serve as class counsel. Additionally, her personal claims are not typical of those of the proposed class members, and individual questions with respect to each class member predominate over any common issue that might exist (which is, in the opinion of the court, doubtful).

For these reasons, the motion for class certification and the accompanying motions for designation as Lead Plaintiff and Class Counsel are DENIED.

## DISCUSSION

## I.   THE MOTION TO CERTIFY THE PROPOSED CLASS IS DENIED BECAUSE PLAINTIFF FAILS TO SATISFY THE REQUIREMENTS OF RULE 23.

"Plaintiff bears the burden of showing that Rule 23's requirements are satisfied by at least a preponderance of the evidence." *In re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *5 (S.D.N.Y. Sept. 29, 2020).

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Numerosity "is presumed for classes larger than forty members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). Plaintiff's

proposed class is comprised of the (approximately) 50,000 students who were enrolled at NYU – on any of its campuses – during the spring 2020 semester.  (*See* Docket. No. 37 at 13).

Defendant NYU does not dispute that the proposed class is sufficiently numerous.

Instead, NYU argues that Plaintiff cannot satisfy commonality and typicality and that Plaintiff and her counsel would not be adequate class representatives.

The court agrees with the University.

### A.  Plaintiff fails to demonstrate either commonality or typicality of her claims.

Commonality and typicality require that a plaintiff demonstrate that her complaint raises "questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010).  The requirements of commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3)."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

The commonality and typicality requirements of Rule 23(a) "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be firmly and adequately protected in their absence." *Vu v. Diversified Collection Servs.*, Inc., 293 F.R.D. 343, 353-54 (E.D.N.Y. 2013) (citation omitted).

***Commonality*** "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338, 349-50 (2011) (internal quotation marks omitted). The common injury "must be of such a nature that it is capable of class wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class certification . .

. is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id*. (internal citations omitted).

*Typicality* requires that a plaintiff seeking class certification demonstrate that her claims are *typical* of other potential class members' claims.  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir.1992).

Plaintiff satisfies neither.

First, commonality. Plaintiff has not demonstrated, and cannot demonstrate, that she suffered the same injury as every other NYU student. The undisputed evidence demonstrates that students enrolled in different schools across the university paid different types of fees – individual to each department or school or program within the institution. And the unrebutted evidence demonstrates that each individual school or program made its own decision about what fees to refund or not refund – which cuts off at the knees any suggestion that the claims of all NYU students could possibly revolve around a single issue the truth or falsity of which could be resolved "at one stroke."  At most, Plaintiff might (but does not) argue that her injury shares common features with other students at the Silver School.

Moreover, while the allegations of the Complaint focus on services that were offered on the University's New York City campus, Plaintiff did not take one single class at that campus; she was enrolled in the Rockland County campus which is an hour away from Washington Square by car (and depending on traffic it could be much longer)  And the uncontroverted credible evidence (swipe card records, phone records) reveals that Plaintiff never even came to or called the New

York City campus after her orientation during August 2019 – well before the COVID-19 pandemic started. The injury suffered by a graduate student who is attending classes at a branch campus, and who makes no effort to utilize the services offered by NYU to all its students, is very different from the injury suffered by an undergraduate student who was living on campus in New York City, or even by a fellow graduate student who was attending classes and utilizing facilities there.

For that very reason, Plaintiff also fails to establish that her claim is *typical* of the class she seeks to represent. As is obvious from the foregoing, Plaintiff's status as a student was not typical of the average NYU student's status; she was one of just 88 MSW candidates who were studying on the University's Rockland County branch campus during the spring semester of 2020. While she claims to have made a number of trips to New York for the purpose of using computer labs and printing facilities that became inaccessible during the pandemic – claims that are not corroborated by NYU's records[3] – she does not and cannot contend that her status as an occasional visitor to the main campus is typical of the huge class she proposes to represent. Plaintiff has not come close to proving by a preponderance of the evidence that a graduate student at a branch campus had the same concerns about or interest in the services that were being provided to students – especially undergraduate students – 25 miles from Sparkill, New York, in downtown New York City. Indeed, it was Plaintiff's burden to establish that her claim was typical. Yet she offered no evidence to support her base assertion that any other students, let alone "all students," were "uniformly impacted" by the shutdown and lack of fee refund that she claims to have experienced. (*see* Docket No. 37 at 9-10).

---

[3] I strongly suspect that computers and printers or photocopying machines are readily available in Rockland County – if not at the Sparkill campus – and at other locations that are far closer to the school Plaintiff attended than is Washington Square Park.

In her motion papers, Plaintiff asserts that commonality and typicality are satisfied because the core of this case core this case is about "NYU's unilateral conduct that uniformly impacted all NYU students." (Docket No. 37 at 9).  Plaintiff contends that "whether NYU breached contracts when it failed to provide access to facilities and services already paid for . . .. is a question that should be resolved on a class wide basis."  (*Id*. at 10).   And, according to Plaintiff, the fact that there are variations in the fees paid by the members of the proposed class does not matter because every class member was deprived the benefit of his or her bargain, so "therefore each class member asserts the same legal claims arising out of NYU's uniform misconduct." (*Id*. at 11).

But after the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), that argument fails to establish either commonality or typicality.

In *Wal–Mart v. Dukes*, Betty Dukes – a female former employee of Wal–Mart – brought a Title VII action against the company for employment discrimination.  *Wal-Mart*, 564 U.S. at 343.  She sought to certify a class of all women employed at the company.  *Id*.  Dukes claimed that the company followed a practice of giving store managers discretionary decision-making authority about employment matters within their stores, which led to discrimination against women throughout the corporation.  *Id*.  Every woman plaintiff claimed that's she had not been promoted as a result of this company-wide policy of providing managers with discretionary decision-making power. The Ninth Circuit upheld the district court's certification of the lawsuit as a class action. *Id*. at 347.

The Supreme Court reversed.  It held that the class plaintiffs' claims satisfied neither the commonality nor the typicality prong of Rule 23.  While all the members of the proposed class claimed a common violation of the same law, the commonality requirement of Rule 23(a) was not met because the proposed class members "held a multitude of different jobs, at different levels of

21

Wal–Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female)." *Wal–Mart*, 564 U.S. at 355-60.   Independent exercises of discretion by hundreds of different managers across the country did not give rise to common claims, because each such decision would have to be assessed on its own merits – there was no "one stroke" that could resolve every class member's claim.

Furthermore, the Court held that the plaintiff's grievances against the company were not necessarily typical of the grievances held by all (or even most) of the proposed class members, because what happened in one Wal-Mart location did not give rise to the inference that discriminatory treatment was typical of Wal-Mart's employment practices nation-wide.  *Id*. at 356-357.

In this case, every member of the proposed class is alleged to have paid a fee to NYU without receiving services.  But that broad level of "commonality" is no different than was the situation of every managerial-level female employee of Wal-Mart.  Defendant NYU charged more than 60 different course-based fees, all for different purposes.  (Docket No. 79,  ¶ 4).  Some students paid fees that others did not.  (Docket No. 76, ¶ 7).  For example, Plaintiff paid the "Social Work R&S Fee" and "Art Supplies Fee," while other students – including those Plaintiff includes in the proposed class – did not.  (Garcia Tr., 222:3-24; Ex. 6).

That means that many, if not most, of the proposed class members paid *different* fees in exchange for *different* programs and services.  Per NYU, they also could have received different refunds – or not – for different reasons.  Plaintiff has not indicated that she returned the art supplies for which she paid a $30 fee to NYU, which calls into question whether she should be entitled to a refund of that fee. That fact is peculiar to her and those taking the same class; it has nothing to do with any other NYU student.

In short, like the employees at Wal-Mart – who, because they "held a multitude of different jobs, at different levels of Wal-Mart's hierarchy" had "little in common but their sex and this lawsuit (*Wal–Mart*, 564 U.S. at 359–60) –  the putative class members in this case have little in common except that they were enrolled in the university in 2020 and paid some type of fee to some entity within NYU for some purpose.

Not only do NYU students pay different fees for different services, but they also cannot all be said to have suffered the same injury by virtue of NYU's having failed to refund certain of those fees. Plaintiff claims not to have received services from Student Health and Career Counseling during the pandemic.  Putting to one side the difficulties with her testimony about these matters (discussed below under adequacy of representation), the evidence in the record is that NYU continued to operate both Student Health and Career Counseling during the shutdown. There is no evidence in the record on this motion that any student other than plaintiff who reached out for services from these offices during the spring of 2020 did not get a response; in order to establish that others suffered the same injury, we would have to undertake a searching inquiry into what each of approximately 55,000 students did and did not do during the first months of the pandemic with respect to career counseling or student health.  Plaintiff thus cannot establish through common proof that the entire class "suffered the same injury," and that an issue "central to the validity" of each putative class member's claim can be "resolve[d] . . . in one stroke." *Wal-Mart*, 564 U.S. at 350.

Figuring out which members of a class consisting of all students who paid fees to NYU actually sought to avail themselves of services but were unable to do so is an exercise that requires making a fact-specific determination about each putative class member.

23

And of course, if Plaintiff is unable to establish that she suffered any injury at all – a very real possibility in light of NYU's contemporaneous evidence that contradicts her sketchy deposition testimony about efforts to contact Student Health and Career Counseling – that would necessarily doom the claims of other class members. The premise of the commonality and typicality requirements is "where the lead plaintiff's claim fails, so too will those of the class." *Rapcinsky v. Skinnygirl Cocktails*, L.L.C., No. 11 CIV. 6546 JPO, 2013 WL 93636, at *6 (S.D.N.Y. Jan. 9, 2013). Perhaps some fee-paying NYU students *did* try to avail themselves of services after the University shut down but were unable to access them; the phone records showing that Plaintiff did not try to avail herself of services funded by the R&S Fee after the school was forced to close does not disprove the claims of other students. Where, as here, "a named plaintiff's claims are not typical of those of the class, the Court would do a disservice to the putative class by certifying it with the named plaintiff as its representative." *Emilio v. Sprint Spectrum L.P.*, 2017 WL 3208535, at *8 (S.D.N.Y. July 27, 2017).

**B.   Plaintiff is an inadequate class representative and proposed class counsel is similarly inadequate.**

Plaintiff is not an adequate representative of the proposed putative class. And this is not only because she attended classes at a tiny adjunct campus with 88 other people (as opposed to the overwhelming majority of proposed class members, who went to school in NYC); it is not only because NYU has established that persons who went to the School of Social Work paid different fees and were subject to different fee policies than students in the law school or the medical school or the Tisch School – and has shown without rebuttal that those schools adopted different refund policies. It is because the inherently incredible evidence given by Plaintiff during class discovery means that the focus of any litigation in which she is the plaintiff would be on her credibility – not on the claims of the class. And it is because Plaintiff has already established that she cannot be

trusted to cooperate with court-ordered discovery and has made statements (such as "I don't know what 'diligent' means") that render it inappropriate for her to represent anyone except herself in a court of law.

To satisfy Rule 23(a)(4), Plaintiff is required to demonstrate that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To do so, Plaintiff must show the court that (1) the proposed class counsel is "qualified, experienced and able to conduct the litigation;" and (2) Plaintiff, as the proposed class representative, has no interests that are "antagonistic to the interest of other members of the class." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citation and internal quotation mark omitted). Class certification may be denied if the proposed class representative is "unwilling or unable to protect the interests of the class against the possibly competing interests of the attorneys." *Baffa v. Donaldson, Luftkin & Jenrette Sec. Corp.*, 222 F.3d 52, 560 (2d Cir. 2000).

> i. *Plaintiff has not suffered the same injury as the class.*

In *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained that class plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 594-95; *see also Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (it is axiomatic that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members").

But as the court has reiterated, Plaintiff – a former graduate student who attended classes at NYU's Rockland County campus (where only 88 students were enrolled in her program) – does not have the same interests as the majority of the proposed putative class made up of the thousands of undergraduate students who attend or who used to attend the NYC campus. Moreover, as discussed above, the evidence is clear that NYU's different schools and programs collect different types of fees from students on different bases and for different purposes; Plaintiff's claim for a

refund thus has nothing in common with the claim for a refund that might be asserted by a student in the Law School, or the Stern School, or the undergraduate school.

        ii.    *Plaintiff's credibility is at issue.*

In deciding whether to certify a class and appoint class plaintiff and class counsel, the court "may consider the honesty and trustworthiness of the named plaintiff." *Savino v. Comput. Credit*, 164 F.3d 81, 87 (2d Cir. 1998). Such consideration includes "an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Friedman-Katz v. Lindt & Sprungli (USA) Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) (internal citation omitted).

In *Savino v. Comput. Credit.*, the Court of Appeals for the Second Circuit affirmed the district court's decision to deny a motion for class certification on the ground that the plaintiff was not an adequate class representative because he repeatedly changed his position on a key factual issues that formed the very basis of the proposed class action lawsuit. *Savino*, 164 F.3d at 87. Such discrepancies would undoubtedly "create serious concerns as to [plaintiff's] credibility at trial." *Id*. Similarly, the district court in *Friedman-Katz v. Lindt & Sprungli (USA) Inc.* declined to allow the plaintiff, who had repeatedly given false or contradictory testimony, to represent the interests of potentially thousands of individuals as class plaintiff because the credibility of the plaintiff "will become the focus of cross-examination at trial, impeding her ability to effectively represent the class." *Friedman-Katz*, 270 F.R.D. at 160.

Here, Plaintiff offered multiple different versions of how many times, and for what purposes, she visited the University's NYC campus. First Plaintiff stated that she visited the NYC campus only for orientation – a narrative consistent with NYU's records. But then during her deposition Plaintiff testified that she attended "more than ten" events in NYC during the fall 2019 semester. (*See* Garcia Tr., 61:23-62:6). This testimony was contradicted by NYU's records, which

showed that Plaintiff never swiped into a building on the Washington Square campus after August 2019.

When asked which version of events was true, Plaintiff at one point stated, "I'm not answering;" she thereafter struggled to provide a coherent response. (*Id.*, 311:20-315:9). Her testimony that she called the Student Health Service and the Career Counseling Center in the spring of 2020 was disproved by NYU's master phone records. And Plaintiff's statement that she left a voicemail with the Health Center was an obvious lie since the Student Health Center does not have a voicemail capability – the phone is manned 24/7/365. And her refusal to provide the court with the number for the second phone from which she allegedly placed these calls when ordered to do so by the Magistrate Judge cannot be squared with adequate class representation. In fact, her claim that she did not remember the phone number of this mysterious second phone is inherently incredible, and this court would never certify a class representative who, though a graduate student at a major university, could not recall her own phone number.

In this Circuit, conflicting deposition testimony and Plaintiff's "refusal to answer proper discovery questions" constitutes "an adequate basis for the district court to conclude that [Plaintiff's] representation of the class would be less than adequate." *Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir. 1983) (affirming the district court's determination that the plaintiffs were not adequate class representatives because they gave in accurate and conflicting deposition testimony and refused to clarify when confronted with such factual discrepancies).

Moreover, Plaintiff does not have a firm grasp on her own case. Plaintiff could not explain precisely which fees were at issue in this case and claimed to have been unaware that NYU had already issued refunds of certain fees collected for the spring 2020 semester. (Garcia Tr., 236:6-10). Plaintiff's lack of knowledge of that fact is concerning because her Complaint alleges that

the refunds that NYU did issue were insufficient; it is not possible to make such an allegation if one does not know that refunds had been issued, let alone what refunds were in fact issued.

Finally, Plaintiff does not even know who her lawyers are; the lawyer she identifies is not someone whose communications show up in her privilege log and while he has appeared, his law firm did not draft or (apparently) file the class complaint.  Another law firm did that, but Plaintiff did not disclose the existence of that law firm (or a third alleged affiliated law firm) to this court. Class certification and class representative status may properly be denied where the proposed class representative has so little knowledge of the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.   *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir.1995)).

Plaintiff plainly does not have the ability to perform the duties and responsibilities incumbent on the lead plaintiff in a class action.

In short, nothing in the record gives this court "absolute confidence" in either Plaintiff's competence or her loyalty to the proposed class. She is demonstrably not an adequate class representative.

>            iii.    *Plaintiff's counsel is also inadequate.*

Where, as here, a proposed "class representative's understanding of the case is minimal, counsel's adequacy takes on even greater importance." *Kulig v. Midland Funding, LLC*, 2014 WL 6769741, at *4 (S.D.N.Y. Nov. 20, 2014).  "If the representative is manifestly unable to supervise class counsel, a court must have absolute confidence in counsel's competence and loyalty to the class." *Id*.

I certainly cannot say that counsel enjoys the court's confidence in this regard.

Class counsel should not be appointed unless the plaintiff has shown "that 'class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (internal citations omitted). "Because class counsel seeks to determine the rights of absent putative class members, a court must carefully scrutinize the adequacy of representation." *Kingsepp v. Wesleyan Univ*., 142 F.R.D. 597, 602-03 (S.D.N.Y. 1992) (internal quotation marks omitted). And the court "may consider the honesty and integrity of the putative class counsel, as they will stand in a fiduciary relationship with the class." *Friedman-Katz v. Lindt & Sprungli (USA), Inc*., 270 F.R.D. 150, 160 (S.D.N.Y. 2010).

Plaintiff asks this court to appoint the Anastopoulo Firm as class counsel. (Docket No. 36). Plaintiff's proposed class counsel – Roy T. Willey, IV of the Anastopoulo firm – is entirely lacking in experience. The record does not suggest that Mr. Willey is an experience class counsel. He filed 30 cases like this one in light of the pandemic, but his resume demonstrates no experience as class counsel *prior* to the pandemic. The Complaint in this matter contains numerous deficiencies (discussed above and in the original decision on the motion to dismiss); furthermore, it appears to have been drafted by a different law firm, the Toptani Law Firm, which means it tells the court nothing about Mr. Willey's capacity as an attorney (aside, of course, from the fact that he allowed his name to be placed on it). It appears that a few courts have named him as lead counsel in cases similar to this one, but there is no indication that he has ever been appointed lead counsel in a case where anyone else sought that status.

It is apparently the intent of Plaintiff that Mr. Willey will not serve as lead counsel in this matter. The engagement letter that Plaintiff signed indicates that three different law firms – Anastopoulo Firm, Toptani Law, and MSB – will be representing Plaintiff in this matter, and two

of those firms have appeared on the record.[4]  The fact that Plaintiff was being represented by multiple counsel was not disclosed to the court by Plaintiff or her attorneys; it was unearthed by Defendant's lawyers during class discovery. And from the moving papers, it appears that, while Plaintiff moves only to have Mr. Willey named lead counsel, Toptani Law (which drafted her complaint) plans to serve as his co-counsel. This court has not been asked to bless a co-counsel arrangement, or to appoint two firms as lead counsel.

This omission is a serious, indeed disqualifying, error on counsel's part.  This court rarely if ever permits co-lead counsel in a class action.  I recently disqualified a well-known class action law firm (not an unknown firm like the Anastopoulo Firm) from serving as lead counsel when it came to light that the firm was allowing a second firm – one not chosen to serve as class counsel – to serve as co-counsel, without the knowledge or permission of the court.  *See In re Allergan PLC Sec. Litig.*, No. 18CIV12089CMGWG, 2020 WL 5796763, at *3 (S.D.N.Y. Sept. 29, 2020). There is no way that I would appoint the Anastopoulo Firm as lead counsel if  Toptani Law were planning to serve as co-counsel and collect part of any fee. The failure to disclose any of this renders both firms unfit to serve as class counsel, since it is clear that they are serving their own interests, not those of the class or the court.

Furthermore, proposed class counsel have demonstrated no loyalty to their client.  Their retainer letter makes it clear that they will walk away from their representation of her unless the proposed putative class action is certified and they are named lead counsel. Lawyers who have not demonstrated loyalty to their named client cannot be counted on to be loyal to thousands of unnamed clients whom they have never met.

---

[4] According to the moving papers, the MSB Firm is no longer involved in this case. (Docket #102 at 15)

Finally, the lawyers who have appeared in this case for Plaintiff (including the Anastopoulo Firm) have manifestly failed in their duty to the court.

They conveniently failed to plead, in their original complaint, that Plaintiff was a student at a small branch campus of NYU – a critically important fact for assessing the commonality and typicality of her claim. And they failed to comply with this court's order that all class-related discovery be conducted on an expedited basis.  I expedited class-discovery because Plaintiff's individual claims are not federal in nature and do not come close to meeting the threshold for diversity jurisdiction. In fact, were she to bring them in the New York State Courts, she could bring them in a Small Claims Court in Rockland County, since the amount at issue is less than the $3,000 jurisdictional ceilings for those courts.[5]  Or she could sue NYU in the Small Claims Part of the New York City Civil Court which has a jurisdictional limit of $10,000.[6]

As a result, the only basis for exercising federal jurisdiction in this matter is the Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1332(d)(2).[7]  Recognizing that the court would not have jurisdiction over Plaintiff's case unless it could be certified as a class action pursuant to CAFA, this court stated at the outset that it was "imperative that the court ascertain as quickly as possibly whether this action can be maintained as a class action."  (*See* Order on the Motion to Dismiss at 29).

---

[5] *See* https://nycourts.gov/courthelp/smallClaims/index.shtml, last accessed June 22, 2022.

[6] *See* https://portal.311.nyc.gov/article/?kanumber=KA-03006, last accessed June 22, 2022.

[7] CAFA provides that the "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2).

Notwithstanding the court's emphasis on the need for swift class discovery, counsel for Plaintiff flouted their discovery obligations and evidenced a clear disregard for their responsibilities to the proposed putative class.  As a result, the court was forced to refer class discovery issues to Magistrate Judge Aaron, who decided that Plaintiff would need to sit for a second deposition because of misconduct associated with her first session.  The discovery issues both wasted precious court resources and delayed the briefing on the motion for class certification that is pending before the court. Counsel who do not comply wholeheartedly with (or see to it that their client complies with) discovery obligations cannot be trusted to fulfill their fiduciary duties to the proposed class.  *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976).

Proposed class counsel is no more adequate than is Plaintiff to represent the proposed class. That alone dooms the motion for certification.

### C.  Individual issues predominate over issues that are common to the proposed class members.

To satisfy Rule 23(b), a plaintiff must show that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)'s predominance requirement is designed to ensure that the "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

A class should be certified "only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir.2007) (internal quotations omitted).  This

requirement is "far more demanding than the Rule 23(a) requirement that common questions of law or fact exist." *Mullaney v. Delta Air Lines, Inc*., 258 F.R.D. 274, 278 (S.D.N.Y. 2009).

As has already been amply demonstrated, individual questions undoubtedly predominate over class questions in this case. And when that is the case, the "'fatal dissimilarities' among putative class members 'make use of the class-action device inefficient or unfair.'" *Petrobras*, 862 F.3d at 270 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013)).

To illustrate, one of the central questions that must be answered to adjudicate Plaintiff's proposed class claim is "whether the amount already refunded by NYU is 'sufficient' to redress lack of access to the various activities and services covered by student fees." (Docket No. 28 at 20).

But this question cannot be answered with respect to the proposed class as a whole. Some students received refunds of class and school-based fees, while other students did not; some fees may have been used to cover services that remained available during the pandemic closure (the R&S Fees appear to be particularly applicable to such services) while others (like room and board fees) – which were refunded – were not. (Docket No. 79, ¶ 5-7). To determine whether those refunds were sufficient, this court would have to review each individual fee, each individual refund, and determine whether the associated services, supplies, or equipment were provided and, if not, whether a sufficient refund was issued. And like Plaintiff, class members who attended a satellite campus during the spring of 2020 would be required to demonstrate that they would have utilized services and programs offered on the main campuses but for the pandemic closures.

Furthermore, each of the University's colleges and programs advertised different services in exchange for the payment of fees. NYU charged over 66 different fees for the spring 2020 semester, and each fee was charged in exchange for a different program or service. Adjudication

of the class claims would require examination of the representations made by each program that collected a fee.

Where, like here, "the claims require examination of individual contract language," it is appropriate to decline to certify a breach of contract class action. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013) (citing *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 304 (D. Conn. 2009) (declining to certify class for breach of contract claims where contracts defined cost and value differently such that the language of each contract "would need to be carefully considered to determine whether defendants breached each contract at issue")).

For all the reasons set forth above, Plaintiff cannot satisfy Rule 23(a) or (b). The motion for class certification and appointment of class plaintiff and class counsel is, therefore, DENIED.

Because this case cannot be maintained as a class action – and certainly not by Plaintiff – the lone basis for federal jurisdiction disappears. For that reason, the complaint must be dismissed, albeit without prejudice. Plaintiff is free to bring her claim in a state court of competent jurisdiction.

## CONCLUSION

There remains in this case a motion for sanctions against Plaintiff's counsel – Edward Toptani and his law firm Toptani Law PPLC and Eric M. Poulin, Roy T. Willey, IV, Blake G. Abbott, and Jarrett W. Withrow and their firm Anastopoulo Law Firm, LLC – which will be fully briefed on July 1, 2022. (*See* Docket No. 59). So while the complaint is dismissed, the Clerk of Court cannot yet close the matter. It remains on this court's docket for the sole purpose of deciding that motion.

This constitutes the decision and order of the court. It is a written opinion.

The Clerk of Court is respectfully directed to terminate the motions at Docket Numbers 36 and 39, and to enter an order dismissing the Complaint without prejudice for want of subject matter jurisdiction.

Dated: June 22, 2022

_____
                                                       U.S.D.J.

BY ECF TO ALL COUNSEL