# EXHIBIT 72

**CONTAINS CONFIDENTIAL INFORMATION**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Casey E. Hall-Landers, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>        v.<br><br>New York University,<br><br>          Defendant. | Civil Action No. 1:20-cv-03250-GBD |

<br><br>

## EXPERT DECLARATION OF JONATHAN T. TOMLIN

<br>

**September 18, 2024**

CONTAINS CONFIDENTIAL INFORMATION

**Table of Contents**

I.    INTRODUCTION ................................................................................................ 1

   A.    Qualifications .......................................................................................... 1

   B.    Task Presented and Summary of Conclusions Reached ................................. 2

II.    BACKGROUND ............................................................................................... 4

   A.    NYU ...................................................................................................... 4

   B.    NYU's Response to COVID-19 .................................................................. 6

III.    ACTUAL TUITION PRICING AT NYU DOES NOT SUPPORT ANY PRICE
PREMIUM ........................................................................................................ 8

IV.    ECONOMIC EVALUATION OF THE DECLARATIONS OF MR. GASKIN AND MR.
WEIR 12

   A.    The Gaskin and Weir Declarations ............................................................ 12

   B.    Conjoint Analysis .................................................................................. 13

   C.    Mr. Gaskin and Mr. Weir Ignore the Many Fundamental Differences between NYU
Students ..................................................................................................... 15

   D.    Mr. Gaskin and Mr. Weir Do Not Propose Any Method for Assessing Market Values 20

     1.    NYU Students Do Not Pay a Single "Market Price" .................................... 20

     2.    A Conjoint Survey Could Not Determine a Market Price ........................... 25

   E.    Mr. Gaskin's Proposed Method Doesn't Comport with Plaintiff's Allegations ........... 32

     1.    Mr. Gaskin Uses the Wrong "But-For" Scenario ........................................... 32

     2.    Mr. Gaskin Doesn't Propose Surveying NYU Students or the Choices They Would
Have Faced ................................................................................................. 33

   F.    Neither Mr. Weir Nor Mr. Gaskin Describe a Method for Identifying Payers or Prorating
Tuition ...................................................................................................... 35

V.    CONCLUSION ................................................................................................ 36

CONTAINS CONFIDENTIAL INFORMATION

## I.    INTRODUCTION

### A. Qualifications

1) I am an economist and Senior Managing Director in the Los Angeles office of Ankura Consulting.  Ankura Consulting is an international consulting services firm with over twenty-five offices across the United States, Canada, Australia, Hong Kong, Singapore, the United Kingdom, Germany, and Dubai.

2) I hold a B.A. in economics from the University of Pennsylvania, an M.A. in economics from the University of California, Los Angeles (UCLA), and a Ph.D. in economics from UCLA.  My specialization for over twenty-five years as a business economist has been in the application of economics to legal issues.  I have assessed economic damages in numerous cases involving the appropriateness of class certification.  I have also specifically analyzed economic damages and class certification issues for cases involving allegations related to college and university responses to the COVID-19 pandemic.

3) I have published over twenty articles on law and economics.  My research has been published in books, peer-reviewed economic journals, and law reviews.  Many of my publications focus on the appropriate calculation of economic damages.  Several of my publications focus on the topic of damages involving class actions.  My research has been accepted in such peer-reviewed journals as the *Review of Law and Economics*, the *Journal of Forensic Economics*, the *B.E. Journal of Economic Analysis and Policy*, and in the *George Mason Law Review*.  I have served as an economic commentator for the online edition of *Forbes* and for *theStreet.com*.

4) My past and present professional affiliations include the American Economic Association, the American Finance Association, the American Law and Economics Association, and the National Association of Business Economists. I have served as an Economics Instructor for the National Association of Certified Valuation Analysts, where I taught principles of economic damages analysis.  In addition, I have testified as an economic expert witness on behalf of both plaintiffs and defendants for cases in state and federal courts.

CONTAINS CONFIDENTIAL INFORMATION

5) My curriculum vitae is attached as Exhibit 1. Ankura Consulting is compensated for my work on this matter at my standard hourly rate of $725. My compensation for this matter is not dependent on a specific opinion or outcome.

**B. Task Presented and Summary of Conclusions Reached**

6) Plaintiff, Casey E. Hall Landers, was a student in the Tisch School of the Arts at New York University ("NYU") in Spring of 2020.[1] Plaintiff alleges that because of NYU's "response to the novel Coronavirus Disease 2019 ('COVID-19') pandemic," they "lost the benefit of the in-person education for which they paid, and/or the services for which their fees were paid, without having their tuition and fees refunded to them."[2] Plaintiff also alleges that they "[bring] this action to recover payments for pro-rated tuition, access programs, and services for which NYU was paid, but failed to deliver."[3] Plaintiff now seeks certification of the following class: "All undergraduate students enrolled in classes at NYU at one of NYU's New York campuses during the Spring 2020 semester who paid tuition (the 'Class')."[4]

7) Steven P. Gaskin and Colin B. Weir have submitted declarations on behalf of Plaintiff in this case.[5] Mr. Gaskin states that he was asked to "design and describe a market research survey and analysis that would enable [him] to assess the extent of any reduction in market value resulting from the Closure of the University Campus (measured in dollars and/or percentage terms), meaning the difference in market value between in-person classes and full access to the University's campus and facilities, compared to the market value of online classes and no access to the University's campus or facilities, at the time and point of acceptance."[6] Mr. Weir states that he has "been asked by Counsel for Plaintiff to ascertain whether it would be possible to determine damages on a class-wide

---

[1] Second Amended Class Action Complaint dated September 18, 2023 ("SAC") at paragraphs 16, 19-20.
[2] SAC at paragraph 1.
[3] SAC at paragraph 15.
[4] Memorandum of Law in Support of Plaintiff's Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel dated June 21, 2024 at page 1.
[5] Declaration of Steven P. Gaskin in Support of Class Certification dated June 20, 2024 ("Gaskin Declaration"). Declaration of Colin B. Weir dated June 21, 2024 ("Weir Declaration").
[6] Gaskin Declaration at paragraph 10.

**CONTAINS CONFIDENTIAL INFORMATION**

basis using common evidence, and if so, to provide a framework for the calculation of damages suffered by the proposed class."[7]

8) I have been retained on behalf of NYU to perform an economic analysis of the Declarations of Mr. Gaskin and Mr. Weir. Based on my review of their Declarations and the documents and data I have reviewed in this matter, I have the following opinions:

  i) Actual tuition pricing at NYU does not support the existence of a price premium paid by students for in-person instruction compared to remote instruction during the Spring of 2020. Mr. Gaskin and Mr. Weir propose relying on a yet-to-be-conducted survey (as explained below, primarily of individuals who did not have a choice to attend NYU). But neither examines actual tuition prices at NYU.

    a. Tuition prices in the Summer of 2020 and Fall of 2020, at a time in which students were informed in advance that some or all classes would be remote, provides for an economic "natural experiment" for examining whether students may have paid a "price premium" in the Spring of 2020. Tuition prices were not lower during either time period than they were in the Spring of 2020.

    b. When available in both a remote and an in-person format, listed tuition prices have been identical at NYU for the same degree programs (including prior to the pandemic), according to William Clay Shirky, Vice Provost for AI and Technology in Education at NYU.[8]

  ii) Mr. Gaskin's and Mr. Weir's proposed methodology cannot reliably determine damages for any putative class member (or on a classwide basis) for the following reasons:

---

[7] Weir Declaration at paragraph 6.
[8] Declaration of William Clay Shirky dated September 16, 2024 at paragraph 10. I have also not seen any evidence of reduced tuition prices for online undergraduate courses or majors provided by NYU, Mr. Gaskin, or Mr. Weir. I conducted a search of available archived web pages providing tuition rates for the School of Professional Studies Division of Applied Undergraduate Studies' online degree programs in the Fall of 2019 and found that these tuition rates were identical to the tuition rates for on-campus programs within the School of Professional Studies Division of Applied Undergraduate Studies. I additionally searched for any archived web pages reporting different tuition rates for on-campus compared to online courses for other courses provided through NYU and was unable to find any evidence that tuition prices were lower for online undergraduate courses. See Tomlin xlsx workpapers.

CONTAINS CONFIDENTIAL INFORMATION

    a. Their proposed methodology incorrectly assumes a single university with a single tuition amount.  NYU actually has 10 different undergraduate schools and colleges which can and do differ across tuition costs, scholarships, application processes, and educational offerings.  NYU's different undergraduate schools and colleges serve students pursuing different areas of academic study and are administered by faculties and departments that provide different expertise and resources to their students.  NYU's undergraduate schools and colleges therefore face different demand and supply factors impacting their market prices.  Mr. Gaskin and Mr. Weir overlook these fundamental differences and, therefore, do not reliably consider, analyze, or explain how their proposed theoretical conjoint survey could identify economic harm or calculate damages.

    b. Their proposed methodology could not determine actual market values for education at NYU because it (a) ignores how NYU actually sets tuition prices; (b) proposes surveying individuals, including those who did not and never could have attended NYU and therefore could not measure the demand for education at NYU; and (c) overlooks the fact that there was no "market" for in-person classes at NYU or at other comparable colleges and universities across the country in the latter part of Spring 2020.  I note that Mr. Gaskin and Mr. Weir refer both to "market value" and "market price."  I treat "market value" synonymously with "market price" in my discussion below.

9) Below, I provide the basis for each of my opinions.  I have attached the list of materials I considered in conducting my analysis at Exhibit 2.

## II.  BACKGROUND

## A.  NYU

10) In this section, I describe information about NYU in 2020.  NYU describes that it "is a not-for-profit institution which is dedicated to teaching and research."[9]  NYU is comprised of 18 different schools and colleges, including 10 schools and colleges serving

---

[9] New York University, "Code of Ethical Conduct," at https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/code-of-ethical-conduct.html.

**CONTAINS CONFIDENTIAL INFORMATION**

undergraduate students at its New York City campus that "each [offer] a distinct identity, academic focus, and intellectual community."[10]  NYU includes 400 academic programs and offered 230 areas of study for undergraduate students in Spring 2020.[11]

11) As shown in Table 1 below, the schools and colleges offering undergraduate education at NYU in New York differ in terms of their enrollment levels, the percentage of their students receiving scholarships, and the average amount of those scholarships.

---

[10] Defendant New York University's Objections to Plaintiff Casey E. Hall-Landers' First Set of Requests for Production of Documents, January 16, 2024, p. 5. New York University, "Campuses, Schools, & Colleges," at https://web.archive.org/web/20181120014720/https://www.nyu.edu/admissions/undergraduate-admissions/majors-and-programs/campuses-schools-and-colleges.html; https://web.archive.org/web/20200814121155/https://www.nyu.edu/admissions/undergraduate-admissions/majors-and-programs/campuses-schools-and-colleges.html. See also Declaration of William Clay Shirky dated September 16, 2024 at paragraph 4.

[11] New York University, "NYU Facts," at https://web.archive.org/web/20200116030536/https://www.nyu.edu/admissions/undergraduate-admissions/nyu-facts.html; Defendant New York University's Objections to Plaintiff Casey E. Hall-Landers' First Set of Requests for Production of Documents, January 16, 2024, p. 5. NYU lists various academic programs including, e.g., accounting, biology, and mathematics. New York University, "Academic Programs," at https://web.archive.org/web/20200131223821/https://www.nyu.edu/academics/academic-programs.html.

CONTAINS CONFIDENTIAL INFORMATION

**Table 1: Enrollment and Scholarship Financial Aid at NYU in Spring 2020**

| NYU School/College | Total Enrollment | Number of Students Receiving Scholarship | Percentage Receiving Scholarship | Amount of Scholarship | Average Scholarship Amount |
|---|---|---|---|---|---|
| College of Arts and Science | 10,124 | 5,270 | 52% | $66,959,084 | $12,705.71 |
| Leonard N. Stern School of Business | 2,532 | 1,418 | 56% | $16,041,924 | $11,313.06 |
| School of Professional Studies | 1,295 | 570 | 44% | $4,726,337 | $8,291.82 |
| College of Dentistry | 181 | 126 | 70% | $423,343 | $3,359.87 |
| Steinhardt School of Culture, Education, and Human Development | 2,960 | 1,597 | 54% | $19,477,613 | $12,196.38 |
| Gallatin School of Individualized Study | 1,553 | 737 | 47% | $11,190,314 | $15,183.60 |
| Rory Meyers College of Nursing | 875 | 636 | 73% | $5,509,567 | $8,662.84 |
| Silver School of Social Work | 137 | 97 | 71% | $1,621,607 | $16,717.60 |
| Tisch School of the Arts | 3,605 | 1,837 | 51% | $22,796,169 | $12,409.46 |
| Tandon School of Engineering | 2,701 | 1,847 | 68% | $27,296,945 | $14,779.07 |

*Source: Declaration of MJ Knoll-Finn dated September 16, 2024 at Figure 3.*

## B. NYU's Response to COVID-19

12) On January 21, 2020, the U.S. Centers for Disease Control and Prevention ("CDC") reported that the first case of COVID-19 had been identified in the United States.[12]  By

---

[12] "First Travel-related Case of 2019 Novel Coronavirus Detected in United States," CDC, January 21, 2020, at https://archive.cdc.gov/#/details?q=https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-

CONTAINS CONFIDENTIAL INFORMATION

March 2020, the virus was rapidly spreading and the Governor of New York declared a disaster emergency for the entire State of New York.[13]

13) On March 5, 2020, the U.S. Department of Education advised that "[f]or many institutions, online education will provide a viable option for continuing to teach students through COVID-19-related interruptions," and it provided "broad approval to institutions to use online technologies to accommodate students on a temporary basis."[14] By mid-March of 2020, there was an "abrupt mass migration of traditional college courses to the internet."[15]

14) By March 23, 2020, after the Governor of New York issued an Executive Order which I understand made in-person instruction illegal in the state, NYU had transitioned to remote instruction.[16]

15) By April 2020, NYU informed students that both of its Summer 2020 course sessions (one beginning May 26, 2020 and the other beginning July 6, 2020) would be held remotely.[17]

16) Prior to the Fall 2020 semester, NYU informed students on its tuition and fees web page that "[s]ome or all instruction for all or part of Academic Year 2020-2021 may be

---

case.html&start=0&rows=10&url=https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html.

[13] Cuomo, Andrew, "Declaring a Disaster Emergency in the State of New York," Executive Order No. 202, March 7, 2020, at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.pdf.

[14] Office of Postsecondary Education, U.S. Department of Education, March 5, 2020, at https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2020-03-05/guidance-interruptions-study-related-coronavirus-covid-19-updated-june-16-2020.

[15] "Everybody Ready for the Big Migration to Online College? Actually, No," Kevin Carey, The New York Times, March 13, 2020.

[16] On March 20, 2020, the Governor of New York signed the "New York State on PAUSE" executive order that included "a new directive that all non-essential businesses statewide must close in-office personnel functions effective at 8PM on Sunday, March 22, and temporarily [banned] all non-essential gatherings of individuals of any size for any reason." New York State, "Governor Cuomo Signs the 'New York State on PAUSE' Executive Order," March 20, 2020, at https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order.

[17] New York University, "A Summary Update on COVID-19 Developments," April 4, 2020, at https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/office-of-the-provost/provostial-communications/a-summary-update-on-covid19-developments.html; New York University, "A Summary Update on COVID-19 Developments," April 11, 2020, at https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/office-of-the-provost/provostial-communications/a-summary-update-on-covid19-developments-april-11.html.

CONTAINS CONFIDENTIAL INFORMATION

delivered remotely," and that "[t]uition and mandatory fees have been set regardless of the method of instruction."[18]  NYU resumed some on-campus instruction for the Fall 2020 semester, holding approximately half of its courses remotely and the other half partly or fully in-person.[19]  This partial return to campus in the Fall of 2020 included additional health and safety measures, including quarantining for some students returning to student housing and COVID-19 testing.[20]

### III. ACTUAL TUITION PRICING AT NYU DOES NOT SUPPORT ANY PRICE PREMIUM

17) Mr. Gaskin and Mr. Weir propose to examine "the difference in market value between in-person classes and full access to the University's campus and facilities, compared to the market value of online classes and no access to the University's campus or facilities, at the time and point of acceptance."[21]  However, neither one examines actual tuition pricing at NYU (or proposes examining it in any way).

18) As explained below, actual tuition pricing at NYU does not support the existence of a "price premium" (meaning a price paid for tuition that exceeded its market value) paid by students.

19) According to the Declaration of William Clay Shirky, Vice Provost for AI and Technology in Education at NYU, remote and in-person tuition amounts for comparable programs have always been the same at NYU since at least 2001.[22]  Further, according to Professor Shirky, the application processes are also typically the same for comparable online and in-person programs.[23]

---

[18] New York University, "Tuition and Fees," at
https://web.archive.org/web/20200804091437/http://www.nyu.edu/students/student-information-and-resources/bills-payments-and-refunds/tuition-and-fees.html.
[19] Beckman, John, "Statement by NYU Spokesman John Beckman on the Start of Fall 2020 Classes," New York University, September 2, 2020, at https://www.nyu.edu/about/news-publications/news/2020/september/JB_Statement_Fall2020.html.
[20] Beckman, John, "Statement by NYU Spokesman John Beckman on the Start of Fall 2020 Classes," New York University, September 2, 2020, at https://www.nyu.edu/about/news-publications/news/2020/september/JB_Statement_Fall2020.html.
[21] Gaskin Declaration at paragraph 10.
[22] Declaration of William Clay Shirky dated September 16, 2024 at paragraph 10.  See also Deposition of William Clay Shirky dated May 16, 2024 at pages 126-127.
[23] Deposition of William Clay Shirky dated May 16, 2024 at page 124.

**CONTAINS CONFIDENTIAL INFORMATION**

20) Information on tuition pricing at NYU during the Summer of 2020 and the Fall of 2020 allows for what economists call a "natural experiment" for this case.

21) A natural experiment is an actual market event that allows one to investigate the impact of a variable on market prices (or on another variable of interest).[24]  In this case, we wish to investigate the impact of a switch to remote classwork offerings on tuition pricing at NYU in the Spring of 2020 had students known that remote instruction would occur and been given a choice to enroll or not.  These circumstances happened in the Summer of 2020 and the Fall of 2020.  Unlike the suggested survey proposed by Mr. Gaskin, tuition pricing during these time periods can be used to evaluate "the market [price] of online classes and no access to the University's campus or facilities."[25]

22) Prior to the Summer sessions of 2020, students were informed that classes would be remote and had a choice to enroll or not enroll under those circumstances.[26]  Plaintiff chose to attend NYU during the summer semester and pay full tuition under these conditions.[27]  Prior to the Fall 2020 semester, NYU informed students on its tuition and fees web page that "[s]ome or all instruction for all or part of Academic Year 2020-2021 may be delivered remotely," and that "[t]uition and mandatory fees have been set regardless of the method of instruction."[28]

---

[24] Wooldridge, Jeffrey M., "Introductory Econometrics A Modern Approach," Cengage, 7th Ed., 2018, p. 434 ("A natural experiment occurs when some exogenous event—often a change in government policy— changes the environment in which individuals, families, firms, or cities operate. A natural experiment always has a control group, which is not affected by the policy change, and a treatment group, which is thought to be affected by the policy change."). See also Mankiw, N. Gregory, "Principles of Microeconomics," Cengage Learning, 7th Edition, 2013, p. 21 ("To find a substitute for laboratory experiments, economists pay close attention to the natural experiments offered by history.").
[25] Gaskin Declaration at paragraph 10.
[26] New York University, "A Summary Update on COVID-19 Developments," April 4, 2020, at https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/office-of-the-provost/provostial-communications/a-summary-update-on-covid19-developments.html; New York University, "A Summary Update on COVID-19 Developments," April 11, 2020, at https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/office-of-the-provost/provostial-communications/a-summary-update-on-covid19-developments-april-11.html. I understand tuition for the Summer 2020 semester was due on May 12, 2020 and students had opportunities to drop courses and receive a 100% refund of their tuition before various dates in May, June, and July of 2020 depending on when their Summer 2020 course was scheduled. See Exhibit 1 to the Deposition of William Clay Shirky dated May 16, 2024 at pages 3-6.
[27] Deposition of Casey Hall-Landers dated April 12, 2024 at pages 218-219.
[28] New York University, "Tuition and Fees," at https://web.archive.org/web/20200804091437/http://www.nyu.edu/students/student-information-and-resources/bills-

**CONTAINS CONFIDENTIAL INFORMATION**

23) I collected data for the listed tuition amounts per credit for each of the 10 different colleges and schools offering undergraduate education at NYU in New York for both Summer of 2020 and for the Fall of 2020.[29]  For the Summer of 2020, listed tuition prices per credit were equal to those in the Spring of 2020 for all undergraduate schools and colleges.[30]  For the Fall of 2020, tuition amounts were approximately 3% higher than those in the Spring of 2020.[31]

24) Not only was the tuition price higher in the Fall of 2020 compared to the Spring of 2020, the approximately 3% increase in that year was consistent with the prior (and following year) increases as shown in Figure 1 below. It is also consistent with NYU's reported compound annual growth rate of tuition since 2016 of 2.7%.[32]

---

payments-and-refunds/tuition-and-fees.html. I understand that undergraduate payment for the Fall 2020 semester was due on August 4, 2020 and that undergraduate students had the opportunity to drop their courses and receive a 100% refund of their tuition before September 3, 2020. Exhibit 1 to the Deposition of William Clay Shirky dated May 16, 2024 at p. 6; New York University, "Fall 2020 Refund Schedule by School," at https://web.archive.org/web/20210504094456/https://www.nyu.edu/students/student-information-and-resources/bills-payments-and-refunds/refunds-and-withdrawals/fall-2020-refund-schedule-by-school.html.

[29] This includes tuition amounts for each of the School of Professional Studies' underlying undergraduate programs (1) the Division of Applied Undergraduate Studies, (2) Traditional Undergraduate Programs, and (3) Associate's Programs, as well as tuition amounts for visiting students at NYU.

[30] There are certain instances where, depending on the number of credits enrolled, list tuition in the Summer of 2020 was different than the Spring of 2020.  This appears to be due to (1) the availability of "flat rate" list tuition pricing at specific bands of enrolled credits (e.g., 12 to 18 credits) available to students in the Fall and Spring semesters but not Summer semesters (where each additional credit is priced on a constant per credit basis), and (2) a change in the list tuition charged by the Tisch School of the Arts to match the list tuition charged by the College of Arts and Science for the Summer semester. These instances are not anomalous and also occurred during the most recent academic year (2023-2024).  Moreover, certain programs did charge a "flat rate" during the Summer of 2020 for certain Spring 2020 admits, including in the Liberal Studies program, the Steinhardt School, and the Tandon School of Engineering.  These students would have paid the flat rate list tuition amount charged for full time students in the Spring 2020 semester, regardless of the number of credits enrolled in the Summer of 2020.  See Tomlin xlsx workpapers.  See also Declaration of Anthony Bonano dated September 10, 2024 at page 3 ("Tuition for the Summer 2020 term was not reduced despite the fact that instruction occurred remotely. Likewise, tuition for the Fall 2020 semester was not reduced depending on whether a student elected to enroll in in-person classes, remote classes, blended classes (i.e., a mixture of in-person and remote), or some combination thereof.").

[31] On a per credit basis, list tuition rates were between 2.9% and 3.0% higher in Fall 2020 compared to Spring 2020 for all undergraduate schools and colleges except for the School of Professional Studies Associate's Programs, which increased in price by 3.9%.  See Tomlin xlsx workpapers.

[32] New York University, "Major Categories of Revenue," at https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-revenue.html.

CONTAINS CONFIDENTIAL INFORMATION

**Figure 1: Percentage Changes in Annual List Tuition Prices – NYU Published Tuition Rate 2016-2022**



25) In short, actual tuition pricing during the Summer and Fall of 2020 occurred in a context in which undergraduates were informed that some or all classes would be in a remote format. These are valid economic benchmarks for examining market prices for remote classes "at the point of acceptance" (what Mr. Gaskin proposes to measure). These market prices are not lower than the listed tuition prices for putative class members in the Spring of 2020 and do not support the conclusion that putative class members overpaid for that semester. The theoretical survey proposed by Mr. Gaskin and Mr. Weir and discussed below cannot change this reality.

CONTAINS CONFIDENTIAL INFORMATION

## IV. ECONOMIC EVALUATION OF THE DECLARATIONS OF MR. GASKIN AND MR. WEIR

26) Below, I summarize the Declarations of Mr. Gaskin and Mr. Weir.  Following this, I perform an economic evaluation of their proposed methodology.  For purposes of my analysis, I address only the economic implications of Mr. Gaskin's and Mr. Weir's proposed methodology.  I offer no opinion on the appropriateness of Mr. Gaskin's proposed survey design in terms of the number of individuals he proposes surveying; the online format he proposes for his survey; his proposed use of Sawtooth software; or whether or not the format of the questions he proposes result in unbiased responses.

### A.  The Gaskin and Weir Declarations

27) Mr. Gaskin proposes to use a conjoint survey for the purposes of estimating "any reduction in market value (measured in dollars and/or percentage terms) due to the Closure of New York University Campus in Spring 2020."[33] He further proposes surveying "at least 300 respondents" who "personally applied to New York University or one of its competitors for 4-year undergraduate education in the past 20 years."[34]  He states that he will present the survey respondents with 12 "choice tasks" in which they will chose between three different listed universities with "attributes" listed as "Best National University Ranking," "Student-Faculty Ratio," "4-Year-Graduation Rate," "Ethnic Diversity Index," "Class and Campus format," and per semester tuition.[35]

28) Mr. Gaskin has not conducted his proposed survey. Nor has he performed any conjoint analysis.

29)  Mr. Weir, in his Declaration, states that he has "been asked by Counsel for Plaintiff to ascertain whether it would be possible to determine damages on a class-wide basis using common evidence, and if so, to provide a framework for the calculation of damages suffered by the proposed class."[36]

---

[33] Gaskin Declaration at paragraph 12.
[34] Gaskin Declaration at paragraph 38.
[35] Gaskin Declaration at paragraphs 24-25.
[36] Weir Declaration at paragraph 6.

**CONTAINS CONFIDENTIAL INFORMATION**

30) Mr. Weir also states that "the Gaskin Declaration describes the method by which an overpayment percentage will be calculated."[37]  He states that "overpayment damages" will be calculated as the hypothetical "%Overpayment Factor" offered by Mr. Gaskin multiplied by "$Tuition" (which Mr. Weir states is "the amount the class paid in instructional fees") multiplied by "%Prorate" (which he describes as "the fraction of the days that students were taking online classes and not having access to the University campus divided by the total days that students would have otherwise had in-person classes and access to the University campus.").[38]  He states that "[n]o individualized analyses, or Class-Member-specific inquiry will be required."[39]

31) I note that Mr. Weir does not appear to offer any economic opinion specifically related to this case.  He simply proposes taking a number provided by Mr. Gaskin and multiplying it by (1) tuition and (2) a "proration" amount.[40]  No economic expertise is required for this calculation.  It is simple algebra.   Nevertheless, because Mr. Weir is purporting to offer an opinion on damages I address his declaration along with Mr. Gaskin's declaration.

**B.  Conjoint Analysis**

32) Conjoint analysis is a statistical tool based on consumer surveys that has sometimes been used by companies and academic researchers to measure consumer demand.  A researcher applying conjoint analysis attempts to isolate the stated "willingness to pay" of consumers for a particular "attribute" of a good or service.[41]

33) Mr. Gaskin states that conjoint analysis "has been shown to provide valid and reliable measures of consumer choices, and these have been shown to provide valid and reliable estimates of the relevant market value under scenarios related to those measured."[42]  He

---

[37] Weir Declaration at paragraph 41.
[38] Weir Declaration at paragraphs 44-45.
[39] Weir Declaration at paragraph 24.
[40] Weir Declaration at paragraphs 44-45.
[41] See, e.g., "Product Labeling Class Actions – Identifying the 'Con' in Conjoint Surveys," Jonathan Tomlin and Robert Zeithammer, Bloomberg Law, November 1, 2018.
[42] Gaskin Declaration at paragraph 14.

CONTAINS CONFIDENTIAL INFORMATION

also lists several cases in which he states that "courts found the methodology suitable as a basis for calculating damages and certified the classes."[43]

34) Mr. Weir states that "[i]ndeed, conjoint analysis has been used in litigation contexts to calculate damages for years" and also lists several cases.[44]  He also states that he has "relied on conjoint surveys, and the work of Mr. Gaskin, to determine damages in other litigations."[45]

35) Mr. Gaskin and Mr. Weir appear to imply that the use of conjoint analysis by itself guarantees an accurate measure of whatever an analyst attempts to calculate.  And they appear to imply that it has been universally adopted by courts.  This is inaccurate.  Whether or not a conjoint analysis can be successfully applied depends on the specifics and individual circumstances of the matter under study.

36) The fact that conjoint surveys have been used in academic research and by companies to evaluate demand for a product does not imply or compel the conclusion that Mr. Gaskin and Mr. Weir's proposed use of a conjoint survey can necessarily measure the damages sought by Plaintiff in this case.  The specifics and individual circumstances of this case need to be evaluated in conjunction with the method that Mr. Gaskin and Mr. Weir propose.

37) Further, it is true, as both Mr. Gaskin and Mr. Weir point out, that conjoint surveys have been accepted for class certification in some cases.  But it is also true, as both Mr. Gaskin and Mr. Weir neglect to point out, that conjoint surveys have also been rejected in consumer class actions.[46]  In fact, some conjoint surveys and related analyses offered by

---

[43] Gaskin Declaration at paragraph 15.
[44] Weir Declaration paragraph 13.
[45] Weir Declaration at paragraph 30.
[46] See, e.g., Zakarai v. Gerber Products (C.D. Cal 2017, affirmed by the Ninth Circuit in 2018); Tasneem v. Kellogg (S.D. Cal 2019); Schechner v. Whirlpool (E.D. Michigan, 2019); In Re: General Motors Ignition Switch Litigation (S.D. NY 2019).

**CONTAINS CONFIDENTIAL INFORMATION**

Mr. Gaskin and Mr. Weir in support of consumer class actions have been rejected – a fact that neither mentions in their reports.[47]

38)   As shown below, I have determined that the application of the hypothetical conjoint surveys that Mr. Gaskin and Mr. Weir describe (but do not implement) cannot be used to reliably calculate economic damages given the circumstances presented in this case.

### C.  Mr. Gaskin and Mr. Weir Ignore the Many Fundamental Differences between NYU Students

39) Mr. Gaskin states that the method he describes can measure "the difference in market value between in-person classes and full access to New York University's campus and facilities, compared to the market of online classes and no access to New York University's campus or facilities."[48]

40) Mr. Weir states that he will measure "[o]verpayment [d]amages -- wherein students would receive the difference between the market value of the University in-person classes and access to the University campus compared to the online classes that the University provided and not having access to the University campus" and he lists a single "$Tuition" amount in his proposed calculation.[49]

41) As a matter of basic economics, an appropriate assessment of market prices (which I will use synonymously with "market value" as used by Mr. Gaskin and Mr. Weir) needs to account for both demand conditions and supply conditions.

42) Mr. Gaskin and Mr. Weir implicitly assume that there is a single uniform demand, supply, and market value for "the University." In other words, Mr. Gaskin and Mr. Weir

---

[47] Schechner v. Whirlpool Corporation (E.D. Michigan, 2019). In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, "Order Excluding Evidence and Dismissing Case for Lack of Jurisdiction," November 12, 2020, pp. 11-13 ("Mr. Gaskin's Conjoint Analysis measured a demand-price difference… Mr. Gaskin does not actually calculate a market price premium; he examines only what consumers say they would be willing to pay for certain vehicles… this ignores the 'supply' part of the supply/demand curve;" "…the results of Mr. Gaskin's analysis indicate that his methodology was not reliable;" "Therefore, [Mr. Gaskin's] conjoint analysis is unreliable and inadmissible under Rule 702 of the Federal Rules of Evidence.").
[48] Gaskin Declaration at paragraph 12.
[49] Weir Declaration at paragraphs 42 and 44.

**CONTAINS CONFIDENTIAL INFORMATION**

overlook that there are 10 different schools and colleges within the NYU system in New York offering undergraduate education.

43) These different undergraduate schools and colleges, for example, serve students pursuing different areas of academic study. They also, by way of further example, provide differing scholarships in both amount and frequency and charge different rates of tuition.[50]

44) As shown in Table 2 below, based on publicly accessible information from the years leading up to and including Spring 2020 (i.e., information that putative class members would have been subject to), these different schools and colleges, and the different academic programs offered within these schools and colleges, have differing tuition amounts, application processes, scholarships, and course offerings. The different schools and colleges within NYU offer different areas of study and research. For example, NYU has distinct schools and colleges dedicated to the study of business, nursing, the arts, or engineering. There may also be distinct academic "programs" offered within these schools and colleges. As an example of a school at NYU that offers multiple distinct academic programs within that school, NYU's School of Professional Studies includes three programs: (1) the Division of Applied Undergraduate Studies, (2) Traditional Undergraduate Programs, and (3) Associate's Programs.[51] NYU describes that "[t]he Division of Applied Undergraduate Studies serves transfer students; adult learners; military veterans, active duty military, and their families; and other learners with at least one gap semester out from having earned their high school diploma, empowering them to earn an NYU degree designed for applied learning."[52] As Martin Dorph, Executive Vice President at NYU testified, these schools and colleges can also look to different sets of comparator schools when assessing their own programs.[53]

---

[50] See, e.g., Declaration of MJ Knoll-Finn dated September 16, 2024 at Figure 3; NYU_Hall-Landers_00009374.
[51] See, e.g., NYU_Hall-Landers_00009374.
[52] NYU, "Division of Applied Undergraduate Studies (DAUS)," at https://www.sps.nyu.edu/homepage/academics/divisions-and-departments/division-of-applied-undergraduate-studies.html. See Exhibit Bonano-6 to the Deposition of Anthony Bonano, May 13, 2024.
[53] Deposition of Martin Dorph dated May 21, 2024 at pages 26-27.

**CONTAINS CONFIDENTIAL INFORMATION**

**Table 2: Characteristics of NYU's Different Schools/Colleges and Academic Programs[54]**

| NYU School/College and Program | Application Material Was Required in Addition to Common Application | Some or All Students Submitted Application Other than Common Application | Unique Scholarship Opportunities Were Available | List Tuition Was Different than College of Arts and Science |
|---|---|---|---|---|
| College of Arts and Science | | | ✓ | |
| College of Dentistry | | ✓ | | |
| Gallatin School of Individualized Study | | | | |
| Leonard N. Stern School of Business | | | ✓ | ✓ |
| Rory Meyers College of Nursing | | ✓ | ✓ | |
| School of Professional Studies Division of Applied Undergraduate Studies | | ✓ | ✓ | ✓ |
| School of Professional Studies Traditional Programs | | | ✓ | |
| School of Professional Studies Associate's Programs | | ✓ | ✓ | ✓ |
| Silver School of Social Work | | | | |
| Steinhardt School of Culture, Education, and Human Development | ✓ | | ✓ | |
| Tandon School of Engineering | | ✓ | | ✓ |
| Tisch School of the Arts | ✓ | | | ✓ |
| Visiting Students | | ✓ | | |

45) The criteria for admission, admission rates, and scholarship opportunities differ between the undergraduate schools within NYU.[55]  This means that there are different student

**CONTAINS CONFIDENTIAL INFORMATION**

populations (with different educational preferences and goals) across the schools. It is reasonable to expect that the demand (which in conjunction with supply considerations determines prices) for education at NYU differs across the schools. Some schools only require the NYU common application. Other schools require a different application than the common application. And still other schools require the common application along with supplemental materials.

46) As an example, the application process for the Steinhardt School of Culture, Education, and Human Development "requires an audition or portfolio for all applicants to the Music Department with the exception of Educational Theatre, and a portfolio for those applying to Studio Art."[56] As another example, the Dental Hygiene Programs within NYU's College of Dentistry do not accept NYU's Common Application.[57] Applicants to the Dental Hygiene programs complete a separate "Application for Admission to Undergraduate Study to the Dental Hygiene Programs" and must satisfy academic requirements including successful completion of biology and chemistry courses.[58]

---

[54] Table 2 is based on publicly posted information available for the relevant time period. Undergraduate schools and programs are identified in Exhibit Bonano 6 to the Deposition of Anthony Bonano, May 13, 2024 and New York University, "Campuses, Schools, & Colleges," at https://www.nyu.edu/admissions/undergraduate-admissions/majors-and-programs/campuses-schools-and-colleges.html. Students pursuing a second bachelor's degree for the Rory Meyers College of Nursing and the Tandon School of Engineering did not submit the NYU Common Application during the relevant time period. Tuition for undergraduate students in the College of Dentistry is assumed to have been the same as tuition in the College of Arts and Science for the Spring 2020 semester based on these colleges charging the same list tuition price for academic years 2020-2021 through 2024-2025. Tomlin xlsx workpapers.

[55] Differences in admissions rates between NYU undergraduate schools are evidenced by Figures 4-5 to the Declaration of MJ Knoll-Finn dated September 16, 2024.

[56] New York University, "First-Year Applicants," at https://web.archive.org/web/20200407065236/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html. See also https://web.archive.org/web/20181005172314/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html; https://web.archive.org/web/20171005012320/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html.

[57] New York University, "Application Process," College of Dentistry, at https://web.archive.org/web/20191028164744/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/application-process.html; https://web.archive.org/web/20190627160632/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/application-process.html.

[58] New York University, "Admission Requirements," College of Dentistry, at https://web.archive.org/web/20200303114612/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/admission-requirements.html. See also

**CONTAINS CONFIDENTIAL INFORMATION**

47) As another example, Plaintiff was enrolled in the Tisch School of the Arts.  NYU explains: "[a]dmission to the Tisch School of the Arts is a highly selective process. Applicants are held to rigorous academic and artistic standards, and evaluated through a two-part admissions process, which includes submitting both the Common Application and an artistic review."[59]

48) The "artistic review" required for admission into the Tisch School of the Arts depends on each department's or program's specific requirements.  For example, students seeking admission into the Department of Dance must complete a dance audition that includes passing a ballet technique class and conducting a solo dance performance.[60]  Students seeking admission into the Department of Dramatic Writing must submit a writing portfolio that includes three or four writing samples totaling between 15-25 pages.[61]

49) The differences between NYU's schools and colleges identified above, among others, have significant economic implications.  Specifically, as relevant here, the differences evidence that the market demand and price for each school and college can vary.  For this reason, demand and supply needs to be considered separately for the different schools and colleges in order to perform an economically reliable analysis of market prices.

---

https://web.archive.org/web/20180822153738/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/admission-requirements.html;
https://web.archive.org/web/20171109155905/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/admission-requirements.html.

[59] New York University, "Undergraduate Admissions," Tisch School of the Arts, at https://web.archive.org/web/20200412055753/https://tisch.nyu.edu/admissions/undergraduate-admissions. See also https://web.archive.org/web/20181027023332/https://tisch.nyu.edu/admissions/undergraduate-admissions; https://web.archive.org/web/20171028070307/https://tisch.nyu.edu/admissions/undergraduate-admissions. See also Declaration of Seán Curran dated September 12, 2024 at paragraph 4.

[60] New York University, "Application Requirements," Tisch School of the Arts, at https://web.archive.org/web/20190904195352/https://tisch.nyu.edu/dance/application-requirements. See also https://web.archive.org/web/20181024103151/https://tisch.nyu.edu/dance/application-requirements; https://web.archive.org/web/20171023132618/https://tisch.nyu.edu/dance/application-requirements.

[61] New York University, "Portfolio Requirements," Tisch School of the Arts, at https://web.archive.org/web/20190904145411/https://tisch.nyu.edu/dramatic-writing/ugddwportfolio; https://web.archive.org/web/20190604153854/https://tisch.nyu.edu/dramatic-writing/ugddwportfolio.

CONTAINS CONFIDENTIAL INFORMATION

### D. Mr. Gaskin and Mr. Weir Do Not Propose Any Method for Assessing Market Values

50) Mr. Gaskin states that he has described a survey method which will estimate "the market value of online classes and no access to New York University's campus or facilities, at the time and point of acceptance."[62]

51) Mr. Weir proposes that he will rely on these results. Mr. Gaskin and Mr. Weir assume that there is one market value for all putative class members and that a survey can calculate a market value in this case. Neither assumption is correct.

#### 1. NYU Students Do Not Pay a Single "Market Price"

52) Mr. Gaskin refers to "the" market value for a proposed class consisting of all undergraduate students and Mr. Weir lists a single variable for "$Tuition" in his proposed calculation of damages. But there is no single "University" tuition. This fact alone renders their proposed methodology incapable of calculating classwide damages.

53) Mr. Gaskin and Mr. Weir incorrectly assume that there is a common market price for tuition across undergraduate students at NYU because they fail to consider three reasons, that: (1) full-time tuition amounts differ between the different schools and colleges at NYU; (2) the tuition amount per credit varies within and across the different schools and colleges; and (3) students often do not pay listed tuition – and the amount they pay differs across students (as do their grant and scholarship opportunities).

54) First, Mr. Gaskin and Mr. Weir are incorrect to assume that the tuition price is constant across NYU's 10 undergraduate schools and colleges (or within those schools and colleges based on the number of credits taken). NYU has *listed* tuition amounts that differ across putative class members. The listed tuition amounts are dependent on and vary according to the school/college the student attends at NYU and the number of credits they take.

55) As shown in Table 3 below, listed tuition in Spring 2020 varied between the undergraduate schools and colleges within NYU. Four different schools, including two

---

[62] Gaskin Declaration at paragraph 12.

**CONTAINS CONFIDENTIAL INFORMATION**

distinct programs within the School of Professional Studies, had listed tuition amounts that differed from those of the College of Arts and Science (including the Tisch School of the Arts in which Plaintiff was enrolled).  For example, listed tuition (before grants or financial aid) for a student enrolled in 16 credit hours in the Undergraduate College of Arts and Science was $25,342.[63]  In comparison, listed tuition at the Tisch School of the Arts (before grants or financial aid) was $27,964.[64]

56) Second, the price per credit even within a college or school at NYU differed according to the amount of credits taken.[65]  This is shown in Table 3 below, which compares the tuition by number of credits for the College of Arts and Science as compared to the Tisch School of the Arts, the Leonard N. Stern School of Business, the Tandon School of Engineering, the School of Professional Studies (Division of Applied Undergraduate Studies), and the School of Professional Studies – Associate's programs.  The level of tuition often differs for the same number of credits (every red highlighted entry shows a different listed tuition as compared to the College of Arts and Science).  For example, at 10 credits, each of the 6 listed schools and programs has a different tuition amount not only from the College of Arts and Science but from each other.

57) In addition, the change in total tuition resulting from an increase in credits differs across the schools.  For example, a student in the College of Arts and Science would not face any increase in listed tuition by increasing from 12 to 18 credits.  On the other hand, the listed tuition at the School of Professional Studies (Division of Applied Undergraduate Studies) increased from $14,922 to $23,880 with the same increase in credits.

---

[63] NYU_Hall-Landers_00009374. The NYU Stern School of Business identifies that the average student takes 16 credits per semester. Similarly, the Tandon School of Engineering recommends four courses, or approximately 16 credits, per semester. New York University, "Learning Expectations," at https://www.stern.nyu.edu/portal-partners/current-students/undergraduate/global/international-business-exchange-program/incoming-exchange-students/academics; New York University, "Frequently Asked Questions," at https://engineering.nyu.edu/academics/undergraduate/academic-advisement/frequently-asked-questions.
[64] NYU_Hall-Landers_00009374.
[65] NYU_Hall-Landers_00009374.

**CONTAINS CONFIDENTIAL INFORMATION**

### Table 3: Tuition Amounts Per Credit Compared to the College of Arts and Science Spring 2020

| Credits | College of Arts and Science | Tisch School of the Arts | Leonard N. Stern School of Business | Tandon School of Engineering | School of Professional Studies - Division of Applied Undergraduate Studies | School of Professional Studies - Associate's Programs |
|---|---|---|---|---|---|---|
| 1 | $1,493 | $1,749 | $1,508 | $1,587 | $1,493 | $510 |
| 2 | $2,986 | $3,498 | $3,016 | $3,174 | $2,986 | $1,020 |
| 3 | $4,479 | $5,247 | $4,524 | $4,761 | $4,479 | $1,530 |
| 4 | $5,972 | $6,996 | $6,032 | $6,348 | $5,972 | $2,040 |
| 5 | $7,465 | $8,745 | $7,540 | $7,935 | $7,465 | $2,550 |
| 6 | $8,958 | $10,494 | $9,048 | $9,522 | $11,936 | $3,060 |
| 7 | $10,451 | $12,243 | $10,556 | $11,109 | $11,936 | $3,570 |
| 8 | $11,944 | $13,992 | $12,064 | $12,696 | $11,936 | $4,080 |
| 9 | $13,437 | $15,741 | $13,572 | $14,283 | $11,936 | $4,590 |
| 10 | $14,930 | $17,490 | $15,080 | $15,870 | $11,936 | $5,100 |
| 11 | $16,423 | $19,239 | $16,588 | $17,457 | $13,429 | $5,610 |
| 12 | $25,342 | $27,964 | $25,641 | $25,342 | $14,922 | $6,120 |
| 13 | $25,342 | $27,964 | $25,641 | $25,342 | $16,415 | $6,630 |
| 14 | $25,342 | $27,964 | $25,641 | $25,342 | $17,908 | $7,140 |
| 15 | $25,342 | $27,964 | $25,641 | $25,342 | $19,401 | $7,650 |
| 16 | $25,342 | $27,964 | $25,641 | $25,342 | $20,894 | $8,160 |
| 17 | $25,342 | $27,964 | $25,641 | $25,342 | $22,387 | $8,670 |
| 18 | $25,342 | $27,964 | $25,641 | $25,342 | $23,880 | $9,180 |
| 19 | $26,835 | $29,713 | $27,149 | $26,929 | $25,373 | $9,690 |
| 20 | $28,328 | $31,462 | $28,657 | $28,516 | $26,866 | $10,200 |

*Source: NYU_Hall-Landers_00009374.*

58) Mr. Gaskin and Mr. Weir do not offer any way to account for these clear differences in price by school/college and credit hours.

59) Third, Mr. Gaskin and Mr. Weir also apparently assume that tuition is not discounted or offset. But this is incorrect. A large number of undergraduate students do not pay the listed tuition amount but pay less (and sometimes far less) than this amount because they receive scholarships and grants. A summary of tuition charges and payments for Spring 2020 is provided in Table 4 below.

**CONTAINS CONFIDENTIAL INFORMATION**

**Table 4: Summary of NYU Tuition for Spring 2020**

| Category | Amount ($) | % of Tuition |
|---|---|---|
| Tuition | $803,684,557 | 100% |
| Payments Applied | $485,249,652 | 60% |
| **NYU Institutional Aid Applied** | **$162,289,263** | **20%** |
| **Tuition Remission** | **$11,748,677** | **1%** |
| **PELL Applied** | **$6,697,862** | **1%** |
| **Federal Loans Applied** | **$121,453,376** | **15%** |
| **TAP** | **$3,803,937** | **0.5%** |
| Unpaid Balance as of 04/30/2024 | $12,441,790 | 2% |

*Source: NYU_Hall-Landers_00009372; Deposition of Anthony Bonano, May 13, 2024, pages 68-86.*

60) The majority of undergraduate students received some grant or scholarship funding.[66]  In aggregate, students received financial aid directly from NYU comprising 20% of all tuition charges in Spring 2020.

61) Students also received financial aid in the form of Pell grants and New York State Tuition Assistance Program (TAP) payments.[67]  Some students pay discounted tuition in the form of tuition remission because, for example, they or a family member are employed at NYU.[68]

62) Scholarship opportunities also differ within the schools at NYU.  Some schools offer scholarship opportunities not available at other schools.  For example, the Teacher Education Assistance for College and Higher Education (TEACH) Grant "provides grants of up to $3,965 per year to students who intend to teach in a public or private elementary or secondary school that serves students from low-income families" and is only available to certain students in the Steinhardt School of Culture, Education, and Human Development.[69]  As another example, the Shimkin Scholarship provides tuition assistance

---

[66] Integrated Postsecondary Education Data System, "New York University, available at https://nces.ed.gov/ipeds/reported-data/193900?year=2020&surveyNumber=7 (identifying that 59% of all undergraduate students were awarded grant or scholarship aid).
[67] NYU_Hall-Landers_00009372; Deposition of Anthony Bonano, May 13, 2024, pages 68-86.
[68] Deposition of Anthony Bonano dated May 13, 2024 at pages 74-76.
[69] New York University, "A Guide to Your Financial Aid Package," available at https://web.archive.org/web/20190616083139/http://www.nyu.edu/admissions/financial-aid-and-scholarships/financial-aid-guide.html.

**CONTAINS CONFIDENTIAL INFORMATION**

to newly admitted students within the School of Professional Studies Division of Applied Undergraduate Study program.[70]

63) The amount of scholarship financial aid students receive from NYU depends on the listed tuition amounts charged by NYU.[71]  Scholarships can be based on financial need which is calculated as the cost of attending NYU minus a student's Expected Family Contribution.[72]  Mr. Gaskin and Mr. Weir contemplate a "but-for" scenario in which the listed tuition amount at NYU was reduced (although they do not consider that there are different listed tuition amounts or the importance of discounted tuition).  If the listed tuition amount was reduced for a student, the "financial need" for that student would be correspondingly reduced and their ability to obtain some scholarships could be reduced or eliminated.

64) As an example, assume a student's financial need was $5,000 and they received a scholarship equal to this amount based on this financial need.  Suppose that Mr. Gaskin and Mr. Weir propose that in the "but-for" scenario listed tuition should have been reduced by $5,000 for remote education at NYU.  This reduction would reduce this hypothetical student's financial need to zero and their scholarship could be reduced to zero.  In short, they would be no better off with a lower listed tuition amount (it would reduce their financial aid dollar for dollar) and their damages would be zero.  Mr. Gaskin and Mr. Weir do not consider grants and scholarships but this is a deficiency that would render any calculations they make inaccurate for many putative class members.

---

[70] New York University, "Shimkin Scholarship," available at
https://web.archive.org/web/20200314082221/https:/www.sps.nyu.edu/homepage/admissions/undergraduate-financial-aid/shimkin-scholarship.html. See also
https://web.archive.org/web/20181111134920/http://sps.nyu.edu/content/scps/admissions/undergraduate/mcghee/apply/financing-your-education/financial-aid-options.html.
[71] NYU described that its scholarships for the 2019-2020 academic year, "are awarded on a competitive basis and may reflect academic excellence as well as demonstrated financial need," and that "[t]he level of scholarship assistance depends on… the amount of financial need." A students' financial need is calculated as the cost of attending NYU minus a student's Expected Family Contribution, and the cost of attending NYU includes tuition costs and other expenses. New York University, "A Guide to Your Financial Aid Package," at
https://web.archive.org/web/20190616083139/http://www.nyu.edu/admissions/financial-aid-and-scholarships/financial-aid-guide.html.
[72] New York University, "A Guide to Your Financial Aid Package," at
https://web.archive.org/web/20190616083139/http://www.nyu.edu/admissions/financial-aid-and-scholarships/financial-aid-guide.html.

CONTAINS CONFIDENTIAL INFORMATION

## 2.    A Conjoint Survey Could Not Determine a Market Price

65) Even assuming, counterfactually, that there was only one market price for NYU students, Mr. Gaskin's proposed conjoint survey would still be unable to determine this market price with "online classes and no access to the University's campus or facilities" because Mr. Gaskin fails to incorporate any economically sound analysis of supply for the at-issue services.

66) Mr. Gaskin defers to Mr. Weir to support his opinion that his proposed methodology "accounts for appropriate supply side factors."[73]  However, neither Mr. Gaskin nor Mr. Weir offer any support grounded in economic theory or research that supports their claim that their proposed conjoint survey appropriately accounts for the supply side of the market.

67) To the contrary, peer-reviewed research and the views expressed by leading academics establish that the methodology proposed by Mr. Gaskin ignores supply and, therefore, cannot provide an economically supported estimate of market prices.

### a)    Supply for NYU Educational Services

68) Market prices are determined through the interaction between demand and supply factors.[74]  An analysis of market prices must therefore analyze both consumer demand and producer supply.

69) Consumer demand for goods or services reflects the decision-making process of consumers.  As discussed above, Mr. Gaskin and Mr. Weir overlook fundamental differences between students that determine demand.  Producer supply of goods or services reflects the decision-making process of producers.

70) In the current matter, an economically sound analysis of producer supply would consider how NYU sets its listed tuition prices and the amount of financial aid it provides across the different schools and colleges within NYU and across students.

---

[73] Gaskin Declaration at paragraph 26.
[74] Mankiw, N. Gregory, "Principles of Microeconomics," Cengage Learning, 7th Edition, 2013, Ch. 4.

**CONTAINS CONFIDENTIAL INFORMATION**

71) In traditional economic markets, profit-maximizing firms set prices at a level expected to maximize their profitability based on their costs and demand conditions. This is often not the case in the college "market."[75]

72) Colleges often charge students a tuition price set below the cost of providing them their education – with the balance of the cost paid for by donations and grants received by those colleges and by investments.[76] NYU is a non-profit entity that follows this approach.[77]

73) NYU has estimated that tuition only accounts for 58% of the budgeted cost for undergraduate and graduate students with the rest coming from sources including the NYU endowment, sponsored research, and income from real estate.[78]

74) In addition, colleges and universities often set tuition prices to meet particular goals (other than maximizing profits). As a non-profit entity, NYU describes its mission not in terms of profitability but "to be a top quality international center of scholarship, teaching and research."[79] In this case, NYU created an "affordability initiative" for assessing tuition starting in fiscal year 2016.[80] According to NYU, the compound annual growth rate of NYU's tuition under this initiative has been 2.7% since 2016 and "below its peer average."[81]

75) A reliable calculation of "market price" in this case would need to consider how NYU sets its prices for each of its undergraduate schools and colleges (and the scholarship

---

[75] See, e.g., "Subsidies, Hierarchy and Peers: The Awkward Economics of Higher Education," Gordon C. Winston, Journal of Economic Perspectives, Winter, 1999.

[76] See, e.g., "Trends in College Pricing 2019," College Board, November 2019 at page 27.

[77] Integrated Postsecondary Education Data System, "New York University," at https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=1.

[78] New York University, "Major Categories of Revenue," at https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-revenue.html; New York University, "Major Categories of Expense," at https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-expense.html.

[79] New York University, "Code of Ethical Conduct," at https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/code-of-ethical-conduct.html. New York University, "NYU Mission Statement," at https://www.nyu.edu/about.html.

[80] New York University, "Major Categories of Revenue," at https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-revenue.html.

[81] New York University, "Major Categories of Revenue," at https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-revenue.html.

CONTAINS CONFIDENTIAL INFORMATION

amounts NYU attributes to its students) – when pricing was done in a pandemic (in competition with other universities that also provided remote-only classes); when tuition payments do not cover the full cost of education; when NYU may have incurred increased costs during the pandemic;[82] when many students do not actually pay the listed tuition price;[83] and in which the number of students "willing to pay" for an NYU education far exceeds the number of student slots available at the University.[84]  Mr. Gaskin's proposed survey would not incorporate any of these factors.

### b)  Mr. Weir's Purported Analysis of Supply

76) Mr. Weir claims that he "considered supply-side factors in [his] determination of the framework damages [sic]."[85]  Mr. Weir states that "[o]ne of the most important and most frequent topics of discussion between Mr. Gaskin and [himself] was the data on actual tuition set in the real-world marketplace," and that "[t]hese real-world transactions occurred at prices that *already* reflect the supply-side factors then extant in the marketplace."[86]  But, as discussed above, Mr. Gaskin and Mr. Weir do not consider actual tuition data for NYU's schools and colleges.  Actual market prices exist and do not show a difference between the market price for in-person and remote course offerings for undergraduates at NYU.

77) Mr. Gaskin's proposed survey simply does not account for how NYU actually sets listed tuition prices for any of its undergraduate schools or the scholarships it offers.  Mr. Gaskin proposes collecting survey data from individuals who "personally applied to New

---

[82] NYU_Hall-Landers_00000946-953 at 946.
[83] NYU_Hall-Landers_00009372.
[84] For example, in the Fall of 2019, the overall acceptance rate in undergraduate programs at NYU (averaging over all schools and colleges) was approximately 16%.  See IPEDS data, National Center for Education Statistics (79,462 applicants and 12,873 admissions):  https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=12.
[85] Weir Declaration at paragraph 32.
[86] Weir Declaration at paragraph 37.  I note that, despite the importance Mr. Weir places on using "actual tuition set in the real-world marketplace" as a means of accounting for supply factors (an opinion reflecting flawed and erroneous economic logic, and one that Mr. Weir does not substantiate with any economic theory or research), none of the tuition figures Mr. Gaskin proposes to use in his conjoint survey correspond to NYU's tuition prices for any of its undergraduate schools and colleges for Spring 2020, for any number of credit hours.  Gaskin Declaration at paragraph 46; NYU_Hall-Landers_00009374.

**CONTAINS CONFIDENTIAL INFORMATION**

York University or one of its competitors for 4-year undergraduate education in the past 20 years."[87]  The results of this survey would provide the sole source of his data.

78) Mr. Weir's assertion that the simple inclusion of NYU's actual tuition prices in the Spring of 2020 into Mr. Gaskin's proposed survey questions could somehow "already" account for all supply conditions cannot be true.[88]  In assessing a price premium, the appropriate economic question involves determining what prices would have existed "but-for" alleged wrongful conduct.  The actual prices with the existence of the alleged wrongful conduct can't answer this question about "but-for" prices.  The question is if the demand for education at NYU had changed in the "but-for" scenario, what supply response would NYU have had and what tuition prices would have resulted?  Answering this question requires understanding how NYU sets prices (which is not included anywhere in the survey Mr. Gaskin and Mr. Weir propose).

79) Mr. Gaskin's proposed data (survey results alone), even assuming it was correctly assembled, would not include *any* information on actual supply-side factors on how NYU sets it tuition prices and scholarships – no data on NYU's costs; no data on how competing universities set tuition prices; no data on how changes in NYU costs have resulted in tuition changes in the past; no data on NYU's tuition setting strategy including its affordability initiative.  Although Mr. Gaskin and Mr. Weir assert that their proposed conjoint survey would somehow incorporate supply, the fact is that their proposed survey does not actually incorporate supply factors and, therefore, cannot possibly adjust for supply conditions.

80) Mr. Gaskin and Mr. Weir propose using a conjoint survey by itself to determine "but-for" prices in this case.  Neither Mr. Gaskin nor Mr. Weir provide even a single citation to any academic literature in any discipline that substantiates their claim that their proposed conjoint methodology, by itself, accounts for supply factors.  There is a reason for this – because a conjoint methodology, by itself, does not account for supply factors.

---

[87] Gaskin Declaration at paragraph 38.
[88] Weir Declaration at paragraph 37.

**CONTAINS CONFIDENTIAL INFORMATION**

81) This is not a "battle of the experts;" rather Mr. Gaskin and Mr. Weir's opinion is contrary to established economic theory and research. In other words, it is a disagreement between their opinion, on the one hand, and established economic science, on the other.

82) Numerous highly established Professors and Ph.D.'s in economics and business have explained that conjoint survey analysis alone (like that proposed by Mr. Gaskin and Mr. Weir), at best, provides demand-based measures that do not incorporate the supply side of the market. This literature includes peer-reviewed research. And I am not aware of any articles to the contrary.

83) Table 5 below lists articles published by thirteen Ph.D.'s in economics and business including six University Professors (such as those at Berkeley, UCLA, and Ohio State University).[89] This includes a Nobel Prize Winner (Professor McFadden) and Professor Greg Allenby whom the Sawtooth Software that Mr. Gaskin proposes to use describes as "widely considered the foremost academic in the application of Bayesian utility estimation for choice modeling problems," and a "legend" in choice research. [90]

84) As explained in a 2022 article, Nobel prize winning economist Professor Daniel McFadden and his two co-authors (both PhD economists) explain that the "supply side considerations" listed by Mr. Weir – including that (1) supply is "fixed as a matter of

---

[89] See https://fisher.osu.edu/people/allenby.1; https://eccles.utah.edu/team/jeff-brazell/;
https://marriott.byu.edu/directory/details?id=62191;https://marriott.byu.edu/directory/details/vita;
https://www.anderson.ucla.edu/faculty-and-research/marketing/faculty/rossi; http://ninohardt.de/cv/cvhardt.pdf;
https://skimgroup.com/about/people/nino-hardt/; https://www.brattle.com/experts/lisa-j-cameron/;
https://www.econ.berkeley.edu/profile/daniel-l-mcfadden; https://eml.berkeley.edu//~mcfadden/dlmcv10.html;
https://www.brattle.com/experts/pablo-robles/; https://www.linkedin.com/in/samid-hussain-98226b/;
https://www.linkedin.com/in/vildan-altuglu-6b45aa57/; https://www.linkedin.com/in/matteo-li-bergolis-2b56b257/;
https://www.anderson.ucla.edu/faculty-and-research/marketing/faculty/zeithammer.
[90] Gaskin Declaration at paragraph 17. Sawtooth Software describes that "[t]he first application of [hierarchical Bayesian estimation] for estimating part-worth utilities for conjoint models happened in 1994 with the pioneering work of Greg Allenby," and that "Sawtooth Software (with the generous help of Greg Allenby) was largely responsible for the proliferation of [hierarchical Bayesian estimation] estimation for choice models in the industry." Orme, Bryan K. and Keith Chrzan, "Becoming an Expert in Conjoint Analysis," Sawtooth Software, 2nd Edition, 2021, pp. 152-153, 223, 309.

**CONTAINS CONFIDENTIAL INFORMATION**

history,"[91] and (2) the proposed conjoint survey would use actual market prices[92] – reflect a "flawed application of economics" that fail to account for the supply side of the market in a manner consistent with fundamental economic principles.[93]

85) Similarly, Professor Allenby and co-authors Professor Rossi and Ph.D. economist Nino Hardt explain in their 2019 article that: "[i]t should be emphasized that conjoint analysis can only estimate demand. Conjoint survey data, alone, cannot be used to compute market equilibrium outcomes such as market prices…"[94]

---

[91] Cameron, Lisa, Daniel McFadden, and Pablo Robles, "Price Premium Damages in Product Market Litigation: Issues in Survey-Based Market Simulations," International Comparative Legal Guides, Product Liability 2022, 20th Edition, 2022, p. 27 ("a number of Plaintiffs' experts have incorrectly claimed that they can calculate this but-for world price using either demand-side information alone, or by combining demand-side information with the assumption that the supply side of the market is fixed as a matter of history. In some cases, courts have accepted this flawed application of economics, rendering decisions that are inconsistent with sound economic analysis.").

[92] Cameron, Lisa, Daniel McFadden, and Pablo Robles, "Price Premium Damages in Product Market Litigation: Issues in Survey-Based Market Simulations," International Comparative Legal Guides, Product Liability 2022, 20th Edition, 2022, endnote 15 ("other decisions have incorrectly found that conjoint analyses can adequately account for supply-side factors 'when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities sold during the class period'… the inclusion of actual market prices in the CBC survey does not somehow transform an analysis that can (at best) measure demand into one that can also capture supply (i.e., the behaviour of willing sellers).").

[93] Cameron, Lisa, Daniel McFadden, and Pablo Robles, "Price Premium Damages in Product Market Litigation: Issues in Survey-Based Market Simulations," International Comparative Legal Guides, Product Liability 2022, 20th Edition, 2022, p. 27.

[94] Allenby, Greg M., Nino Hardt, and Peter E. Rossi. "Economic foundations of conjoint analysis." *Handbook of the Economics of Marketing*. Vol. 1. North-Holland, 2019. 151-192 at p. 153.

CONTAINS CONFIDENTIAL INFORMATION

**Table 5: Articles Explaining that Conjoint Analysis Does Not Account for Supply**

| Authors | Education | Affiliation | Article | Quote |
|---|---|---|---|---|
| Greg M. Allenby | Ph.D. in Statistics and Marketing | Helen C. Kurtz Chair in Marketing, Professor of Marketing, and Professor of Statistics, Ohio State University | | |
| Jeff Brazell | Ph.D. in Marketing Science | Professor (Lecturer) of Marketing and Director of the Center for Strategic Analytics, University of Utah | "Valuation of Patented Product Features," Journal of Law and Economics, 2014. | "…a conjoint survey, in and of itself, is not adequate to form the basis for equilibrium firm profit calculations." |
| John R. Howell | Ph.D. in Marketing | Assistant Professor of Marketing, Brigham Young University | | |
| Peter E. Rossi | Ph.D. in Econometrics | James A. Collins Chair in Management, Distinguished Professor of Marketing, Economics and Statistics, University of California, Los Angeles | | |
| Greg M. Allenby | Ph.D. in Statistics and Marketing | Helen C. Kurtz Chair in Marketing, Professor of Marketing, and Professor of Statistics, Ohio State University | | "It should be emphasized that conjoint analysis can only estimate demand. Conjoint survey data, alone, cannot be used to compute market equilibrium outcomes such as market prices or equilibrium product positioning in characteristics space." |
| Nino Hardt | Ph.D. in Economics and Business Administration | Senior Director of Methodology and Analytics at SKIM | "Economic foundations of conjoint analysis." *Handbook of the Economics of Marketing*. Vol. 1. North-Holland, 2019. | |
| Peter E. Rossi | Ph.D. in Econometrics | James A. Collins Chair in Management, Distinguished Professor of Marketing, Economics and Statistics, University of California, Los Angeles | | |
| Lisa Cameron | Ph.D. in Economics | Practice Leader in Consumer Protection & Product Liability at The Brattle Group | "Price Premium Damages in Product Market Litigation: Issues in Survey-Based Market Simulations," International Comparative Legal Guides, Product Liability 2022, 20th Edition, 2022 | "…experts have generated unreliable damages analyses based on either (i) conjoint analysis alone; or (ii) conjoint analysis in combination with unsupported and economically unrealistic assumptions about the supply side of the market…In some cases, courts have accepted this flawed application of economics, rendering decisions that are inconsistent with sound economic analysis." |
| Daniel McFadden | Ph.D. in Economics | Nobel Laureate, E. Morris Cox Professor Emeritus of Economics at the University of California, Berkeley | | |
| Pablo Robles | Ph.D. in Economics | Senior Associate at The Brattle Group | | |
| Samid Hussain | Ph.D in Economics | Senior Vice President at Cornerstone Research | "An Assessment of Analytical Tools in Product Liability Matters - Perspectives from Economics, Marketing, and Consumer Behavior," The National Law Review, April 30, 2020 | "Conjoint does not model the supply side of the market and, at best, can generate willingness to pay, not market price estimates." |
| Vildan Altuglu | Ph.D. in Marketing | Vice President at Cornerstone Research | | |
| Matteo Li Bergolis | Ph.D. in Economics | Principal at Cornerstone Research | | |
| Jonathan Tomlin | Ph.D. in Economics | Senior Managing Director at Ankura Consulting Group | "Product Labeling Class Actions – Identifying the 'Con' in Conjoint Surveys," Bloomberg Law, November 1, 2018 | "Since conjoint survey results only measure demand and do not account for the supply-side, their results cannot, standing in isolation, measure a price premium." |
| Robert Zeithammer | Ph.D. in Management Science | Professor of Marketing at the University of California, Los Angeles | | |

CONTAINS CONFIDENTIAL INFORMATION

### E.  Mr. Gaskin's Proposed Method Doesn't Comport with Plaintiff's Allegations

#### 1.    Mr. Gaskin Uses the Wrong "But-For" Scenario

86) The standard approach to quantifying economic damages involves appropriately defining the hypothetical "but-for" scenario where the alleged conduct did not occur.[95]  Damages are measured by the difference in economic value between the actual and but-for world.[96] In the current matter, alleged economic damages for each putative class member would be measured according to the difference between the market prices for NYU undergraduate education in the actual and "but-for" world, where the but-for world differs from the actual world only with respect to the absence of the conduct alleged in this matter.[97]  Given that the Covid-19 pandemic occurred, and would also occur in any but-for world (as the pandemic is not alleged to have been caused by NYU's conduct), failure to incorporate the impact of the COVID-19 pandemic in the analysis, as Mr. Weir and Mr. Gaskin propose, leads to the wrong "but-for" scenario.

87) Mr. Gaskin proposes instructing his survey respondents not to factor the COVID-19 pandemic into their survey responses.  Specifically, Mr. Gaskin would instruct survey respondents to assume "[y]ou are making your university choices prior to the COVID-19 pandemic, so it should not be a factor in your decisions" and lists out choices of NYU and four comparator schools (Boston University, Columbia University, Cornell University, and Northeastern University) with the comparator schools often being listed as having in-person education.[98]

88) None of the comparator universities used by Mr. Gaskin actually offered in-person education throughout the Spring of 2020.[99]  Thus, Mr. Gaskin's survey wouldn't present

[95] Allen, Mark A., Robert E. Hall, and Victoria A. Lazear, "Reference Guide on Estimation of Economic Damages," Reference Manual on Scientific Evidence, 3rd Edition, 2011, p. 429.
[96] Allen, Mark A., Robert E. Hall, and Victoria A. Lazear, "Reference Guide on Estimation of Economic Damages," Reference Manual on Scientific Evidence, 3rd Edition, 2011, p. 429.
[97] Allen, Mark A., Robert E. Hall, and Victoria A. Lazear, "Reference Guide on Estimation of Economic Damages," Reference Manual on Scientific Evidence, 3rd Edition, 2011, p. 432 ("…the but-for scenario differs from what actually happened only with respect to the harmful act…").
[98] Gaskin Declaration at paragraph 24.
[99] Cornell University, "Cornell announces proactive measures to prevent spread of coronavirus," at https://statements.cornell.edu/2020/20200310-coronavirus-update.cfm; Armini, Michael and Kenneth W. Henderson, "The Latest COVID-19 Updates," Northeastern Global News, March 12, 2020, at

**CONTAINS CONFIDENTIAL INFORMATION**

the actual options available to students that determined demand for NYU education in Spring 2020 and would create an incorrect but-for scenario.

89) As a matter of economics, this means even assuming, *arguendo*, that his survey did capture the consumer demand of his survey respondents, it wouldn't measure the demand applicable to assessing market prices at NYU during the Spring of 2020. Contrary to Mr. Gaskin's assumption, there was no market for in-person education at his comparator schools for the Spring semester of 2020.

### 2. Mr. Gaskin Doesn't Propose Surveying NYU Students or the Choices They Would Have Faced

90) Mr. Gaskin proposes surveying individuals who "personally applied to New York University or one of its competitors for 4-year undergraduate education in the past 20 years."[100]  For his survey, he proposes comparator schools of Boston University, Columbia University, Cornell University, and Northeastern University along with a choice of New York University.[101]  He proposes measuring a "difference in market value" at the "time and point of acceptance."[102]

91) First, Mr. Gaskin proposes surveying individuals who "personally applied" to NYU or "one its competitors."  He does not propose surveying individuals who were accepted into one of the undergraduate programs at NYU.  In the Fall of 2019, the overall acceptance rate in undergraduate programs at NYU (averaging over all schools and colleges) was approximately 16%.[103]  Thus, the majority of the individuals who applied to NYU (and the majority of the sample Mr. Gaskin proposes for his survey) did not actually have NYU as an option.  Yet, Mr. Gaskin proposes telling these individuals to assume "you have applied and been accepted."[104]  Moreover, even if some of these

---

https://news.northeastern.edu/coronavirus/university-messages/the-latest-covid-19-updates/; Bollinger, Lee C., "Update on COVID-19 and Spring Term Plans," Columbia University, March 12, 2020, at https://president.columbia.edu/news/update-covid-19-and-spring-term-plans; BU Today, "Did You Miss something? Big Decisions BU Has Made about the Coronavirus Crisis So Far," March 31, 2020, at https://www.bu.edu/articles/2020/big-decisions-bu-coronavirus-crisis/.
[100] Gaskin Declaration at paragraph 43.
[101] Gaskin Declaration at paragraph 46.
[102] Gaskin Declaration at paragraph 12.
[103] See IPEDS data, National Center for Education Statistics (79,462 applicants and 12,873 admissions): https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=12.
[104] Gaskin Declaration at footnote 25.

**CONTAINS CONFIDENTIAL INFORMATION**

individuals had an opportunity to attend NYU, it is at least questionable that they would be representative of students in 2020 (who could be very different from students from twenty years ago).

92) Mr. Gaskin is proposing to measure the demand for NYU services by surveying individuals who were not part of the demand for NYU services (and did not even have a choice to attend NYU and pay any tuition amount). Thus, as a matter of economics, his survey results wouldn't be capturing the demand applicable to assessing market prices (when considered in conjunction with supply conditions) at NYU.

93) Second, Mr. Gaskin states that he will choose prices for his analysis that "mirror those actually observed in the market" and lists prices for his proposed survey of $25,000, $26,250, $27,500, $28,750, and $30,000.[105] However, those listed prices overlook that prices at NYU depend on the number of credits taken and his listed prices do not match the tuition prices actually charged by NYU. Table 3 above lists 120 different combinations of credits and tuition amounts by NYU school/college that a student could have been charged (before scholarships or financial aid). None of Mr. Gaskin's proposed tuition amounts match any of these actual tuition amounts at NYU for the Spring of 2020.

94) Third, as addressed previously, Mr. Gaskin seems to believe that "New York University" is one monolithic school which has the same student body, tuition prices, programs, and application procedures throughout. This is incorrect. The choice sets among those choosing NYU (and forming part of the demand) differ across schools and colleges within NYU (as is also likely the case for Mr. Gaskin's comparator schools) for each student.

95) An important example of the failing of Mr. Gaskin's methodology to consider differences between students across the undergraduate colleges and schools at NYU is provided by Plaintiff, who attended the Tisch School of the Arts as a dance major.[106] The Tisch

---

[105] Gaskin Declaration at paragraphs 30 and 46.
[106] Complaint at paragraph 16.

CONTAINS CONFIDENTIAL INFORMATION

School of the Arts offers a prestigious dance program; has its own application requirements; and has its own tuition amounts.[107]

96) Plaintiff in this case testified that they applied to the Tisch School of the Arts because it was on a list of schools with "high level dance programs."[108]  Plaintiff also testified that they applied to Boston Conservatory, Cal Arts, and University of the Arts which also had dance programs.[109]  Martin Dorph, Executive Vice Present at NYU testified that NYU's Tisch School of the Arts compares itself with colleges of performing arts.[110]

97) Mr. Gaskin proposes a survey which includes four comparator schools to measure market demand for Plaintiff.  None of these schools are on the list used by Plaintiff or mentioned by Mr. Dorph.  Three of Mr. Gaskin's four comparator schools do not even offer a dance major.[111]  Thus, these were not even choices considered by Plaintiff and it is not reasonable to expect that using them could result in a reliable estimate of the demand for Plaintiff.

**F. Neither Mr. Weir Nor Mr. Gaskin Describe a Method for Identifying Payers or Prorating Tuition**

98) Mr. Weir does not explain if (and, if so, how) he would address identifying the payer to NYU (student, parent, grandparent, employer, or other).

99) I understand from NYU's University Bursar Anthony Bonano that "NYU's account statements do not specify whether the student versus a parent or other third party paid,"

---

[107] New York University, "Application Requirements," Tisch School of the Arts, at https://web.archive.org/web/20190904195352/https://tisch.nyu.edu/dance/application-requirements. See also https://web.archive.org/web/20181024103151/https://tisch.nyu.edu/dance/application-requirements; https://web.archive.org/web/20171023132618/https://tisch.nyu.edu/dance/application-requirements. NYU_Hall-Landers_00009374.
[108] Deposition of Casey Hall-Landers dated April 12, 2024 at page 35.
[109] Deposition of Casey Hall-Landers dated April 12, 2024 at page 54.
[110] Deposition of Martin Dorph dated May 21, 2024 at page 27.
[111] Boston University's degree programs webpage lists a dance minor but no bachelor's degree program in dance. Boston University, "Degree Programs," at https://web.archive.org/web/20200123133514/https://www.bu.edu/academics/degree-programs/. Cornell's fields of study web page lists a dance minor but no undergraduate major program in dance. Cornell University, "Fields of Study," at https://web.archive.org/web/20200110232115/http://www.cornell.edu/academics/fields.cfm. And Northeastern's academic programs web page doesn't list dance among its list of majors. Northeastern University, "Academic Program," at https://web.archive.org/web/20200126150147/https://undergraduate.northeastern.edu/academic-programs/.

**CONTAINS CONFIDENTIAL INFORMATION**

and that, other than certain circumstances including receipt of certain financial aid or payments from a student's employer through special arrangement, "there is no mechanism other than manual, individualized, student-by-student review of each student's account records within the Bursar's Office systems to determine, how particular financial aid awards were applied, any credits to an account, and whether any records exist that would specify the form of payment including who made that payment" of a putative class member's tuition.[112]

100) Moreover, Mr. Weir states that he will calculate damages by "prorating" tuition for the Spring semester according to "the fraction of the days that students were taking online classes and not having access to the University campus divided by the total days that students would have otherwise had in-person classes and access to the University campus."[113]  However, some undergraduates almost certainly did not have classes on some days; did not live on campus; and would otherwise not have attended campus on some days.  This means that the number of days that a student "would otherwise have had in-person classes" would differ across students and would be an individual issue.  Mr. Weir has not indicated any way of resolving this issue.

## V.    CONCLUSION

101) As explained above, neither Mr. Gaskin nor Mr. Weir examines (or proposes examining) actual tuition pricing at NYU but these prices do not support the existence of a price premium in the Spring of 2020.

102) Mr. Gaskin and Mr. Weir do not describe a method capable of identifying or measuring damages for any putative class member.  Their proposed conjoint survey overlooks fundamental differences between students at the different schools and colleges within NYU; does not consider how tuition prices or scholarships are actually set; would survey individuals who were not actual or prospective NYU students; and assumes there was a market for in-person education through the Spring of 2020 when this did not exist.

---

[112] Declaration of Anthony Bonano dated September 10, 2024 at pages 3-4.
[113] Weir Declaration at paragraph 45.

**CONTAINS CONFIDENTIAL INFORMATION**

Jonathan T. Tomlin, Ph.D.

Exhibit 1

**ankura**
COLLABORATION DRIVES RESULTS

## JONATHAN T. TOMLIN, Ph.D.
Senior Managing Director

## Economist; Expert Witness

555 S. Flower Street, Suite #4220
Los Angeles, CA  90071

+1.213.670.3200 Main
+1.213.670.3221 Direct

jon.tomlin@ankura.com

**EDUCATION**
Ph.D., Economics, University of
California, Los Angeles, 1994

M.A., Economics, University of
California, Los Angeles, 1991

B.A., Economics, University of
Pennsylvania, College of Arts
and Sciences, Philadelphia, PA,
1989

**HONORS AND AWARDS**
Who's Who Legal: Competition
Economists

**AFFILIATIONS**
American Economic Association

National Association of Business
Economists

Licensing Executives Society

American Finance Association

National Association of Certified
Valuation Analysts, Economics
Instructor

B.E. Journal of Economic
Analysis & Policy, Referee

Journal of Forensic Economics,
Referee

Jon Tomlin, Senior Managing Director, has performed economic and statistical analysis of complex damages issues for over twenty-five years. Dr. Tomlin has evaluated economic damages in cases involving class certification, false advertising, antitrust, breach of contract, fraud, and intellectual property.  He has also published numerous articles on the application of economic principles to legal issues and has testified as an expert witness for cases in state and federal court.

Fields of Concentration

- Industrial Organization

- Antitrust Economics

- Intellectual Property

- Corporate Finance

Experience includes:

- Ankura Consulting
  *2018-present*

- Navigant Consulting
  *2010-2018*

- LECG, LLC
  *Principal, 2003-2010*
  *Senior Managing Economist, 1998-2002*

- Capital Economics
  *Economist, 1998*
  Provided economic analysis for projects involving law and economics.

**JONATHAN TOMLIN,** Ph.D.

- Economic Analysis Corporation
  *Senior Economist, 1996-1997*
  Provided economic and statistical analysis for projects involving questions in the areas of industrial organization, antitrust, intellectual property, and corporate finance.

- Micronomics, Inc.
  *Economist, 1994-1996*
  Provided economic and statistical analysis for litigation consulting and regulatory issues.

- University of California, Los Angeles, Department of Economics
  *Teaching Assistant, 1993-1994*
  Taught Intermediate Microeconomics to undergraduates.

  *Research Assistant, 1992-1993*
  Provided research support for economics faculty.

**Books**

- "Hicks-Marshall Conditions and Defining Antitrust Markets for Intermediate Goods," with Georgi Giozov, James Langenfeld, and David Weiskopf, Research in Law and Economics, Chapter 3, Volume 27 (2015).

- "Manufacturing Input Markets," with James Langenfeld, William Nye, and Louis Silvia, Market Definition in Antitrust: Theory and Case Studies, American Bar Association, 2012, Chapter II.

**Peer-Reviewed Research**

- "The Impact of Smoking Bans on the Hospitality Industry: New Evidence from Stock Market Returns," The B.E. Journal of Economic Analysis & Policy: Vol. 9: Iss. 1 (Contributions), Article 13 (2009).

- "Expert Testimony, Daubert, and the Determination of Damages," with David Cooper, Review of Law & Economics: Vol. 4: Iss.1, Article 11 (2008).

- "Junk Forecasts in the Courtroom?: Assessing the 'S' Curve Approach to Calculating Damages," with C. Paul Wazzan, Journal of Forensic Economics, Volume XIX, Number 3, Fall 2006.

- "Distinguishing the Legal from the Illegal in Antitrust Damages Calculations: Lessons from Netscape v. Microsoft," Journal of Forensic Economics, 17 (2), 2004.

- "How Mergers Affect Competitors," Ph.D. dissertation, University of California, Los Angeles, 1994.



**JONATHAN TOMLIN,** Ph.D.

**Law Reviews**

- "The Accuracy and Manipulability of Lost Profits Damages Calculations: Should the Trier of Fact be 'Reasonably Certain'?," with David Merrell, Transactions: The Tennessee Journal of Business Law, Volume 7, Number 2, 2006.

- "Federalism and the Indirect Purchaser Mess," with Dale J. Giali, George Mason Law Review, Volume 11, Number 1, Fall 2002.

**Magazines, Newsletters, and On-Line Publications**

- "The Epic Antitrust Cases and Challenges of Injunctive Relief," with Kelly Nordby, Law360, March 14, 2024

- "Auto Defect Damages Should Factor in Supply Conditions," Law360, October 3, 2023.

- "College Refund Class Actions Face Damages Hurdles," with Hassan Faghani, Law360, July 27, 2020.

- "Durational Disconnect Between Cartel Pleas and Class Certs.," Law360, August 9, 2019.

- "Product Labeling Class Actions – Identifying the 'Con' in Conjoint Surveys," with Robert Zeithammer, Bloomberg Law, November 1, 2018.

- "One Size Doesn't Fit All in Product Labeling Class Actions," Law360, June 15, 2018.

- "Two 'Pass-Through' Hurdles for Indirect Purchaser Plaintiffs," Law360, February 14, 2018.

- "Reliability of 'Price Premium' Calculations in Class Actions," Law360, October 10, 2017.

- "Early Lessons from the DOJ Auto Parts Investigation," with Chris Ring, Law360, July 14, 2017.

- "Class Certification and Economic 'Argle Bargle'," Law360, December 16, 2015.

- "Why Didn't Raids Stop Price-Fixing in the Auto Industry?," Law360, July 21, 2015.

- "Calculating 'Pass-Through' Rates in Price-Fixing Cases – What's in the Economist's Toolbox?," The Meeting Place, Newsletter of the ABA Section of Antitrust Law Joint Conduct Committee, Winter 2014.

- "The Demise of the 25% Rule," with Mohan Rao, Intellectual Asset Management, Issue 47, May/June 2011.

- "Comcast-NBC and the Regulatory Road to Nowhere," TheStreet.com, May 5, 2010.

- "Civil Conspiracy Claims and the Economics of Collusion," with Daniel Ingberman and Christopher Loos, American Bar Association Mass Torts Litigation Committee Newsletter, Summer 2009.



**JONATHAN TOMLIN,** Ph.D.

- "The Economic Impact of Smoking Bans," Forbes.com, June 4, 2009

- "Examining Expert Witness Testimony and Judicial Gatekeeping: Insights from Game Theory," with David Cooper, Mealey's Daubert Report, Volume 13, Issue #1, January 2009.

- "Mars v. Coin Acceptors and the 'Hypothetical Negotiation' Approach to Reasonable Royalty Calculations," IP Remedies, American Bar Association, Intellectual Property Litigation Committee, July 2008.

- "Unprofessional Economic Testimony: Why It is a Problem and How Technical Advisors Can Help," with David Cooper, American Bar Association Section of Antitrust Law Economics Committee Newsletter, Volume 7, Number 2, Fall 2007.

- "Recognizing Damages Manipulation: Tips for Putting Barbed Wire on the Daubert Gate," The Committee on Commercial & Business Litigation Newsletter, American Bar Association, Vol. 8, No. 3, Spring 2007.

- "Infringed Tech: Antitrust Responses in Such Suits Ride on Market Power," Legal Times, April 2000.

- "Big Price Fixing Cases: Will Indirect Purchasers Be Able to Recover Damages?," Perspectives, January 2000.

- "Current Methods of Evaluating Vertical Mergers and the Obsolescence of the 1984 Merger Guidelines," Private Antitrust Litigation News, American Bar Association, Spring 1999.

**Presentations**

- "Price Premium Damages in Class Actions," Strafford Publications webinar, June 2023.

- "Classwide Damage Models in Misleading and False Advertising Consumer Class Actions," Strafford Publications webinar, August 2022.

- "Damages and Restitution Claims in Covid-19 Related Class Actions," California Lawyers Association webinar, April 2021.

- "Classwide Damage Models in Misleading and False Advertising Consumer Class Actions," Strafford Publications webinar, May 2020.

- "Antitrust Economics: Fundamental Concepts Practitioners Need to Know," California Lawyers Association webinar, January 28, 2020.

- "Viewpoints on UCL Trends and Developments," California Lawyers Association Annual Meeting, October 2019.

- "Classwide Damage Models in Misleading and False Advertising Consumer Class Actions," Strafford Publications webinar, May 2019



**JONATHAN TOMLIN,** Ph.D.

- "Damages Models in Food Labeling Class Actions," ABA Section of Litigation, Consumer Litigation Committee, February 2019.

- "The Georgia-Pacific Factors:  Are They Useful?," Utah IP Summit, February 2016.

- "Econometrics or Just a Con?: Uses and Abuses of Data and Statistics in Competition Cases," Los Angeles County Bar Antitrust Section, May 2015.

- "Clayworth v. Pfizer, Inc. Rejected the Pass-on Defense, or Did It?," Los Angeles County Bar Antitrust Section, March 2011.

- "The Comcast/NBC Merger: Frightening Media Consolidation or Good for Consumers?," Los Angeles County Bar Association Antitrust Section, May 2010.

- "Setting the Bounds of Section 2 Liability: Understanding linkLine and its Potential Implications," Los Angeles County Bar Association Antitrust Section, November 2008.

- "Economics at the Intersection of Antitrust and Intellectual Property," Los Angeles County Bar Association Antitrust Section, September 2002.

- "How Federal and State Laws Can Fail to Work Together: The Economics of Indirect Purchaser Laws," George Mason Law Review Antitrust Symposium, May 2002.

**Expert Reports and Testimony**

- Hamid Bolooki, et al. v. Honda Motor Company Limited and American Honda Motor Company Inc. United States District Court, Central District of California.  Expert Report, Deposition Testimony.  2024.

- Buffalo Seafood House, LLC et al. v. Republic Services, Inc., et al., United States District Court, District of South Carolina.  Expert Report, Deposition Testimony.  2024.

- Pacific Surf Designs, Inc. v. Whitewater West Industries, LTD, et al., United States District Court, Southern District of California.  Expert Report, Deposition Testimony, Trial Testimony.  2023.

- Sunshine Children's Learning Center, et al. v. Waste Connections of Florida, Inc., United States District Court, Southern District of Florida.  Expert Report, Deposition Testimony.  2022.

- Vivian Arevalo, et. al. v. USAA Casualty Insurance Company, et al., In the District Court of Bexar County Texas. Expert Report, Deposition Testimony.  2022.

- Jonathan Michel, et al. v. Yale University, United States District Court, District of Connecticut.  Expert Report, Deposition Testimony.  2022.

- Youngsuk Kim, et al. v. Benihana, Inc., United States District Court, Central District of California.  Expert Report, Deposition Testimony.  2021.



**JONATHAN TOMLIN,** Ph.D**.**

- Kress Stores of Puerto Rico, et al. v. Wal-Mart of Puerto Rico, Inc., et al., United States District Court, District of Puerto Rico.  Expert Declaration.  2021.

- Milind Desai, individually and on behalf of all others similarly situated v. Geico Casualty Company, United States District Court, Northern District of Ohio, Eastern Division.  Expert Report, Deposition Testimony.  2021.

- Michael Lavigne, et al. v. Herbalife LTD, et al., United States District Court, Central District of California.  Expert Report, Rebuttal Report, Deposition Testimony.  2021.

- Will Kaupelis and Frank Ortega, individually and behalf of all others similarly situated v. Harbor Freight Tools, USA, Inc., United States District Court, Central District of California.  Expert Declaration, Deposition Testimony. 2020.

- Vivian Deveroux, on behalf of herself and others similarly situated v. Apple, Inc., Superior Court of the State of California, County of Santa Clara.  Deposition Testimony.  2019.

- Megan Schmitt et al. v. Younique, LLC, United States District Court, Central District of California.  Expert Report.  2018.

- Claudine Macaspac, on behalf of herself, all others similarly situated, and the general public v. Henkel Corporation,  United States District Court, Southern District of California.  Expert Report. 2018.

- Paramount Petroleum Corporation v. International Surfacing Systems, VSS International, Inc., and Manhole Adjusting, Inc., Superior Court for the State of California, County of Sacramento.  Deposition Testimony.  2016.

- California Crane School, Inc. et al. v. National Commission for the Certification of Crane Operators, et al., Superior Court for the State of California, County of Tuolumne.  Expert Declaration, Deposition Testimony.  2015.

- Apumac, LLC; Apple in Bulk, Inc. v. Flint Hills International, LLC, et al., United States District Court, Central District of California.  Expert Report.  2015.

- Waterfield Technologies, Inc. v. BofI Federal Bank, United States District Court, Southern District of California.  Expert Declaration. 2015.

- Puppies 'N Love, d/b/a of CPI, Inc.; Frank Mineo; and Vicki Mineo v. City of Phoenix, United States District Court, District of Arizona.  Expert Report, Deposition Testimony. 2014.

- Cynthia E. Spann, Individually and on Behalf of Others Similarly Situated v. J.C. Penney Corporation, Inc., United States District Court, Central District of California.  Expert Declaration, Deposition Testimony. 2013.



**JONATHAN TOMLIN,** Ph.D**.**

- Eastman Kodak Company v. Altek Corporation, United States District Court, Southern District of New York.  Expert Declaration. 2013.

- Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. J.C. Penney Corporation, Inc., United States District Court, Northern District of California. Expert Declaration. 2013.

- Source Health Analytics, Inc. et al. v. SDI Health, LLC, et al., Court of Common Pleas, Philadelphia County.  Expert Report. 2012.

- Promega Corporation et al. v. Life Technologies Corporation, Applied Biosystems, LLC, and Invitrogen IP Holdings, Inc., United States District Court, Western District of Wisconsin.  Expert Report, Deposition Testimony. 2011.

- Ammari Electronics, Mehdi Ammari, Framer's Workshop, on behalf of themselves and all other similarly situated v. Pacific Bell Directory, et al., Superior Court, State of California. Expert Report, Deposition Testimony. 2008.

- Guild, Inc. v. J.C. Penney Corporation, Inc., United States District Court, Central District of California, Southern Division.  Expert Report, Deposition Testimony, Trial Testimony. 2004.

- Asphalt Busters, Inc. v. Chemical Lime Company, United States District Court, District of Arizona. Expert Report. 2003.

- National Guardian Life Insurance Company v. Crestar Securities Corp., United States District Court, Western District of Wisconsin.  Expert Report. 1998.

- Summit Family Restaurants Inc., HTB Restaurants Inc., and CKE Restaurants Inc. v. Hometown Buffet Inc., and Buffets Inc., U.S. District Court, District of Utah, Central Division.  Expert Report, Trial Testimony. 1996.



Exhibit 2

Confidential
Exhibit 2
Documents Considered

## Legal Documents

Appeal from the United States District Court for the Southern District of New York No. 20-cv-3250
Defendant New York University's First Set of Interrogatories to Plaintiff Casey Hall-Landers, dated November 29, 2023
Defendant New York University's First Set of Requests for Production of Documents to Plaintiff Casey Hall-Landers, dated November 29, 2023
Defendant New York University's Objections to Plaintiff Casey E. Hall-Landers' First Set of Requests for Production of Documents, dated January 16, 2024
Defendant New York University's Opposition to Plaintiff's Motion for Class Certification, dated May 9, 2022
Defendant New York University's Responses and Objections to Plaintiff Casey E. Hall-Landers' First Set of Interrogatories, dated January 16, 2024
Memorandum of Law in Support of Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel, dated June 21, 2024
Plaintiff Casey E. Hall-Landers Signed Verification, dated April 5, 2024
Plaintiff Casey E. Hall-Landers' Amended Responses and Objections to Defendant New York University's First Set of Interrogatories, dated April 8, 2024
Plaintiff Casey E. Hall-Landers' Responses and Objections to Defendant New York University's First Set of Interrogatories, dated January 5, 2024
Plaintiff Casey E. Hall-Landers' Responses and Objections to Defendant New York University's First Set of Requests for Production of Documents, dated January 5, 2024
Plaintiff's First Set of Interrogatoies to Defendant New York University, dated December 5, 2023
Plaintiff's First Set of Requests for Production of Documents to Defendant New York University, dated December 7, 2023
Second Amended Class Action Complaint, dated September 18, 2023

## Expert Reports, Declarations, Exhibits, and Backup Documents

Declaration of Aminda Heckman, dated May 5, 2022
Declaration of Anthony Bonano, dated May 4, 2022
Declaration of Anthony Bonano, dated September 10, 2024
Declaration of Colin B. Weir and Backup Materials, dated June 21, 2024
Declaration of Gina Marie Guadagnino, dated May 5, 2022
Declaration of Gracy Sarkissian, dated May 3, 2022
Declaration of H. Austin Booth, dated May 3, 2022
Declaration of John Matherson, dated May 3, 2022
Declaration of Jorge Najera-Ordonez, dated May 3, 2022
Declaration of Keara M. Gordon in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification, dated May 6, 2022
Declaration of Melissa Carter, dated May 5, 2022
Declaration of MJ Knoll-Finn, dated September 16, 2024
Declaration of Nancy Daneau, dated May 3,2022
Declaration of Nilsa Lam, dated May 3, 2022
Declaration of Seán Curran, dated September 12, 2024
Declaration of Sooah Kwak, dated May 3, 2022
Declaration of Stephanie Pianka, dated May 6, 2022
Declaration of Steven P. Gaskin in Support of Class Certification and Backup Materials, dated June 20, 2024
Declaration of Stuart Robinson, dated May 5, 2022
Declaration of William Clay Shirky, dated September 16, 2024
Draft Declaration of Rebecca Kirk Fair, dated September 17, 2024

## Depositions and Exhibits

Deposition of Anthony Bonano, dated May 13, 2024
Deposition of Casey Hall-Landers and Errata, dated April 12, 2024
Deposition of Martin Dorph and Errata, dated May 21, 2024
Deposition of Rubén Polendo, dated April 15, 2024
Deposition of William Clay Shirky, dated May 16, 2024

## Bates Stamped Documents

NYU_Hall-Landers_00000003-15
NYU_Hall-Landers_00000032
NYU_Hall-Landers_00000062-343
NYU_Hall-Landers_00000946-953
NYU_Hall-Landers_00000345
NYU_Hall-Landers_00000469-471
NYU_Hall-Landers_00000493-501
NYU_Hall-Landers_00002111-2112
NYU_Hall-Landers_00002363-2383
NYU_Hall-Landers_00003651
NYU_Hall-Landers_00003653-3656
NYU_Hall-Landers_00008662
NYU_Hall-Landers_00009347-9349
NYU_Hall-Landers_00009358-9359
NYU_Hall-Landers_00009372
NYU_Hall-Landers_00009374

## Court Rulings

Garcia de Leon v. NYU, dated June 22, 2022
In Re: General Motors Ignition Switch Litigation (S.D. NY 2019)
In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, "Order Excluding Evidence and Dismissing Case for Lack of Jurisdiction," November 12, 2020
Schechner v. Whirlpool Corporation (E.D. Michigan, 2019)
Tasneem v. Kellogg (S.D. Cal 2019)

Confidential
Exhibit 2
Documents Considered

## Court Rulings (Continued)

Zakarai v. Gerber Products (C.D. Cal 2017, affirmed by the Ninth Circuit in 2018)

## Academic Papers and Textbooks

"Product Labeling Class Actions – Identifying the 'Con' in Conjoint Surveys," Jonathan Tomlin and Robert Zeithammer, Bloomberg Law, November 1, 2018
"Subsidies, Hierarchy and Peers: The Awkward Economics of Higher Education," Gordon C. Winston, Journal of Economic Perspectives, Winter, 1999
Allen, Mark A., Robert E. Hall, and Victoria A. Lazear, "Reference Guide on Estimation of Economic Damages," Reference Manual on Scientific Evidence, 3rd Edition, 2011
Allenby, Greg M., Jeff Brazell, John R. Howell, and Peter E. Rossi. "Valuation of Patented Product Features", Journal of Law and Economics, 2014
Allenby, Greg M., Nino Hardt, and Peter E. Rossi. "Economic foundations of conjoint analysis." Handbook of the Economics of Marketing. Vol. 1. North-Holland, 2019
Cameron, Lisa, Daniel McFadden, and Pablo Robles, "Price Premium Damages in Product Market Litigation: Issues in Survey-Based Market Simulations," International Comparative Legal Guides, Product Liability 2022, 20th Edition, 2022
Hussain, Samid, Vildan Altuglu, and Matteo Li Bergolis. "An Assessment of Analytical Tools in Product Liability Matters - Perspectives from Economics, Marketing, and Consumer Behavior," The National Law Review, April 30, 2020
Mankiw, N. Gregory. "Principles of Microeconomics," Cengage Learning, 7th Edition, 2013
Orme, Bryan K. and Keith Chrzan, "Becoming an Expert in Conjoint Analysis," Sawtooth Software, 2nd Edition, 2021
Wooldridge, Jeffrey M., "Introductory Econometrics A Modern Approach," Cengage, 7th Ed., 2018

## Internet Sources

http://ninohardt.de/cv/cvhardt.pdf
https://archive.cdc.gov/#/details?q=https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html&start=0&rows=10&url=https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html
https://eccles.utah.edu/team/jeff-brazell/
https://eml.berkeley.edu/~mcfadden/dlmcv10.html
https://engineering.nyu.edu/academics/undergraduate/academic-advisement/frequently-asked-questions
https://fisher.osu.edu/people/allenby.1
https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2020-03-05/guidance-interruptions-study-related-coronavirus-covid-19-updated-june-16-2020
https://marriott.byu.edu/directory/details/vita?id=62191
https://marriott.byu.edu/directory/details?id=62191
https://nces.ed.gov/ipeds/reported-data/193900?year=2015&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2015&surveyNumber=1.
https://nces.ed.gov/ipeds/reported-data/193900?year=2016&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2016&surveyNumber=1.
https://nces.ed.gov/ipeds/reported-data/193900?year=2017&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2017&surveyNumber=1.
https://nces.ed.gov/ipeds/reported-data/193900?year=2018&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2018&surveyNumber=1.
https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=1.
https://nces.ed.gov/ipeds/reported-data/193900?year=2020&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2021&surveyNumber=1
https://nces.ed.gov/ipeds/reported-data/193900?year=2022&surveyNumber=1
https://skimgroup.com/about/people/nino-hardt/
https://web.archive.org/web/20171004183114/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply.html
https://web.archive.org/web/20171005012320/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html
https://web.archive.org/web/20171005012320/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html
https://web.archive.org/web/20171023123618/https://tisch.nyu.edu/admissions/application-requirements
https://web.archive.org/web/20171028070307/https://www.nyu.edu/admissions/undergraduate-admissions
https://web.archive.org/web/20171101152807/https://nursing.nyu.edu/current-students/scholarships/helene-fuld-health-trust-scholarship-fund-new-15-month-accelerated
https://web.archive.org/web/20171109155905/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/admission-requirements.html
https://web.archive.org/web/20180822153738/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/admission-requirements.html
https://web.archive.org/web/20180928153917/https://app.applyyourself.com/AYApplicantLogin/fl_ApplicantConnectLogin.asp?id=nyu-scpsu
https://web.archive.org/web/20181005172314/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html
https://web.archive.org/web/20181005172314/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html
https://web.archive.org/web/20181012174036/http://www.sps.nyu.edu/content/scps/admissions/undergraduate/mcghee/apply/admissions-criteria.html
https://web.archive.org/web/20181024103151/https://tisch.nyu.edu/admissions/application-requirements
https://web.archive.org/web/20181027023332/https://tisch.nyu.edu/admissions/undergraduate-admissions
https://web.archive.org/web/20181030175843/https://cas.nyu.edu/wins/aboutus.html
https://web.archive.org/web/20181101040426/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html
https://web.archive.org/web/20181101040530/https://www.nyu.edu/admissions/visiting-students/apply.html
https://web.archive.org/web/20181101153652/https://nursing.nyu.edu/current-students/scholarships/helene-fuld-health-trust-scholarship-fund-new-15-month-accelerated
https://web.archive.org/web/20181111134920/http://sps.nyu.edu/content/scps/admissions/undergraduate/mcghee/apply/financing-your-education/financial-aid-options.html
https://web.archive.org/web/20181115024403/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply.html
https://web.archive.org/web/20181118124308/www.nyu.edu/admissions/undergraduate-admissions/aid-and-costs/scholarships.html
https://web.archive.org/web/20181120014720/https://www.nyu.edu/admissions/undergraduate-admissions/majors-and-programs/campuses-schools-and-colleges.html
https://web.archive.org/web/20190604153854/https://tisch.nyu.edu/dramatic-writing/ugddwportfolio
https://web.archive.org/web/20190616083139/http://www.nyu.edu/admissions/financial-aid-and-scholarships/financial-aid-guide.html
https://web.archive.org/web/20190618194224/www.nyu.edu/admissions/undergraduate-admissions/aid-and-costs/scholarships.html
https://web.archive.org/web/20190627160632/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/application-process.html
https://web.archive.org/web/20190829233312/https://app.applyyourself.com/AYApplicantLogin/fl_ApplicantConnectLogin.asp?id=nyu-spsaa
https://web.archive.org/web/20190904145411/https://tisch.nyu.edu/dramatic-writing/ugddwportfolio
https://web.archive.org/web/20190904195352/https://tisch.nyu.edu/dance/application-requirements

**Confidential**
**Exhibit 2**
**Documents Considered**

## Internet Sources (Continued)

https://web.archive.org/web/20191028164744/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/application-process.html
https://web.archive.org/web/20191216154947/https://www.sps.nyu.edu/homepage/academics/online-programs.html
https://web.archive.org/web/20191216162715/https://www.sps.nyu.edu/homepage/academics/bachelors-degrees/ba-in-social-sciences.html
https://web.archive.org/web/20191216162715/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-ft.html
https://web.archive.org/web/20191216163825/https://www.sps.nyu.edu/homepage/academics/bachelors-degrees/bs-in-leadership-and-management-studies.html
https://web.archive.org/web/20200110232115/http://www.cornell.edu/academics/fields.cfm
https://web.archive.org/web/20200116030536/https://www.nyu.edu/admissions/undergraduate-admissions/nyu-facts.html
https://web.archive.org/web/20200123133514/https://www.bu.edu/academics/degree-programs/
https://web.archive.org/web/20200124225127/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply.html
https://web.archive.org/web/20200126150147/https://undergraduate.northeastern.edu/academic-programs/
https://web.archive.org/web/20200131223821/https://www.nyu.edu/academics/academic-programs.html
https://web.archive.org/web/20200302232437/https://cas.nyu.edu/wins/aboutus.html
https://web.archive.org/web/20200303114612/http://dental.nyu.edu/academicprograms/dental-hygiene-programs/admission-requirements.html
https://web.archive.org/web/20200314081947/https://www.sps.nyu.edu/homepage/admissions/undergraduate-financial-aid/deans-undergraduate-scholars-program.html
https://web.archive.org/web/20200314082221/https://www.sps.nyu.edu/homepage/admissions/undergraduate-financial-aid/shimkin-scholarship.html
https://web.archive.org/web/20200314082750/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-ft.html
https://web.archive.org/web/20200314082906/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-pt.html
https://web.archive.org/web/20200407065236/https://www.nyu.edu/admissions/undergraduate-admissions/how-to-apply/all-freshmen-applicants.html
https://web.archive.org/web/20200412055753/https://tisch.nyu.edu/admissions/undergraduate-admissions
https://web.archive.org/web/20200804091437/http://www.nyu.edu/students/student-information-and-resources/bills-payments-and-refunds/tuition-and-fees.html
https://web.archive.org/web/20200814121155/https://www.nyu.edu/admissions/undergraduate-admissions/majors-and-programs/campuses-schools-and-colleges.html
https://web.archive.org/web/20200930230841/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-ft.html
https://web.archive.org/web/20200930231139/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-pt.html
https://web.archive.org/web/20201027014844/https://www.sps.nyu.edu/homepage/academics/bachelors-degrees/ba-in-social-sciences.html
https://web.archive.org/web/20201027143333/https://www.sps.nyu.edu/homepage/academics/bachelors-degrees/bs-in-leadership-and-management-studies.html
https://web.archive.org/web/20201030135928/https://www.sps.nyu.edu/homepage/academics/online-programs.html
https://web.archive.org/web/20210127104709/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-ft.html
https://web.archive.org/web/20210127105704/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-pt.html
https://web.archive.org/web/20210504094456/https://www.nyu.edu/students/student-information-and-resources/bills-payments-and-refunds/refunds-and-withdrawals/fall-2020-refund-schedule-by-school.html
https://web.archive.org/web/20211028082749/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-ft.html
https://web.archive.org/web/20211028083642/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-pt.html
https://web.archive.org/web/20211120025450/https://www.sps.nyu.edu/homepage/academics/bachelors-degrees/bs-in-leadership-and-management-studies.html
https://web.archive.org/web/20211120031640/https://www.sps.nyu.edu/homepage/academics/bachelors-degrees/ba-in-social-sciences.html
https://web.archive.org/web/20211217074922/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-pt.html
https://web.archive.org/web/20211217075336/https://www.sps.nyu.edu/homepage/academics/online-programs.html
https://web.archive.org/web/20211217080049/https://www.sps.nyu.edu/homepage/admissions/tuition-and-fees/tuition-calculator-ug-bachelors-post-traditional-ft.html
https://www.anderson.ucla.edu/faculty-and-research/marketing/faculty/rossi
https://www.anderson.ucla.edu/faculty-and-research/marketing/faculty/zeithammer
https://www.brattle.com/experts/lisa-j-cameron/
https://www.brattle.com/experts/pablo-robles/
https://econ.berkeley.edu/profile/daniel-l-mcfadden
https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order
https://www.linkedin.com/in/matteo-li-bergolis-2b56b257/
https://www.linkedin.com/in/samid-hussain-98226b/
https://www.linkedin.com/in/vildan-altuglu-6b45aa57/
https://www.nyu.edu/about.html
https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/office-of-the-provost/provostial-communications/a-summary-update-on-covid19-developments.html
https://www.nyu.edu/about/leadership-university-administration/office-of-the-president/office-of-the-provost/provostial-communications/a-summary-update-on-covid19-developments-april-11.html
https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-expense.html
https://www.nyu.edu/about/news-publications/budget/operating-budget/major-categories-of-revenue.html
https://www.nyu.edu/about/news-publications/news/2020/september/JB_Statement_Fall2020.html
https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/code-of-ethical-conduct.html
https://www.nyu.edu/admissions/undergraduate-admissions/majors-and-programs/campuses-schools-and-colleges.html
https://www.nyu.edu/content/dam/nyu/bursar/documents/2020-2021%20Tuition%20and%20Fees.pdf
https://www.nyu.edu/content/dam/nyu/bursar/documents/2021-2022%20Tuition%20and%20Fees.pdf
https://www.nyu.edu/content/dam/nyu/bursar/documents/2022-2023%20Tuition%20and%20Fees.pdf
https://www.nyu.edu/content/dam/nyu/bursar/documents/2023-2024%20Tuition%20and%20Fees.pdf
https://www.nyu.edu/content/dam/nyu/bursar/documents/2024-2025%20Tuition%20and%20Fees.pdf
https://www.nyu.edu/students/student-information-and-resources/bills-payments-and-refunds/tuition-and-fees.html
https://www.sps.nyu.edu/homepage/academics/divisions-and-departments/division-of-applied-undergraduate-studies.html
https://www.stern.nyu.edu/portal-partners/current-students/undergraduate/global/international-business-exchange-program/incoming-exchange-students/academics

## Other Documents

"Everybody Ready for the Big Migration to Online College? Actually, No," Kevin Carey, The New York Times, March 13, 2020
"Trends in College Pricing 2019," College Board, November 2019
Armini, Michael and Kenneth W. Henderson, "The Latest COVID-19 Updates," Northeastern Global News, March 12, 2020 (available at https://news.northeastern.edu/coronavirus/university-messages/the-latest-covid-19-updates/)

**Confidential**
**Exhibit 2**
**Documents Considered**

**Other Documents (Continued)**

Bollinger, Lee C., "Update on COVID-19 and Spring Term Plans," Columbia University, March 12, 2020 (available at https://president.columbia.edu/news/update-covid-19-and-spring-term-plans)

BU Today, "Did You Miss something? Big Decisions BU Has Made about the Coronavirus Crisis So Far," March 31, 2020 (available at https://www.bu.edu/articles/2020/big-decisions-bu-coronavirus-crisis/)

Cornell University, "Cornell announces proactive measures to prevent spread of coronavirus" (available at https://statements.cornell.edu/2020/20200310-coronavirus-update.cfm)

Cuomo, Andrew, "Declaring a Disaster Emergency in the State of New York," Executive Order No. 202, March 7, 2020 (available at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.pdf)

FY25 Tuition and Fees Schedule (Bursar) v070324.xlsm

Integrated Postsecondary Education Data System, "New York University (available at https://nces.ed.gov/ipeds/reported-data/193900?year=2020&surveyNumber=7)

Integrated Postsecondary Education Data System, "New York University" (available at https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=1)

IPEDS Data, National Center for Education Statistics (available at https://nces.ed.gov/ipeds/reported-data/193900?year=2019&surveyNumber=12)

Spring 2020 - Tuition net of Financial Aid and Pell - Data as of Last Day of Classes 05.11.2020.xlsx