*Casey Hall-Landers, et al. v. New York University*

Case No. 1:20-cv-03250-GBD-SLC

# Argument on Class Certification

on behalf of Defendant New York University





# Class certification should be denied.

**1** Individualized issues of breach and injury prevent commonality, typicality, and predominance

p. 3

**2** Individualized issues of contract formation prevent commonality, typicality, and predominance

p. 16

**3** Inadequate class rep

p. 25

**4** Damages are not capable of class-wide measurement

p. 37

**5** Unjust enrichment claims cannot be certified

p. 42

# Class certification should be denied.

**1** Individualized issues of breach and injury prevent commonality, typicality, and predominance

**2** Individualized issues of contract formation prevent commonality, typicality, and predominance

**3** Inadequate class rep

**4** Damages are not capable of class-wide measurement

**5** Unjust enrichment claims cannot be certified

"An individual question" requires members "to present evidence that varies from member to member," but for a common question, "the same evidence will suffice for each member" or "the issue is susceptible to generalized, class-wide proof."

*Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453 (2016)

# *Garcia*: Injury requires individualized analysis.

"Plaintiff has not demonstrated, and cannot demonstrate, that she suffered the same injury as every other NYU student."

"[M]any, if not most, of the proposed class members paid *different* [amounts] in exchange for *different* programs and services."

"[I]n order to establish that others suffered the same injury," the Court "would have to undertake a searching inquiry into what each of the approximately 55,000 students did or did not do during the first months of the pandemic with respect to career counseling or student health."

*Garcia De León v. New York Univ.*, 2022 WL 2237452, at *11-13 (S.D.N.Y. June 22, 2022)

# Plaintiff put services, facilities, and programs at issue here, just as in *Garcia*.

| Plaintiff's Claims | |
|---|---|
| They allege they **did not have access to PT.** | Second Amended Complaint ("SAC") ¶ 25 |
| They **could not access student health services.** | Pltf. Am. Rog. Resps., NYU Ex. 13 at 14-15 |
| They were **denied student discounts for non-NYU, off-campus dance performances.** | *Id.* |
| The **Writing Center was unavailable.** | *Id.*; Hall-Landers, 199:23-201:4 |
| They were **not able to participate in student clubs.** | Pltf. Am. Rog. Resps., NYU Ex. 13 at 14-15 |
| They **could not access fitness facilities.** | *Id.* |
| They were **not able to participate in Student Government.** | *Id.* |

# Plaintiff put services, facilities, and programs at issue here, just as in *Garcia*.

| Hall-Landers | Garcia |
|---|---|
| "NYU's marketing materials promise to a prospective student that if they choose to enroll at NYU, they will receive the benefits of being in New York City and the various on-campus resources that NYU provides **(studios, laboratories, athletic and recreational facilities, student centers, student clubs and organizations, etc.)."** | "Figuring out which members of a class consisting of all students who paid fees to NYU actually sought to avail themselves of services but were unable to do so is **an exercise that requires making a fact-specific determination about each putative class member."** |

Plaintiff's Opening Br. at 20-21

*Garcia*, 2022 WL 2237452, at *13

# "hopelessly individualized issues"

"whether and to what extent . . . putative class member[s were]
actually deprived of the benefit of [ ] services depends on whether
and to what extent the student did in fact use the service, could
have done so, or was unable to do so."

*Student A. v. Liberty Univ. Inc.*, 697 F. Supp. 3d 496, 525-26 (W.D. Va. 2023)

# Fact-specific determinations regarding student usage.

| Plaintiff's Claims | Conflicting Record Evidence |
|---|---|
| They allege they did not have access to Physical Therapy ("PT"). *SAC ¶ 25* | *Zujko Decl. ¶ 6; Hall-Landers, 130:22-132:21; NYU Ex. 24* |
| They **could not access student health services.** *Pltf. Am. Rog. Resps., NYU Ex. 13 at 14* | *Ragouzeos Decl. ¶ 8; NYU Exs. 64-65; Hall-Landers, 132:23-135:4* |
| They were denied student discounts for non-NYU, off-campus dance performances. *Id.* | Plaintiff **could not recall attending performances** before Covid, **did not have tickets** for a scheduled performance, and, in any event, **third-party theaters closed.** *Hall-Landers, 49:4-50:23* |

| Plaintiff's Claims | Conflicting Record Evidence |
|---|---|
| **The Writing Center was unavailable.** *Pltf. Am. Rog. Resps., NYU Ex. 13 at 14; Hall-Landers, 199:23-201:4* | Plaintiff had **no idea whether they ever used the Writing Center** or whether it continued to operate. It did. *Hall-Landers, 201:2-9; Id. 201:12-202:15; NYU Ex. 66* |
| They were **not able to participate in student clubs.** *Pltf. Am. Rog. Resps., NYU Ex. 13 at 14-15* | Plaintiff **did not recall whether they were a member of any clubs.** *Hall-Landers, 206:5-13* |
| They could not access **fitness facilities.** *Id. at 14* | Plaintiff **visited the gym only once** while at NYU. *Dorph Decl. ¶ 28; NYU Ex. 67* |
| They were **not able to participate in Student Government.** *Id.* | Plaintiff **never ran for student government and never participated in it.** *Hall-Landers, 205:20-206:4* |

# Fact-specific determinations regarding student usage.

**University-wide services continued remotely, including:**

Campus Safety

Bookstore

Global and Spiritual Life

Office of Sponsored Programs

Career Development

Athletics

Center for Student Life

Registrar

Libraries

Dorph Decl. ¶¶ 22-30

**School-based activities and events,** including yoga classes and performances

NYU Exs. 25-27

**Moses Center for Student Accessibility**

Weiss Decl. ¶ 5

**Student Health Center**

Ragouzeos Decl. ¶¶ 4-7; NYU Exs. 31, 32

**Physical Therapy** for dance students

Zujko Decl. ¶ 5; NYU Ex. 24

**Academic Advising**

Curran Decl. ¶ 9

**School-based programs and clubs**

*Id.;* Polendo, 128:18-129:24

**Bursar**

Bonano Decl. ¶ 14







# Second Circuit Opinion

"[T]he class allegations . . . are implausible because commonality and predominance would have to be found among the extremely heterogeneous class."

*Ryansko v. New York Univ.*, 63 F.4th 186, 205 n.2 (2d Cir. 2023) (Parker, J., concurring in part and dissenting in part)



# Plaintiff's grievances are unique and atypical.



Time Zone

Ballet Barre



The loss of a live audience and "stage fr[ight]"

*Id.* at 156:5-157:4



Dancing was "limited in terms of our space" and they were "often running into furniture"

*Id.* at 162:9-17



Professors could not "provide physical cues and feedback by actually touching our bodies"

*Id.* at 114:24-115:2



"I had to choose whether to show my feet, my torso or my arms on camera"

Hall-Landers, 114:12-18

"That fact is peculiar to [them] and those taking the same class; it has nothing to do with any other NYU student."

*Garcia,* 2022 WL 2237452, at *12



"The Rule 23(b)(3) inquiry is, of course, 'more demanding than[] the commonality inquiry.'"

*Stewart v. Hudson Hall LLC*, 2021 WL 6285227, at *19 (S.D.N.Y. Nov. 29, 2021) (Cave, J.) (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002))





# Breach, causation and injury are individualized issues.

## *Garcia*

No predominance because "each of [NYU's] colleges and programs advertised different services" so "[a]djudication of the class claims would require examination of the representations made by each program that collected a fee" and whether the fees were "used to cover services that remained available during the pandemic."

*Garcia*, 2022 WL 2237452, at *18

## *O'Gara*

Holding "predominance cannot be satisfied where a court must make a reasonableness determination of individual charges," and ruling that, while the contract was common, breach and damages were not because they required "class-member-specific proof."

*O'Gara v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 90-91 (D. Del. 2012)

# Class certification should be denied.

**1** Individualized issues of breach and injury prevent commonality, typicality, and predominance

**2** Individualized issues of contract formation prevent commonality, typicality, and predominance

**3** Inadequate class rep

**4** Damages are not capable of class-wide measurement

**5** Unjust enrichment claims cannot be certified

16

# The terms of any contract is an individualized issue.

"[C]lass-wide resolution of contract claims becomes problematic in the absence of form agreements" because "class members must prove the elements of their claim through individualized proof."

*Wing v. MetLife Ins. Co.*, 2007 WL 9814564, at *7 (S.D.N.Y. May 31, 2007) (denying certification)



"Where, like here, 'the claims require examination of individual contract language,' it is appropriate to decline to certify a breach of contract class action."

*Garcia*, 2022 WL 2237452, at *18 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013))



# 26,264
**undergraduate students**



# 5,000+
**faculty members**

# 5,000
**undergraduate courses**

# 230
**areas of study**



# 170,000
**website pages**



# 10
**undergraduate schools**



# Plaintiff alleges contract terms from multiple sources.

A.  I entered a contract with NYU based on the course descriptions and the enrollment information.

Hall-Landers, 26:7-9

\* \* \*

And in addition to that, I attended campus tours, in which I attended in-person classes.

Id. at 26:15-17

\* \* \*

Everything on the NYU website that influenced me to go to NYU suggested that classes would be in person.

Id. at 26:18-20

Q.  Are you contending that this bulletin is part of the contract that you had with NYU?

[Objection]

A.  Yes.

Id. at 67:2-7

\* \* \*

Q.  Is this document, Exhibit 7, the policies and procedures handbook of Tisch, part of the contract that you allege you entered into with NYU?

[Objection]

A.  Yes.

Id. at 86:16-23

# There are no common contract terms.

## School of Dance

"contemporary and ballet technique"

"pointe [class], big jumps and turns"

"Lighting for Dancers"

NYU Ex. 6

## School of Nursing

"anatomy and physiology, chemistry, microbiology, nutrition, statistics, and developmental psychology"



NYU Ex. 12

## School of Business

"Entrepreneurs Challenge"

"International Business Exchange Program"



NYU Ex. 8

## Website

"170,000 website pages"

**NYU**

Dorph Decl. ¶ 9

20

# The registration system is irrelevant to contract formation.

Plaintiff claims the contract was formed "when the university accepts.... a student for enrollment."

Plaintiff's Opening Br. at 19



Plaintiff admitted that they used Albert to register for classes only *after* they had accepted NYU's admission offer and enrolled.

Hall-Landers, 87:3-22

Plaintiff incorrectly argues the Second Circuit "already determined" that Albert or NYU's course of conduct "forms an implied contract."

Plaintiff's Reply Br. at 3

"[T]he question before us is *not* whether Hall-Landers's plausible allegations necessarily establish an implied contract to provide generally in-person services . . . the question is whether a reasonable factfinder *could* conclude that Hall-Landers's plausible allegations demonstrate an implied contract to provide in-person services."

*Rynasko*, 63 F.4th at 198 (emphasis added)



Plaintiff incorrectly argues the Second Circuit "already determined" that Albert or NYU's course of conduct "forms an implied contract."

Plaintiff's Reply Br. at 3

"[W]e conclude that the Proposed Complaint plausibly alleges an implied contract between NYU and its students to deliver an in-person student experience. As set forth more expansively above, the Proposed Complaint identifies":

"NYU's course catalog, which designated Hall-Landers's selected courses as 'in-person'";

"NYU's marketing materials, which described the numerous benefits of attending college in New York City";

"NYU's descriptions of its on-campus services and facilities and the benefits of personal contacts with faculty and fellow students";

"as well as NYU's past course of conduct as forming the basis of the implied contract promising in-person services."

*Rynasko*, 63 F.4th at 19_



Plaintiff Exs. 12, 15

# Individual review is required to determine if terms are enforceable.



"Snowball fights in Washington Square"



Internships in the "world's music capital"



Courses taught by music industry leaders



"Work at Village Records, an NYU record label run by Steinhardt students"



Internships with Major League Baseball



Attend the annual international Hospitality Industry Investment Conference

 

Internships at Mandarin Oriental hotel



Internships at Forest City Realty Trust



Behind-the-scenes tours of high-profile NYC construction projects



Internships with New York Knicks

# There is no common class-wide proof.

# Class certification should be denied.

**1** Individualized issues of breach and injury prevent commonality, typicality, and predominance

**2** Individualized issues of contract formation prevent commonality, typicality, and predominance

**3** Inadequate class rep

**4** Damages are not capable of class-wide measurement

**5** Unjust enrichment claims cannot be certified

## Plaintiff's fundamental adequacy failures:

**1.**

Plaintiff is **not credible**

**2.**

Plaintiff is **not knowledgeable about their case**

**3.**

Contemporaneous evidence **contradicts** Plaintiff's claims

"To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff."

*Savino v. Comput. Credit*, 164 F.3d 81, 87 (2d Cir. 1998) (denying class certification)



# Plaintiff claimed they bought a ballet barre for Spring 2020.

**September 19, 2023**

24.  In fact, Plaintiff Hall-Landers had to purchase a ballet bar out-of-pocket for their instruction at home, whereas at NYU they had access to one on Defendant's campus.

SAC ¶ 24; *see also* Pltf. Am. Rog. Resps., NYU Ex. 13 at 11

**April 12, 2024**

**Q:**  [Y]our complaint says you had to buy a ballet barre when you went back to California in order for you to dance; is that correct?

**A.**  Yes.

Hall-Landers, 172:3-7

# Receipt proves otherwise.



NYU

Casey Hall-Landers

Mon, Jun 1, 2020 at 11:11 AM

NYU Ex. 42

## Gopher Order Confirmation for Order #4325395

**Gopher** <autonotice@gophersport.com>
To:
Cc: gophersportprodcc@gmail.com

| EST SHIP DATE | ITEM NO | QTY | ITEM DESCRIPTION | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 01-JUN-20 | 68-044 | 1 | Magnus Ballet Barre | Each | $69.95 | $69.95 |
| | | | | Sub Total: | | $69.95 |
| | | | | Shipping, Handling & Processing: | | $11.89 |
| | | | | * Estimated Tax Total: | | $5.42 |
| | | | | Order Total: | | $87.26 |



# Plaintiff claimed they personally paid tuition.

**September 19, 2023**

"Plaintiff **Hall-Landers paid** approximately $27,964 in tuition to Defendant for the Spring Semester 2020."

SAC ¶ 20

**April 12, 2024**

Q. You yourself didn't actually pay tuition, correct?

A. **Yes.**

Hall-Landers, 90:4-6

**June 21, 2024**

"**I paid** [NYU] approximately $27,964.00 in tuition for the Spring Semester 2020 and a

$1,312.00 Registration and Services Fee. In total, **I paid** approximately $41,609.09 for the Spring Semester 2020."

Hall-Landers Decl. ¶ 4

"Plaintiff does not have a firm grasp on her own case. Plaintiff could not explain precisely which fees were at issue in this case and claimed to have been unaware that NYU had already issued refunds of certain fees collected for the spring 2020 semester. Plaintiff's lack of knowledge of that fact is concerning because her Complaint alleges that the refunds that NYU did issue were insufficient; it is not possible to make such an allegation if one does not know that refunds had been issued, let alone what refunds were in fact issued."

*Garcia*, 2022 WL 2237452, at *15



# Plaintiff sued despite not knowing what NYU already refunded.

**September 19, 2023**

"NYU continued to charge full tuition and fees for the spring 2020 semester, as if nothing had changed . . . ."

SAC ¶ 8

**Jan. 5, 2024**

**April 8, 2024**

"Plaintiff seeks a pro-rated refund [for] the insurance and equipment fee, the production fee . . . and meal plan and housing fees."

Pltf. Rog. Resps., NYU Ex. 61 at 15;
Pltf. Am. Rog. Resps., NYU Ex. 13 at 15

**April 12, 2024**

Q. It is your testimony under oath that you have not been refunded any portion of the production fee? [objection stated]

A. **Not to my knowledge.**

* * *

"I'm still asking for insurance and equipment fee, the production fee . . ."

Hall-Landers, 95:8-24; 104:4-7

Q. So is it your testimony under oath that you have not received any refunds for the insurance and equipment fee? [objection stated]

A. **Not to my knowledge.**

# They should have known . . . or bothered to check.

**Dear Casey:**

    * * *

**We began processing Housing and Dining refunds this weekend.**

    * * *

**. . . will receive their refund by Tuesday, March 31st.**

NYU Ex. 59

---

**Dear Casey:**

    * * *

**We began processing Housing and Dining refunds this weekend.**

    * * *

**... will receive their refund by Tuesday, March 31st.**

NEW YORK UNIVERSITY

Martin S. Dorph, Executive Vice President

---

**Dear Casey:**

    * * *

**We have now completed the review of the dozens of individual school and course-based fees for the purpose of determining funds.**

    * * *

**Based on this analysis, we have determined that you are eligible to received a refund.**

NEW YORK UNIVERSITY

Martin S. Dorph, Executive Vice President

NYU Ex. 50

---

**Your refund has been processed**

    * * *

**Mar 30, 2020**

    * * *

**Casey Elizabeth Hall-Landers** Wed. Apr 1, 2020

To:

Casey Hall-Landers      Mon, Mar 30, 2020 at 8:32 PM

**Your refund has been processed**

Sincerely,
New York University
Office of the Bursar
Refund Department

NYU Ex. 62

**Plaintiff swore under oath they had not been refunded.**

Q. . . . [W]e established previously that that statement [referring to the SAC] is actually inaccurate because I believe you agreed that you did get a refund of at least the fees for the meal plan and housing, correct?

A. For those specific fees, yes.

Hall-Landers, 259:23-26

The plaintiff is not adequate where "[d]efendants can use [the plaintiff's] own testimony against him at trial to discount [his] argument[s]" and "his alleged claims and injuries are different from the Proposed Class."

*Stewart*, 2021 WL 6285227, at *12 (Cave, J.)





# Class certification should be denied.

**1** Individualized issues of breach and injury prevent commonality, typicality, and predominance

**2** Individualized issues of contract formation prevent commonality, typicality, and predominance

**3** Inadequate class rep

**4** Damages are not capable of class-wide measurement

**5** Unjust enrichment claims cannot be certified

# Damages are not capable of class-wide measurement.

## "No damages model, no predominance, no class certification."

*In re Aluminum Warehouse Antitr. Litig.*, 336 F.R.D. 5, 48 (S.D.N.Y. 2020)

**Eddlemon v. Bradley Univ.**
65 F.4th 335, 340-41 (7th Cir. 2023) (reversing certification)

**Omori v. Brandeis Univ.**
673 F. Supp. 3d 21, 27-30 (D. Mass. 2023) (denying certification)

**Nguyen v. Stephens Inst.**
2023 WL 11113887, *3 (N.D. Cal. Oct. 30, 2023) (same)

**Duke v. Ohio Univ.**
204 N.E.3d 752, 764-65 (Oh. Ct. App. 2022) (reversing certification; conjoint analysis "had not been performed to evidence a difference in market value")

**Smith v. Ohio State Univ.**
200 N.E.3d 1249, 1255 (Oh. Ct. App. 2022), *overturned on other grounds*, 2024 WL 947657 (Ohio Mar. 6, 2024) (at deposition, Gaskin "could not opine" on market value because "he had not yet conducted any surveys or analysis")

# There is no price differential.

"Prior to, during, and in the time since the Spring 2020 semester, NYU has offered certain online degree programs at the undergraduate and graduate levels. Since I joined NYU in 2001, tuition for NYU's online programs has always been the same as tuition for similar in-person programs within the same school or department. **NYU does not consider the modality of instruction when setting tuition rates for a particular program.**"

Shirky Decl. at ¶ 10

# The damages model ignores real world pricing.

The Second Circuit remarked that a price differential (or lack thereof) "may be highly relevant for showing damages."

*Rynasko*, 63 F.4th at 199

Where university "charged and . . . Plaintiff was willing to pay the identical amount . . . regardless [of] whether [classes] were held online or in-person," "there [wa]s no support for the proposition that a market analysis should govern contract damages" and "Plaintiff did not suffer . . . ."

*Nguyen*, 2023 WL 1113887, at *2



# *Emory* is not good law.

"[C]ourts in other tuition refund cases have found that conjoint analysis is an acceptable method for calculating the differential in fair market value between in-person versus online education. *Schultz v. Emory Univ.*, 2023 WL 4030184, at *10 (N.D. Ga. June 15, 2023) (conjoint analysis is an articulable theory of damages that is capable of classwide resolution)."

Plaintiff's Reply Br. at 16-17 (cleaned up)

Plaintiff wrote that "a formal amendment to the Reply is [not] necessary other than to update the citation on page 17 of the Reply to state: *Schultz* [], 2023 WL 4030184, at *10 (N.D. Ga. June 15, 2023), *vacated on other grounds by* [2024 WL 4534428] (11th Cir. Oct. 21, 2024)."

Plaintiff's Letter dated Nov. 11, 2024, ECF 171 at 2

The Eleventh Circuit held "the district court abused its discretion in its common methodology analysis . . . [and its] [f]ailure to engage with the models and shifting the burden onto Emory is legal error." "Schultz's skeletal models may well be sufficient evidence that, at trial, the models can be fleshed out into actual class-wide damages calculations. But the burden to prove as much is Schultz's."

2024 WL 4534428, at *6

# Class certification should be denied.

**1** Individualized issues of breach and injury prevent commonality, typicality, and predominance

**2** Individualized issues of contract formation prevent commonality, typicality, and predominance

**3** Inadequate class rep

**4** Damages are not capable of class-wide measurement

**5** Unjust enrichment claims cannot be certified

# Individualized issues predominate regarding unjust enrichment.

"[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts."

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009)

In another tuition refund case, the court denied certification because the claim would require "consideration of what each Plaintiff expected and the circumstances of each Plaintiff['s] experience" and "Plaintiffs may have had different understandings of what they were paying for by choosing in person status."

*Hannibal-Fisher v. Grand Canyon Univ.* 2023 WL 5951888, *7 (D. Ariz. Sept. 13, 2023)

# Individualized issues predominate regarding unjust enrichment.



Quality and Value of the Education

Student's Expectations

Student's Use of Services/Facilities

Individualized Issues

Receipt of Scholarships/ Grants/CARES Act Funds, etc.

Voluntary Payment for Remote Classes

## There is no common class-wide proof.

end

